Jeffrey Lewis (Bar No. 183934)
**JEFF LEWIS LAW, APC**
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274
Tel. (310) 935-4001
Fax. (310) 872-5389
E-Mail: Jeff@JeffLewisLaw.com

Attorneys for Defendant Daniel
DiCorcia

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BOB BAFFERT, et al., | ) Case No.:  3:23-cv-01774-RSH-BLM |
| Plaintiffs, | ) **DEFENDANT DANIEL DICORCIA'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | ) |
| JUSTIN WUNDERLER, et al., | ) |
| Defendants. | ) |
|  | ) Date:          January 18, 2024 |

PER CHAMBERS RULES, NO
ORAL ARGUMENT UNLESS
SEPARATELY ORDERED BY
THE COURT.

SPECIAL MOTION TO STRIKE

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on January 18, 2024 or as soon thereafter as the matter may be heard in Courtroom 3D of the United States District Court, Central District, Southern Division, located at 333 West Broadway, San Diego, CA 92101, Defendant Daniel DiCorcia ("DiCorcia")[1] will and hereby does move this Court for an order striking the Complaint, Doc. No. 1, in its entirety under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, and to dismiss the case in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6). In the alternative, DiCorcia requests that the individual claims of either extortion or defamation be stricken.

This motion is based on this Notice and the attached Memorandum of Points and Authorities, the Declarations of Jeffrey Lewis and Daniel DiCorcia filed concurrently herewith, and such further evidence and argument as the Court may receive at the hearing.

DATED: December 14, 2023    **JEFF LEWIS LAW, APC**

By: _____/s/ Jeffrey Lewis_____
        Jeffrey Lewis

        Attorneys for Defendant
        Daniel DiCorcia

---

[1] Abbreviations used in this Notice are also used in the accompanying Memorandum of Points and Authorities.

- 2 -

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................3

TABLE OF AUTHORITIES .................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES ........................9

I.    Introduction ...........................................................................9

II.    The Court Should Find that DiCorcia Satisfied his Burden of Proving this Lawsuit Arises from Protected Activities ..........12

    A.    The Claims Arise from DiCorcia's Social Media Posts About Baffert and Those Posts are Protected Activities...............................................................14

        i.    The Alleged Statements Were Made in a Public Forum Under Subd. (e)(3) .........................14

        ii.    The Alleged Statements Were Made in Connection with a Matter of Public Interest ..........14

        iii.    The Extortion Exemption Established by the California Supreme Court in the *Flatley* Case does not Apply Here......................................16

III.    The Court Should Grant the Motion Because Baffert Cannot Meet his Burden of Proving a Probability of Prevailing..............................................................17

    A.    The Extortion and Defamation Claims by the Corporate Plaintiff are Bereft of Facts and Should be Dismissed ...............................................17

    B.    Baffert Cannot Show a Probability of Prevailing on the Defamation Claim Against DiCorcia...........................18

        i.    Baffert is a Public Figure ..........................18

        ii.    DiCorcia Did Not Act with Actual Malice ................20

        iii.    Baffert is Libel Proof due to Decades of Bad Actions and Bad Press...............................21

SPECIAL MOTION TO STRIKE

iv.    The Social Media Posts by DiCorcia Contain No Statement of Fact ....................................................... 22

C.    The Facts Pled by Baffert as to Claimed Extortion Do Not Establish a Claim for Relief ........................................... 24

D.    Baffert Cannot Establish the Elements of Conspiracy...... 27

IV.    Conclusion........................................................................................ 28

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

SPECIAL MOTION TO STRIKE

1

## <u>TABLE OF AUTHORITIES</u>

2
**CASES**

3

4
*American Airlines v. Sheppard,*
   96 Cal.App.4th 1017 (2002) ........................................ 25

5

6
*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal.4th 503 (1994) ................................................ 27

7

8
*Arnold v. Reliant Bank,*
   932 F. Supp. 2d 840 (M.D. Tenn. 2013)....................... 27

9

10
*Barrett v. Rosenthal,*
   40 Cal.4th 33................................................................ 14

11

12
*Blatty v. New York Times,*
   42 Cal.3d 1033 (1986)................................................. 18

13

14
*Bose Corp. v. Consumers Union,*
   466 U.S. 485 (1984) ................................................... 18

15

16
*Braun v. Chronicle Publ,*
   52 Cal.App.4th 1036 (1997) ....................................... 13

17

18
*Briggs v. Eden Council For Hope,*
   19 Cal.4th 1106 (1999) ............................................... 13

19

20
*Christian Research Institute v. Alnor,*
   148 Cal.App.4th 71 (2007) ......................................... 24

21

22
*City of Industry v. City of Fillmore,*
   198 Cal.App.4th 191 (2011) ....................................... 28

23

24
*City of Santa Monica v. Stewart,*
   126 Cal.App.4th 43 (2005) ......................................... 17

25

26
*D.C. v. R.R.,*
   182 Cal.App.4th 1190 (2010) ..................................... 15

27

28
*Doctors' Co. v. Superior Court,*
   49 Cal.3d 39 (1989)..................................................... 27

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

SPECIAL MOTION TO STRIKE

*Eastwood v. National Enquirer,*
    123 F.3d 1249 (1997) .................................................................. 19

*Ferlauto v. Hamsher,*
    74 Cal.App.4th 1394 (1999) ....................................................... 17

*FilmOn.com Inc. v. DoubleVerify Inc.,*
    7 Cal.5th 133 (2019) ................................................................... 15

*Flatley v. Mauro,*
    39 Cal.4th 299 (2006) ................................................................. 16

*Fletcher v. San Jose Mercury News,*
    216 Cal.App.3d 172 (1989) ........................................................ 20

*Friedman v. DirecTV,*
    262 F.Supp.3d 1000 (2015) ....................................................... 15

*Fuhrman v. California Satellite Systems,*
    179 Cal.App.3d 408 (1986) ........................................................ 24

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) .................................................................... 19

*Guccione v. Hustler Magazine, Inc.,*
    800 F.2d 298 (2d Cir. 1986) ............................................... 11, 22

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (2010) .................................................................... 13

*Inc. v. Candide Grp.,*
    46 F.4th 1136 (2022) ................................................................... 12

*Kahn v. Bower,*
    232 Cal.App.3d 1599 (1991) ...................................................... 17

*Kenne v. Stennis,*
    230 Cal.App.4th 953 (2014) ....................................................... 27

*Kunysz v. Sandler,*
    146 Cal.App.4th 1540 (2007) ..................................................... 13



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

SPECIAL MOTION TO STRIKE

*Manzari v. Associated Newspapers Ltd.,*
    830 F.3d 881 (2016) ................................................................... 18

*Microstrategy, Inc. v. Business Objects,*
    331 F. Supp. 2d 396 (E.D. Va. 2004) ...................................... 26

*Monex Deposit Co. v. Gilliam,*
    666 F. Supp. 2d 1135 (C.D. Cal. 2009) .................................... 25

*Morgan v. Robinson,*
    156 F. Supp. 2d 1133 (C.D. Cal. 2001) .................................... 25

*Moyer v. Amador Valley J. Union High School Dist.,*
    225 Cal.App.3d 720 (1990) ...................................................... 19

*Navellier v. Sletten,*
    29 Cal.4th 82 (2002) ......................................................... 13, 21

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ......................................................... 11, 18

*Nygård, Inc. v. Uusi-Kerttula,*
    159 Cal.App.4th 1027 (2008) ................................................... 14

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,*
    946 F.Supp.2d 957 (2013) ........................................................ 14

*Price v. Stossel,*
    620 F.3d 992 (2010) ................................................................ 18

*Provisional Gov't of the Republic of New Afrika v. ABC,*
    609 F.Supp. 104 (D.D.C. 1985) ............................................... 18

*Rusheen v. Cohen,*
    37 Cal.4th 1048 (2006) ............................................................ 27

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) .............................................................. 24

*State v. D.R.C., (Wash. Ct. App. 2020),*
    13 Wash. App. 2d 818 (Wash. Ct. App. 2020) ........................ 26

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



- 7 -

SPECIAL MOTION TO STRIKE

*Stewart v. Rolling Stone LLC,*
    181 Cal.App.4th 664 (2010) ........................................................ 21

*Traditional Cat Assn., Inc. v. Gilbreath,*
    118 Cal.App.4th 392 (2004) ........................................................ 14

*Tran v. Nguyen,*
    2023 WL 8231809 (2023)............................................................. 25

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,*
    106 Cal.App.4th 1219 (2003) ...................................................... 17

*Vogel v. Felice,*
    127 Cal.App.4th 1017.................................................................. 20

*Wong v. Jing,*
    189 Cal.App.4th 1354 (2010) ...................................................... 22

*Wynberg v. National Enquirer, Inc.,*
    564 F.Supp. 924 (C.D. Cal. 1982) ........................................ 11, 21

*Wynn v. Chanos,*
    75 F.Supp.3d 1228 (N.D. Cal. 2014)..................................... 19, 20

**STATUTES**

Cal. Code Civ. Proc. § 425.16 ............................................. 2, 10, 13, 14

**FEDERAL RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................... 2

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

SPECIAL MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

Imagine if Lance Armstrong sued a person for posting on social media that Armstrong was a bike racing cheat. Plaintiff Bob Baffert is the Lance Armstrong of horse racing and has sued a person in New Jersey for suggesting what the whole world already knows: that Baffert is notorious for doping and mistreating racehorses.[2] Baffert's violation of horse racing norms is so widely known that in 2021, he was the subject of a Saturday Night Live Weekend Update sketch. Lewis Decl., ¶ 4.



The comedian depicting Baffert denied ever doping a horse, looked at the camera and asked in a sarcastic tone, "Do I look like a shady character to you?" The live audience uproariously laughed at that notion because Baffert *is a* shady character.

In June 2021, the Washington Post published an article entitled: "The dark side of Bob Baffert's reign: As horse deaths and drug violations mounted, thoroughbred racing's top trainer used power and money to keep beating opponents — and regulators." Lewis Decl., ¶ 5, Ex. 1. The Washington Post reported that "[a]t least 74 horses have died in Baffert's care in his home state of California since 2000, more than all but two of hundreds of trainers in the

---

[2] This motion followed an attempt to meet and confer held via letter on December 5, 2023 and via telephone on December 11, 2023. Lewis Decl., ¶ 3.

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

state…" Lewis Decl., ¶ 5, Ex. 1. USA Today published the piece, "As long as Bob Baffert keeps winning, he'll keep getting horses despite deaths and doping." Lewis Decl., ¶ 6, Ex. 2. 60 Minutes reported on the rampant problem of horse doping:

> For decades, the sport was entirely overseen by state racing commissions that struggled to stop repeat drug violations, notably by the sport's most high-profile trainer Bob Baffert. Baffert has been cited for dozens of drug violations in connection with some of his horses over the last four decades. He was suspended by Churchill Downs in 2021 after his horse Medina Spirit won the Kentucky Derby but was later disqualified after testing positive for a banned substance.

Lewis Decl. ¶ 15, Ex. 10.

Additional negative articles about Baffert have run in CNN, the NY Times, and ESPN. Lewis Decl., ¶¶ 7-9, Exs. 3-5. Baffert has also been lampooned for doping in political cartoons and the Onion. Lewis Decl., ¶¶ 10-11, Exs. 6-7.



Lewis Decl., ¶ 10, Ex. 6.

Baffert's notoriety is relevant to the claims alleged in the complaint and resolution of this special motion to strike in three important respects:

First, lawsuits that arise from statements made in a public forum about a matter of public interest are subject to being stricken by California's anti-SLAPP law. Cal. Code Civ. Proc., § 425.16, subd.(e)(3). The claims in this matter arise from posts on social media, a public forum, about Baffert. While

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

1   Baffert can deny he dopes horses, he cannot seriously dispute the widespread

2   public interest in the question of whether Baffert mistreats animals and

3   cheats in races. That public interest renders the claims in Baffert's complaint

4   subject to being stricken.

5       Second, Baffert's high profile renders him a public figure within the

6   meaning of *New York Times Co. v. Sullivan,* 376 U.S. 254, 283 (1964) and the

7   requirement of proving false statements were made with actual malice.

8       Third, Baffert's widespread accounts of doping and mistreating horses

9   have so harmed Baffert's reputation that he has been rendered "libel proof" as

10   a matter of law. *Wynberg v. National Enquirer, Inc.,* 564 F.Supp. 924, 928

11   (C.D. Cal. 1982) [holding that plaintiffs who engage in anti-social or criminal

12   behavior and suffer diminished reputation are barred from recovering in

13   defamation]; see also *Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298, 303

14   (2d Cir. 1986) [applying libel proof doctrine to publisher of pornography about

15   lawsuit arising from accusations of adultery].

16       Baffert is using the legal system to silence his critics, such as Defendant

17   Daniel DiCorcia. DiCorcia is a horse racing fan who uses social media to

18   comment, satirize, and criticize many participants involved in horse racing.

19   DiCorcia Decl., ¶ 3. The complaint alleges dozens of specific harmful actions

20   by Defendant Justin Wunderler. But as to DiCorcia, the complaint is sparse.

21   Baffert alleges that DiCorcia opened an audio chat room known as "Spaces"

22   on X, formerly Twitter. Doc. No. 1 at p. 7, ¶ 27. Baffert also alleges that

23   DiCorcia, in what is clearly a jest, posted on X an offer to trade Baffert's wife

24   and two horses in exchange for handing over a video of Baffert. Doc. No. 1 at

25   p. 7, ¶ 28. The offer was immediately followed by three "rolling on the floor

26   laughing" emojis (😂 😂 😂) confirming that the statement was not to be

27   taken seriously. Doc. No. 1 at p. 7, ¶ 27. Baffert also alleges that DiCorcia

28   appeared on "Spaces" and boasted that he possessed a video of Baffert and



- 11 -

SPECIAL MOTION TO STRIKE

stated an intent to "take down" Baffert. Doc. No. 1 at p. 8, ¶ 29. From these three actions attributed to DiCorcia, Baffert has attempted to hold DiCorcia liable for defamation and extortion. DiCorcia disputes the allegations but at this stage of the proceedings, even accepting the allegations as true, Baffert's claims are untenable and should be stricken for five reasons:

First, one of the two plaintiffs in this action is a corporation. Although named in the caption and on the first page of the complaint, there are no allegations in the body of the complaint indicating that DiCorcia defamed, extorted, or otherwise harmed Baffert's corporate namesake. All claims asserted by this corporate plaintiff are untenable and must be dismissed.

Second, as a public figure, it is Baffert's burden to provide clear and convincing evidence that DiCorcia acted with actual malice. Baffert has not pled facts constituting actual malice and certainly cannot muster evidence that DiCorcia so acted.

Third, Baffert is libel proof. His reputation has been so damaged over the decades and so widely covered in various media outlets, that application of the judicial doctrine declaring Baffert libel proof is appropriate.

Fourth, as to defamation, the posts attributed to DiCorcia do not contain affirmative statements of fact.

Fifth, California law does not recognize a civil claim for attempted extortion.

## II.     The Court Should Grant the Motion Because This Lawsuit Arises from Protected Activities

"The special motion to strike provision of California's anti-SLAPP statute applies in federal court." *CoreCivic, Inc. v. Candide Grp.,* 46 F.4th 1136, 1146 (2022). The decisions of California's Supreme Court are binding in

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



SPECIAL MOTION TO STRIKE

the area of anti-SLAPP law. *Hilton v. Hallmark Cards,* 599 F.3d 894, 905 (2010).

The anti-SLAPP law provides a mechanism "to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case," *Kunysz v. Sandler* 146 Cal.App.4th 1540, 1543 (2007), and is "designed to nip SLAPP litigation in the bud." *Braun v. Chronicle Publ 'g Co.,* 52 Cal.App.4th 1036,1042 (1997).

Under the statute, any "cause of action against a person arising from any act ... in furtherance of the person's right of ... free speech ... in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc., § 425.16, subd. (b)(1).

In evaluating whether a claim arises from protected conduct, the Legislature specifically amended Section 425.16 in 1997 to ensure that it "shall be construed broadly" in response to court decisions that had construed it too narrowly. Cal. Code Civ. Proc., § 425.16, subd. (a). The California Supreme Court subsequently held that the "broad construction expressly called for in [Section 425.16] is desirable from the standpoint of judicial efficiency," cautioning that a narrow construction "would serve Californians poorly." *Briggs v. Eden Council For Hope,* 19 Cal.4th 1106, 1121-22 (1999).

Whether an action should be dismissed under Section 425.16 involves a two-step inquiry. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten,* 29 Cal.4th 82, 88 (2002). To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)." *Ibid.* Section 425.16, subd. (e)(3)

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

- 13 -

protects statements "made in a place open to the public or a public forum in connection with an issue of public interest." If the claim arises from protected conduct, the court must next determine whether the plaintiff has demonstrated a probability of prevailing on the claim. Cal. Code Civ. Proc., § 425.16, subd. (b)(l).

### A. The Claims Arise from DiCorcia's Social Media Posts About Baffert and Those Posts are Protected Activities

DiCorcia's statements online about Baffert are protected activities within the meaning of California's anti-SLAPP statute.

### i. The Alleged Statements Were Made in a Public Forum

Online forums such as X or Facebook are considered public forums within the meaning of the anti-SLAPP law. *Barrett v. Rosenthal,* 40 Cal.4th 33, 41 fn 4 (2006); *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal.App.4th 392, 397 (2004). Public forums include "online message boards and forums 'that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions.'" *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.* 946 F.Supp.2d 957, 975 (2013).

Here, the Complaint alleges that DiCorcia's statements were posted and widely disseminated on X. Doc. No. 1 at p. 10, ¶ 43. Because the statements were published on X, the Court should conclude that DiCorcia has satisfied the "public forum" requirement.

### ii. The Alleged Statements Were Made in Connection with a Matter of Public Interest

To qualify for anti-SLAPP protection, the online statements attributed to the defendant must have been made in connection with a matter of public interest. Cal. Code Civ. Proc., § 425.16(e)(3). Any issue in which the public is interested is of "public interest." *Nygård, Inc. v. Uusi-Kerttula*, 159

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

- 14 -



Cal.App.4th 1027, 1042 (2008). In general, a public issue is implicated if the subject of the statement or activity underlying the claim was a person or entity in the public eye. *D.C. v. R.R.*, 182 Cal.App.4th 1190, 1215 (2010). The statements in question should contribute to the public debate, i.e., "participate[] in, or further[], the discourse that makes an issue one of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.,* 7 Cal.5th 133, 1166 (2019).

The subject matter of the two tweets attributed to DiCorcia pertains to the alleged existence of undercover videos. Presumably, the subject matter of these alleged video(s) evidence Baffert's mistreatment of his racehorses. Because Baffert is a well-known figure in the horseracing industry, and given the worldwide publicity arising, most recently from his ban from the Kentucky Derby, there is wide-spread discussion of his treatment of horses. Lewis Decl., ¶¶ 4-13, Exs. 1-9, the statements here implicate two issues of public concern: professional sporting industries such as the horse racing market, and animal cruelty.

"The Horse Racing Market size is valued at USD 396.21 Billion in the year 2022 and it is expected to reach USD 812.48 Billion in 2030, at a CAGR of 8.93% from 2024 to 2030." Lewis Decl. ¶ 16, Ex. 11. Given the demonstrated public interest in the Horse Racing Industry alone, tweets concerning one of horse racing's biggest players and implied misconduct renders the statements to be of significant public concern. *See Friedman v. DirecTV,* 262 F.Supp.3d 1000, 1004 (2015) [where defendant's alleged use and disclosure of plaintiff's ideas for a fantasy sports network was of interest to the public because there was a demonstrated widespread public interest in playing fantasy sports and in the creation of a network dedicated to fantasy sports].

Moreover, there is a demonstrated growing concern for the general welfare of animals used in entertainment and sporting events. In horse racing specifically, antiquated traditions leading to tragedy and scandal within the

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



SPECIAL MOTION TO STRIKE

sport have brought more attention to the realities of the once glamorous sport. For example, in 2019, more than thirty horses died at one track alone and allegations of doping have followed owners and trainers of prized horses. Lewis Decl., ¶ 17, Ex. 12. Indeed, in 2020, twenty-seven people were indicted over an alleged racehorse doping scheme. Lewis Decl., ¶ 18, Ex. 13. Widespread coverage of this scandal demonstrates it is a matter of genuine public concern. More specifically, a simple a search on Google News or X with the search terms "Baffert" and "doping" renders hundreds of articles, tweets, and responses detailing Baffert's misconduct. Lewis Decl., ¶ 12, Ex. 8.

Baffert's own allegations confirm tha the is in the public eye. He allege he is "an internationally recognized thoroughbred trainer." Doc. No. 1 at p. 2, ¶ 6. Baffert was even "elected to the National Thoroughbred Hall of Fame in 2009." Doc. No. 1 at p. 2, ¶ 6. The posts by DiCorcia contributed to and furthered the public discourse surrounding Baffert's role in the horseracing industry and the treatment of his animals. Accordingly, the statements were made in connection with a matter of public interest.

### iii.    The Extortion Exemption Established by the California Supreme Court in the *Flatley* Case does not Apply Here

In *Flatley v. Mauro* (2006) 39 Cal.4th 299, 300, the California Supreme Court established that anti-SLAPP motions are not available for defendants where the acts giving rise to liability are unquestionably criminal. In *Flatley*, a lawyer had engaged in criminal extortion in pre-litigation settlement demands. And, key to the outcome and rule established in the *Flatley* case, the defendant-lawyer there *conceded* that the activity was illegal as a matter of law. *Id.* at 320. In this case, DiCorcia denies that he sent any texts to Baffert demanding money. DiCorcia Decl. ¶ 6. And his one social media post, offering a trade involving Baffert's wife and two horses, with three laughing emojis, is not "unquestionably" criminal. DiCorcia denies his social media post

SPECIAL MOTION TO STRIKE

was intended to be extortion or was understood by anyone to be extortion. DiCorcia Decl. ¶ 6. He intended it as a joke as evidenced by his use of emojis and other context set forth below. For these reasons, the Court should conclude that the *Flatley* extortion exemption does not apply here.

## III. The Court Should Grant the Motion Because Baffert Cannot Meet his Burden of Proving a Probability of Prevailing

Once the Court concludes that the claims arise from protected activity, the burden shifts to Baffert to prove a probability of prevailing. *City of Santa Monica v. Stewart,* 126 Cal.App.4th 43, 71 (2005). It must provide such proof through admissible evidence. *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,* 106 Cal.App.4th 1219, 1236 (2003). As set forth below, Baffert cannot meet this standard.

## A. Both Claims Asserted by the Corporate Plaintiff are Bereft of Factual Allegations and Should be Dismissed

"Bob Baffert Racing Stables, Inc."[3] is one of the two plaintiffs identified on the caption page of the complaint. But the complaint does not allege that DiCorcia defamed or extorted the corporation. With respect to defamation, statements about a plaintiff "must be specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower,* 232 Cal.App.3d 1599, 1612 n.5 (1991); *Ferlauto v. Hamsher,* 74 Cal.App.4th 1394, 1405 (1999) [rejecting claims where statements "not even directed at" plaintiff]. Because the Complaint does not identify any statements about the corporation its claims fail.

---

[3] It is not even clear that "Bob Baffert Racing Stables, Inc." is a valid entity. The only corporation registered to do business in California bearing Baffert's name is "Bob Baffert Racing, Inc." Lewis Decl., ¶ 14. It is unclear if this discrepancy in the names is a typo or refers to a foreign unregistered corporation.

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



Nor can the corporate plaintiff rely on statements about Baffert, the individual, to support claims held by a corporation. Libel plaintiffs must show that the allegedly false statements or implications are "of and concerning" them specifically. *Blatty v. New York Times,* 42 Cal.3d 1033, 1044 (1986). An "organization and its members are not interchangeable" for purposes of defamation law. *Provisional Gov't of the Republic of New Afrika v. ABC,* 609 F.Supp. 104, 108 (D.D.C. 1985). "Statements which refer to individual members of an organization do not implicate the organization." *Ibid.* None of the statements attributed to DiCorcia in the complaint reference the Corporation. Accordingly, the Corporation has no basis for any claims.

## B. Baffert Cannot Show a Probability of Prevailing on the Defamation Claim Against DiCorcia

One of the claims by Baffert is for defamation under California law. Defamation is "the intentional publication of a statement of fact which is false, unprivileged…" *Price v. Stossel*, 620 F.3d 992, 998 (2010). In addition, where the defamation plaintiff is a public figure, the burden to survive an anti-SLAPP motion includes proof by clear and convincing evidence that "the defendant published the defamatory statement with actual malice, i.e., with knowledge that it was false or with reckless disregard of whether it was false or not." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889 (2016).

### i.   Baffert is a Public Figure

Public figure plaintiffs bear the strict burden of establishing that each defendant acted with "actual malice." *New York Times v. Sullivan,* 376 U.S. 254, 279-80 (1964). The public figure plaintiff must show "with clear and convincing evidence that the defendant realized that his statement was false or…subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union,* 466 U.S. 485, 511 n.30 (1984). This is a "heavy burden on plaintiffs, far in excess of the preponderance sufficient for

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



most civil litigation." *Eastwood v. National Enquirer*, 123 F.3d 1249, 1252 (1997). In the context of an anti-SLAPP motion, the Court is to evaluate the higher evidentiary burden of "clear and convincing proof." *Ibid.*

Whether a defendant acted with reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Wynn v. Chanos*, 75 F.Supp.3d 1228, 1234 (N.D. Cal. 2014). In evaluating whether a statement is one of fact rather than opinion, the Court reviews the context of the statement. *Moyer v. Amador Valley J. Union High School Dist.,* 225 Cal.App.3d 720, 725-26 (1990).

A limited public figure is one who "voluntarily injects" itself into a public controversy and thereby becomes a public figure for a limited range of issues. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351-52 (1974). Here, Baffert "is an internationally recognized thoroughbred trainer," Doc. No. 1 at p. 2, ¶ 6, who "has won more than 3,100 races, with purse earnings of $320,410,647 (the third highest of all time)." Doc. No. 1 at p. 2, ¶ 6. His public figure status is clearly marked by the number of search results that appear on Google News and X when using Baffert's name. Lewis Decl., ¶¶ 12-13, Exs. 8-9. Baffert has been the subject of wide-ranging media articles and news coverage regarding horseracing, the untimely death of one of his horses, Medina Spirit, and positive testing for at least one of his horses. Lewis Decl., ¶¶ 5-9, Exs. 1-5. Baffert has been lampooned on Saturday Night Live, The Onion and in political cartoons for his unsavory activities in the Horse Racing Market amid allegations of doping. Lewis Decl., ¶¶ 10-11, Exs. 6-7. Baffert's ongoing presence in the media makes him at the least, a limited public figure as to horse racing and doping if not a public figure for all purposes.

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



SPECIAL MOTION TO STRIKE

### ii.   DiCorcia Did Not Act with Actual Malice

Baffert has not satisfied "the demanding burden for pleading actual malice in defamation actions. *Wynn v. Chanos,* 75 F.Supp.3d 1228, 1239 (2014). This requires "specific allegations that would support a finding that [the defendant] harbored serious subjective doubts as to the validity of [their] assertions." *Ibid.* Accord *Vogel*, 127 Cal.App.4th at 1017 [SLAPP plaintiff must plead that defendant made each statement "with knowledge that it was false or with reckless disregard of whether it was false or not"].

Baffert has not pled facts and cannot produce evidence demonstrating actual maliceHis burden was to plead and prove that DiCorcia harbored "*actual doubt* concerning the truth of the publication." *Fletcher v. San Jose Mercury News,* 216 Cal.App.3d 172, 184 (1989) [emphasis in original]. Baffert's pleading fails these standards, and the available evidence is not likely to change the analysis. The complaint consists of conclusions rather than specific facts.

The closest Baffert comes to alleging actual malice is the conclusory allegation that "Defendants published their accusations in reckless disregard for their falsity." Doc. No. 1 at p. 11, ¶ 57. No facts suggesting why DiCorcia was reckless are pled. Moreover, as discussed below in section B. 4., DiCorcia never posted a statement of fact that could be proven true or false. DiCorcia simply commented on assertions made by Wunderler. Baffert confusingly alleges that DiCorcia accused Baffert "of engaging in "blood doping" and committing other criminal acts of animal cruelty." Doc. No. 1 at p. 10, ¶ 42. Baffert has not included in his post single post or piece of evidence supporting that assertion. Nowhere in the Complaint do we see a single post by DiCorcia that uses the words "blood doping."

Baffert goes on to allege "Defendant's statements accuse Baffert by name of committing specific conduct. Those statements can be proven as true

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



- 20 -

or disproven as false. Their express accusations of criminal activity cannot fairly be characterized as fair commentary or opinion." Doc. No. 1 at p. 11, ¶ 52. Baffert conflates the two individual defendants with the term 'Defendants' when allegations in reality pertain to Wunderler alone. None of the statements attributed to DiCorcia in the complaint even contain the use of Baffert's name, blood doping, animal cruelty, misconduct, or the like.

Baffert's conclusory allegations that DiCorcia's "conduct was reckless; callously indifferent to Baffert's rights; and motivated by the specific, malicious intent to harm Baffert…", Doc. No. 1 at p. 12, ¶ 65, are insufficient. *Stewart v. Rolling Stone LLC,* 181 Cal.App.4th 664, 690 (2010) [holding that "[m]ere negligence is not enough to demonstrate actual malice.")

With regard to the alleged video, Baffert pleads no facts that suggest how DiCorcia knew the content of the video was "deceptively edited" Doc. No. 1 at p. 12, ¶ 60. DiCorcia never even saw the alleged video. DiCorcia Decl., ¶ 5. For this reason alone, the anti-SLAPP may be granted based on the insufficiency of the pleading. *Nevallier v. Sletten* 29 Cal.4th 82, 89 (2002) [holding that anti-SLAPP prong two requires plaintiff to demonstrate that pleading is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment…'].

### iii. Baffert is Libel Proof due to Decades of Bad Actions and Bad Press

Certain plaintiffs have such terrible reputations that courts will deny them relief for defamation. Those plaintiffs are deemed libel proof. *Wynberg v. National Enquirer, Inc.,* 564 F.Supp. 924, 928 (C.D. Cal. 1982) presented such a case. In *Wynberg* the court found a plaintiff was libel-proof due to the plaintiff's notorious reputation and granted summary judgment against the plaintiff. The doctrine was applied because Wynberg had criminal convictions for bribery, prostitution, grand theft, and fraud. The *Wynberg* court held that

SPECIAL MOTION TO STRIKE



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

widespread discussion of the crimes in the press and magazines rendered application of the libel proof doctrine particularly apt. A similar result was reached in *Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298, 303 (2d Cir. 1986) [applying libel proof doctrine to publisher of pornography about lawsuit arising from accusations of adultery].

In this case, in the context of a plaintiff alleging defamation about plaintiff's role in the horse racing industry, the Court should likewise find that Baffert is libel proof. He has, for decades, been reported to have violated rules regarding horse racing. The cases applying the libel proof doctrine all raise the concern that the doctrine should only be applied sparingly. Can the Court recall another case (or imagine in the future getting another case) where one plaintiff has been the subject of a Saturday Night Live skit, an Onion parody piece, depicted in political cartoons and been reported on the pages of every major newspaper? The search results relating to Baffert's name clearly indicate Baffert's reputation is already so tarnished, the libel proof doctrine ought to apply. Lewis Decl., ¶¶ 4-13, Exs. 1-9. Baffert is a one-of-a-kind plaintiff that warrants application of the libel proof doctrine.

###   iv.   The Social Media Posts by DiCorcia Contain No Statement of Fact

An essential element of any defamation claim is the existence of a falsehood. *Wong v. Jing,* 189 Cal.App.4th 1354, 1370 (2010). If a reasonable fact finder could not conclude the statement declares or implies a provable false assertion of fact, no claim has been stated. *Ibid*. The statements attributed to DiCorcia contain no statements of fact. The only statements attributed to DiCorcia are pled in paragraphs 27, 28, and 29 of the Complaint.

**Paragraph 27**. Baffert alleges that "Mr. DiCorcia further attempted to substantiate his threats and stated his express intent to find the "best way to do damage." Doc. No. 1 at p. 7, ¶ 27. The screenshot presented by Baffert

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



directly under this allegation actually shows a post from Defendant Wunderler—not DiCorcia—that says: "For the record. NY times and Wash Post and others have reached out. Baffert has made a ton of enemies. We just (sic) discussing best way to do damage." Doc. No. 1 at p. 7, ¶ 27. DiCorcia did not post the foregoing statement. However, he did reply to that post with a reminder for an upcoming Spaces titled "Baffert Video Release." Doc. No. 1 at p. 7, ¶ 27.  What affirmative fact was conveyed to the reader of the post and in what way was the social media post false? Publishing a link to a future Spaces does not assert or imply a provably false fact. The title of the Spaces linked by DiCorcia was "Baffert Video Release." Notably, Baffert failed to attach to the complaint a transcript of the Spaces recording and nowhere in the Complaint does he cite to an actual statement of fact by DiCorcia which could be construed as defamatory.

**Paragraph 28.**  Baffert alleges: "Mr. Wunderler and Mr. DiCorcia also publicly posted the following demand for money, Baffert's wife, and two horses in exchange for a non-disclosure agreement." To support this assertion, Baffert provides a screen shot of a post by Wunderler that says:

> Ladies and Gentlemen we NOW HAVE A TRADE
> 3 team trade
> Jill and black duffle bag of cash to shoe
> Two two year olds and black duffle bag goes to swift and video maker lol
> Bob gets video and NDA no other copies.

To which, DiCorcia responded:

"make a deal swifty. Jill and 2 two year olds to be named later for the video. 😂 😂 😂."[4] Doc. No. 1 at p. 7, ¶ 28.

---

[4] The yellow face symbol used by DiCorcia is an emoji. "An emoji is a small digital image or icon used to express an idea or emotion in electronic communications." *People v. Moye*, 38 N.Y.S.3d 832, fn. 5 (N.Y. Sup. Ct. 2016) [citing Oxford English Dictionary (2006)]; the symbol of a smiling face crying is commonly known as a Rolling on the Floor Laughing emoji.

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



SPECIAL MOTION TO STRIKE

The first phrase attributed to DiCorcia is "make a deal swifty." The second phrase attributed to DiCorcia is "Jill and 2 two year olds to be named later for the video. 😂 😂 😂." Neither phrase asserts or implies a provably false fact.

**Paragraph 29.**  Baffert, conflating the actions of two individuals, alleges that DiCorcia appeared with Wunderler in Spaces and they said they had a video, they planned to "take down" Baffert and the video was going to be released by someone to the New York Times. Doc. No. 1 at p. 8, ¶ 29. The complaint does not specifically say that DiCorcia made any such statement. Baffert must provide prima facie evidence that those alleged statements were actually made within Spaces and such statements were made by DiCorcia to survive this motion to strike. *Christian Research Institute v. Alnor,* 148 Cal.App.4th 71, 80 (2007) [holding that a plaintiff opposing an anti-SLAPP motion must demonstrate a legally sufficient claim supported by prima facie showing of facts sufficient to sustain a favorable judgment].)

### C. The Facts Pled by Baffert as to Claimed Extortion Do Not Establish a Claim for Relief

California has long held that there is no civil tort for attempted extortion. Absent a payment or other transaction made under threat or duress, there is no cause of action. If Baffert had actually paid anything of value, he would have the right to seek a recovery of that payment under the doctrine of duress. *Fuhrman v. California Satellite Systems,* 179 Cal.App.3d 408 (1986) [overruled on other grounds by *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990)]. Baffert's failure to pay the extortion renders a civil claim untenable. The facts constituting extortion in the complaint support only a cause of action for recission and a return of any funds, had Baffert paid any.

---

"*Full Emoji List, v11.0*, Unicode, http://www.unicode.org/emoji/charts-11.0/full-emoji-list.html (last accessed Dec. 13, 2023).

SPECIAL MOTION TO STRIKE

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

*Tran v. Nguyen*, 2023 WL 8231809, at *9-10 (Cal. Ct. App., Nov. 28, 2023, No. G061633). Perhaps cognizant of his lack of payment and lack of any economic damages, Baffert also alleges he suffered emotional distress as a result of the extortion. Doc. No. 1 at p. 9, ¶ 39. But even if Baffert had pled a valid claim for civil extortion, emotional distress damages are not permitted to be recovered for civil extortion. *Tran v. Nguyen, supra*, 2023 WL 8231809, at *9. Baffert's complaint alleges no facts showing any actual damage caused by the claimed extortion. And given the avalanche of negative media stories about Baffert, no credible claim of damages proximately caused by DiCorcia can be mounted. "Actual injury has always been required as a prerequisite to civil liability." *American Airlines v. Sheppard,* 96 Cal.App.4th 1017, 1044 (2002). Baffert suffered no actual injury from the social media posts.

In meet and confer efforts preceding the filing this motion, Baffert's counsel suggested that *Monex Deposit Co. v. Gilliam,* 666 F. Supp. 2d 1135 (C.D. Cal. 2009) recognized a civil claim for extortion, even absent payment. *Monex* is of little value to the disposition of this motion for two reasons.

*Monex* is, obviously, a federal decision and is merely persuasive authority. *Fuhrman* is a state court decision and in matters involving the application of state law, the pronouncements of state law by state courts are binding on federal courts. *Morgan v. Robinson*, 156 F. Supp. 2d 1133, 1142 (C.D. Cal. 2001). Federal courts must defer to the state court construction of criminal laws unless that interpretation is untenable or an attempt to evade federal review of a constitutional issue. *Ibid*. Moreover, *Monex* merely held that a trial court has the discretion—not the duty—to recognize a civil tort of extortion if the court so chooses. *Ibid*. [holding that if a criminal statute does not provide a civil cause of action, the court "may" allow a person injured by the criminal conduct a "new cause of action analogous to an existing tort action."

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

- 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

Even if a civil claim for extortion was available to Baffert, the facts pled by him do not establish extortion by DiCorcia. Baffert alleges: "Mr. Wunderler and Mr. DiCorcia also publicly posted the following demand for money, Baffert's wife, and two horses in exchange for a non-disclosure agreement." To support this assertion, Baffert provides a screen shot of a post by Wunderler – not DiCorcia – that says:

> Ladies and Gentlemen we NOW HAVE A TRADE
> 3 team trade
> Jill and black duffle bag of cash to shoe
> Two two year olds and black duffle bag goes to swift and video maker lol
> Bob gets video and NDA no other copies.

The foregoing statements were all made by Wunderler – not DiCorcia.

DiCorcia responded to the above social media post with two phrases: "make a deal swifty. Jill and 2 two year olds to be named later for the video. " Doc. No. 1 at p. 7, ¶ 28.

The reference by DiCorcia to "two year olds to be named later" is a riff on Major League baseball trade terminology. DiCorcia Decl., ¶ 6. Major League Baseball teams sometimes engage in complicated trades involving a "player to be named later." DiCorcia Decl., ¶ 6. The post was intended as comedy to DiCorcia's followers, who would understand that the post was a joking reference to Major League Baseball. DiCorcia also ended his post with three "rolling on the floor laughing" emojis to ensure that his audience understood that the "offer" was not serious. Rolling on floor laughing emojis, like the ones used by DiCorcia here have been used by various courts to ascertain the intent of the speaker and the impact on the audience. For example, emojis have been used to differentiate between true threats from hyperbole or jokes. *State v. D.R.C.,* 13 Wash. App. 2d 818, 827 (Wash. Ct. App. 2020). Happy emoticons have been interpreted by courts to mean playfulness *Microstrategy, Inc. v. Business Objects,* 331 F. Supp. 2d 396, 404 (E.D. Va.

SPECIAL MOTION TO STRIKE



2004). And in one case the use of a smiley emoticon by a plaintiff-employee foreclosed a finding of hostile work environment. *Arnold v. Reliant Bank,* 932 F. Supp. 2d 840, 854 (M.D. Tenn. 2013).

Baffert claims DiCorcia's post, including three "rolling on the floor laughing" emoticons constituted a "demand for money, Baffert's wife, and two horses in exchange for a non-disclosure agreement." Doc. No. 1 at p. 7, ¶ 28. The post does not constitute extortion. First, the initial post was by Wunderler—not DiCorcia. DiCorcia at most, replied sarcastically to Wunderler's post. Second, the posts by both DiCorcia and Wunderler are clearly not serious demands. The use of playful emojis indicates DiCorcia was making this post in jest. And while extremely distasteful, including the name of Baffert's wife as part of the "deal" illustrates the sardonic nature of the exchange. Any reasonable person would read the tweets as they were intended to be perceived—as a joke.

### D. Baffert Cannot Establish the Elements of Conspiracy

Baffert's complaint includes an allegation of conspiracy. But civil conspiracy is not an independent cause of action. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510 (1994) ("*Applied Equipment*"); *Kenne v. Stennis,* 230 Cal.App.4th 953, 968 (2014). Instead, it is a theory of co-equal legal liability under which certain defendants may be held liable for "an independent civil wrong" committed by others. *Rusheen v. Cohen,* 37 Cal.4th 1048, 1062 (2006); see also *Applied Equipment* at p. 511; *Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 44 (1989). To the extent this Court concludes that no claim has been stated as to defamation and extortion, the conspiracy allegation alone provides no basis for relief.

Even if the Court finds there is a viable claim for defamation or civil extortion, Baffert still failed to establish the elements of civil conspiracy: (1) the formation of a group of two or more persons who agreed to a common plan



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

SPECIAL MOTION TO STRIKE

or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages. *City of Industry v. City of Fillmore,* 198 Cal.App.4th 191 (2011).

The complaint alleges in conclusory fashion that DiCorcia was a co-conspirator with Mr. Wunderler. Doc. No. 1at p. 7 ¶ 27, and p. 9, ¶ 37. However, it was Mr. Wunderler who posted several statements on Twitter and DiCorcia merely replied to his tweets. Baffert failed to allege the first element of conspiracy because there was never an agreement between DiCorcia and Wunderler to a common plan or design to commit a tortious act against Baffert. Wunderler is the one who claimed to have the video at issue in this case. Wunderler posted about the video and Wunderler alone claimed to have knowledge of the contents of the video. On the other hand, DiCorcia questioned Wunderler and doubted the video even existed. DiCorcia Decl., ¶ 5. Nothing alleged in the complaint demonstrates DiCorcia and Wunderler had a common plan or scheme to extort Baffert. Simply replying to a tweet does not make someone a conspirator. As such, Baffert failed to establish the elements of conspiracy against DiCorcia.

## IV.   Conclusion

Based on the foregoing, DiCorcia respectfully requests that the Court grant the motion.

DATED:  December 14, 2023     **JEFF LEWIS LAW, APC**


By:   ____/s/ Jeffrey Lewis____
Jeffrey Lewis

Attorneys for Defendant
Daniel DiCorcia

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



SPECIAL MOTION TO STRIKE