UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>JUSTIN A. WUNDERLER and DANIEL DICORCIA,<br><br>                              Defendants. | Case No.:  23-cv-1774-RSH-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT DANIEL DICORCIA'S MOTION TO DISMISS; AND**<br><br>**(2) DENYING THE REMAINING MOTIONS AS MOOT**<br><br>[ECF Nos. 16, 34] |

Before the Court are: (1) Defendant Daniel DiCorcia's Rule 12(b)(6) motion to dismiss and motion to strike under California's anti-SLAPP statute, ECF No. 16; and (2) Plaintiffs' motion to amend the Complaint, ECF No. 34. For the reasons below, the Court grants Defendant's motion to dismiss, denies as moot DiCorcia's motion to strike, and denies as moot Plaintiffs' motion to amend.

## I.     FACTUAL BACKGROUND

Plaintiffs Bob Baffert and Bob Baffert Racing Stables, Inc. (collectively, "Plaintiffs") bring suit against Defendants Justin Wunderler and Daniel DiCorcia

("Defendants"). Plaintiff Bob Baffert is an internationally recognized thoroughbred racehorse trainer who has trained horses for over 47 years. ECF No. 1 ¶ 6. Baffert's horses have won races such as the Kentucky Derby, the Preakness Stakes, and the Belmont Stakes; and in 2009, Baffert was elected to the National Thoroughbred Hall of Fame. *Id*. Baffert has won more than 3,100 races, with purse earnings of $320,410,647, which is the third highest of all time. *Id*.

Defendants reside in New Jersey and are racing bettors who have a substantial social media presence and following. *Id*. ¶¶ 8, 10. Defendant Wunderler's social media utilizes the pseudonym "Swifthitter," while Defendant DiCorcia utilizes the pseudonyms "Shoe," "@shoeeatsturfforbreakfast," and "barshoelife." *Id*.

The Complaint alleges that Defendants "have engaged in an escalating pattern of unlawful and threatening behavior directed specifically at Baffert and his family." *Id*. ¶ 14. According to the Complaint, Defendant Wunderler has asked followers to throw dangerous objects at Baffert and his family and posted a picture of his house, claiming that Baffert "slaughters horses on National TV." *Id*. ¶¶ 15, 16. On May 23, 2023, Wunderler posted the following on the social media platform "X," formerly known as Twitter.



*Id*. ¶ 17.

Primarily, Defendants have accused Baffert of "blood doping" or using erythropoietin ("EPO") on his horses, the use of which Plaintiffs maintain would constitute the criminal act of using a substance to influence the outcome of a race. ECF No. 23 at 3 n.2. The Complaint contends that allegations of blood doping and animal cruelty are especially harmful to Baffert, who may face higher scrutiny than the average racehorse trainer given his high-profile status. ECF No. 1 ¶ 50.

23-cv-1774-RSH-BLM

1   On September 5, 2023, Defendant Wunderler announced on X that "[t]here is a video
2   out there that will end Baffert." *Id*. ¶¶ 22, 24. The following day, Wunderler posted the
3   following on X:



8   *Id*. ¶ 25. Wunderler continued to warn Baffert on X that he will post more damaging
9   information unless Baffert "[s]teps away from the game."



16  *Id*. ¶ 26. On the same day, Wunderler reposted DiCorcia's post regarding a "Baffert Video
17  Release" on X's platform called "Spaces." *Id*. ¶ 27. Wunderler stated that *The New York*
18  *Times* and *Washington Post* have reached out and that they were "discussing the best way
19  to do damage[.]"



27  *Id*. Defendants appeared together on "Spaces" and allegedly discussed their possession of
28  the video, their intent to "take down" Baffert, and the potential release of the video to *The*

23-cv-1774-RSH-BLM

1    *New York Times*. *Id*. ¶ 29. Defendants then made the following demand on X for a "duffle

2    bag of cash," Baffert's wife, and two horses in exchange for the video and a non-disclosure

3    agreement.



10    *Id*. ¶ 28. The Complaint alleges Defendants, acting as co-conspirators, drafted and sent the

11    following text message the next day to be forwarded to Baffert's representatives:



19    *Id*. ¶¶ 30, 37.

20        On September 27, 2023, Plaintiffs filed the operative Complaint, bringing two

21    claims against Defendants for (1) civil extortion and (2) defamation. With respect to the

22    civil extortion claim, the Complaint asserts that Defendants engaged in a conspiracy to

23    extort money from Baffert, in exchange for a promise not to release information damaging

24    to Baffert. *Id*. ¶ 35.

25        Regarding the defamation claim, the Complaint alleges that Defendants made

26    various false statements accusing Baffert of engaging in blood doping and committing

27    criminal acts of animal cruelty. *Id*. ¶ 42. Among others, Wunderler accused Baffert of

28    scratching a thoroughbred racehorse named "Muth" because of a "reaction to EPO. 100

1   %%%" and claimed at least twice that a "bad shipment of EPO has hit [Baffert's] barn."

2   *Id*. ¶ 44. Wunderler also accused Baffert of blood doping a thoroughbred racehorse named

3   "Medina Spirit," who won the Kentucky Derby. *Id*. ¶ 45. The Complaint alleges that

4   Defendants made such accusations despite knowing that various investigations and

5   government agencies have not found evidence that Baffert engages in blood doping or

6   animal cruelty. *Id*. ¶ 56.

7          Plaintiffs seek compensatory and punitive damages, injunctive relief, and attorney's

8   fees and costs. *Id*. at 12-13.

9          On December 14, 2023, Defendant DiCorcia filed a motion to dismiss and an anti-

10  SLAPP motion to strike, which are fully briefed. ECF Nos. 16 (opening brief); 23

11  (opposition); 25 (reply). On April 12, 2024, Plaintiffs filed an unopposed motion to amend

12  the Complaint. ECF No. 34.

13  **II.     LEGAL STANDARD**

14         "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*,

15  250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege

16  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

17  *Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff

18  pleads factual content that allows the court to draw the reasonable inference that the

19  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20  "*Iqbal* explained that '[t]wo working principles underlie' *Twombly*: (1) courts need not

21  accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action,

22  supported by mere conclusory statements;' and (2) only a complaint that states a plausible

23  claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief

24  can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th

25  Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678-79).

26         //

27         //

28

1  **III.   DISCUSSION**

2      **A.     Civil Extortion**

3          The Complaint first asserts a civil extortion claim against Defendants based on their

4  statements on X and a text message sent to Baffert's representatives.

5          Defendant argues that under *Fuhrman v. California Satellite Systems*, 179 Cal. App.

6  3d 408 (Ct. App. 1986), the Complaint fails to state a claim. In *Fuhrman*, the Court of

7  Appeal held that the plaintiff failed to state a claim for civil extortion by failing to allege

8  legally cognizable damages. In that case, "[t]he only actual damages plaintiff allege[d]

9  [we]re her emotional distress and attorney fees." *Id.* at 426.[1] The court held that attorneys'

10  fees were not recoverable absent an applicable contract or statutory provision for the

11  payment of fees; and also determined that, where the plaintiff did not actually pay over the

12  money demanded, damages for emotional distress were not recoverable. *Id.* at 426-28. In

13  the absence of actual damages, the plaintiff was not entitled to punitive damages either. *Id.*

14  at 428. Here, similar to *Fuhrman*, Plaintiffs seek actual damages based solely on "mental

15  anguish and distress," ECF No. 1 ¶ 39, and also seeks punitive damages, *id.* ¶ 40.

16          Plaintiffs respond by arguing that a civil extortion claim may lie even where the

17  plaintiff did not accede to the extortionate demand, relying on district court decisions. *See*

18  *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1136-37 (C.D. Cal. 2009) (citing Cal.

19  Penal Code § 523) ("[A]ny threat such as is specified in section 519, *is punishable in the*

20  *same manner as if such money or property were actually obtained by means of such*

21  *threat*."); *Baker v. FirstCom Music*, No. LACV 16-8931-VAP , 2017 WL 9510144, at *12

22  (C.D. Cal. July 27, 2017) ("The extorter need not have actually obtained money or property

23  for an extortion claim to stand.") (citing *Monex*). In *Monex*, the district court concluded

24  that *Fuhrman* was distinguishable because the plaintiff in *Fuhrman* had not alleged legally

25

26

27  [1]    In *Silberg v. Anderson*, 50 Cal.3d 205, 217-19 (1990), the California Supreme Court

28  expressed disapproval of an unrelated holding in *Fuhrman*, relating to the nature and scope of the litigation privilege.

6

1  cognizable damages. *Monex*, 666 F. Supp. 2d at 1136. The district court also noted that

2  *Fuhrman* predated the California Supreme Court's adoption of section 874A of the

3  Restatement (Second) of Torts, which allows courts to infer a tort cause of action from a

4  legislative provision that proscribes certain conduct. *Id.* at 1137 (citing *Katzberg v. Regents*

5  *of the Univ. of Cal.*, 29 Cal. 4th 300, 310 (2002) (adopting the Restatement provision)).

6  The district court declined to dismiss the plaintiff's civil extortion claim.

7        Here, Plaintiffs' opposition brief does not identify any remedy sought for civil

8  extortion beyond damages for emotional distress and punitive damages – remedies that

9  were sought and deemed non-cognizable in *Fuhrman*. *See Intermarketing Media, LLC v.*

10  *Barlow*, No. 20-CV-00889-JLS, 2021 WL 5990190, at *12 (C.D. Cal. May 4, 2021) (listing

11  cases that analyze requirement that plaintiff suffered actual damages from extortion). Nor

12  do Plaintiffs cite any other authority establishing that they are entitled to damages for

13  emotional distress on a civil extortion claim. They argue that the civil extortion claim

14  should be treated instead as a defamation claim, but do not provide a legal basis for doing

15  so. Accordingly, this case is controlled by *Fuhrman* and the civil extortion claim is subject

16  to dismissal.

17  **B.    Defamation**

18        The Complaint also asserts a defamation claim against Defendants based on five

19  statements that were published on X: (1) Baffert scratched a thoroughbred racehorse named

20  "Muth" because of a "reaction to EPO. 100 %%%"; (2) a "bad shipment of EPO has hit

21  [Baffert's] barn"; (3) Baffert "blood doped" a thoroughbred racehorse named Medina

22  Spirit; (4) "Justify was a Natural Talent and Baffert used all kind of shit on em. And his

23  career short lived. Juiced snd [sic] talent for stud deal"; and (5) Baffert intentionally maims,

24  tortures, wounds, or kills his horses. ECF No. 1 ¶¶ 42-48.

25        To state a defamation claim under California law, a plaintiff must show: "(a) a

26  publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural

27  tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720

28  (2007) (citation omitted). "Defamation is effected by" either libel or slander. Cal. Civ.

1   Code § 44. "Libel is a false and unprivileged publication by writing . . . which exposes any

2   person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or

3   avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. To

4   allege defamation, a plaintiff must allege "the speakers of the defamatory communications,

5   the recipients, the timing, or the context in which they were made, sufficient to provide

6   [the defendant] sufficient notice of the issues to enable preparation of a defense." *Jones v.*

7   *Thyssenkrupp Elevator Corp.*, No. C-05-3539 EMC, 2006 WL 680553, at *6 (N.D. Cal.

8   Mar. 14, 2006) (citation omitted).

9          A plaintiff who is a public figure must also plead and prove "actual malice," that is,

10   that the statement was made "with knowledge that it was false or with reckless disregard

11   of whether it was false or not." *Reader's Dig. Ass'n. v. Super. Ct.*, 37 Cal. 3d 244, 256

12   (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Whether an

13   individual is a public figure is a question of law that must be assessed through a totality of

14   the circumstances. *Id.* at 255.

15          Here, the portion of the Complaint identifying the defamatory statements is

16   markedly different from the portion identifying the extortionate statements. The allegedly

17   extortionate statements are set forth verbatim, as images taken from the social media

18   platform X. The Complaint provides the dates and context of the statements, and explains

19   the manner in which the statements are extortionate. The Complaint takes a contrasting

20   approach to the allegedly defamatory statements – even though all of the statements at issue

21   were allegedly made in writing on the same social media platform. One of the allegedly

22   defamatory statements is quoted in full, while others have only single words or short

23   phrases quoted, or are not quoted at all. The Complaint provides the date for two of the

24   five statements, but does not provide the context for any of the statements. Although the

25

26

27

28

23-cv-1774-RSH-BLM

1   Complaint asserts that the statements are false, it does not identify how each statement is
2   false.[2]

3       Additionally, Plaintiffs' brief appears to concede that Baffert is a public figure. *See*
4   ECF No. 1 ¶ 6 ("Baffert is an . . . internationally recognized thoroughbred trainer. He has
5   . . . won races at the highest level of the sport."); ECF No. 23 at 1:27-28 ("Notwithstanding
6   his position as a public figure . . ."). But the Complaint fails to plausibly allege non-
7   conclusory facts establishing that any of the statements at issue was made with actual
8   malice. Plaintiffs allege that "Defendants levied these accusations despite knowing that
9   multiple investigations have repeatedly found no evidence that Baffert engages in 'blood
10  doping' and knowing that no government agency has ever even accused Baffert of 'animal
11  cruelty.'" ECF No. 1 ¶ 56. The Complaint does not provide any further detail about these
12  "multiple investigations," what they concluded and when, how and when their results were
13  communicated to the public, or how these investigations demonstrate actual malice as to
14  each of the five allegedly defamatory statements.

15      In summary, the defamation claim fails to plead a plausible claim for relief and is
16  subject to dismissal. *See Gressett v. Contra Costa Cnty*., No. C-12-3798 EMC, 2013 WL
17  2156278, at *30 (N.D. Cal. May 17, 2013) (granting motion to dismiss when allegation did
18  not "identify who made which statements or when they made each such statement, thus
19  lacking the specificity required by *Iqbal* and *Twombly*.").

20      Accordingly, the Court grants Defendant's motion to dismiss, and dismisses the
21  Complaint. The Court denies as moot Defendant's motion to strike.

---

22
23
24  [2]   For example, one of the allegedly defamatory statements is that "Baffert 'blood
    doped' the thoroughbred racehorse *Medina Spirit*, who won the Kentucky Derby." ECF
25  No. 1 ¶ 45. The Complaint alleges broadly and in the present tense that Baffert "does not
    engage in blood doping," *Id*. ¶ 54, but does not deny ever having engaged in blood doping.
26  Plaintiffs' own submissions reflect that after winning the Kentucky Derby, *Medina Spirit*
27  tested positive for a substance that was prohibited on race day, and Baffert was
    consequently banned from the race. *See* ECF No. 23-6, Ex. 11.  It is not clear how Plaintiffs
28  contend that the statement was false.

## IV.    LEAVE TO AMEND

A district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court concludes that the pleading defects identified above may be susceptible to being cured by amendment. Accordingly, the Court grants Plaintiffs twenty-one (21) days from the date of this Order to file an amended complaint.

On April 12, 2024, with the motions to dismiss and to strike pending, Plaintiffs filed an unopposed motion to amend the Complaint. ECF No. 34. Plaintiffs' proposed First Amended Complaint seeks to: (1) correct Plaintiff Baffert's business name by using its registered name, "Bob Baffert Racing, Inc." in the caption and allegations; (2) add a paragraph describing Plaintiff Baffert's business, and his ownership and management of it, in Paragraph 8; and (3) correct a minor typographical error in Paragraph 4 to add the term "because." *Id*. at 2. Plaintiffs' motion represents that Defendant DiCorcia's counsel has no objection to the motion, and Defendant Wunderler's prior counsel previously communicated no objection to the motion prior to his withdrawal. *Id*. Defendant Wunderler, who is now proceeding pro se, has not filed any opposition. In light of the Court's dismissal of the Complaint with leave to amend, the Court denies as moot the motion for leave to amend.

## V.    CONCLUSION

For the foregoing reasons:

1.    Defendant DiCorcia's motion to dismiss, ECF No. 16, is **GRANTED**.

2.    The Complaint is **DISMISSED** with leave to amend. Within twenty-one (21) days of the date of this Order, Plaintiffs may file an amended pleading curing the defects identified above, as well as making the changes sought in Plaintiffs' motion for leave to amend. If Plaintiffs do not file an amended complaint within that time, the action will be dismissed.

//

//

1    3.    Defendant DiCorcia's motion to strike, ECF No. 16, is **DENIED** as moot.

2    4.    Plaintiffs' motion for leave to amend, ECF No. 34, is **DENIED** as moot.

3    **IT IS SO ORDERED**.

4    Dated: June 6, 2024

_____
Hon. Robert S. Huie
United States District Judge

11

23-cv-1774-RSH-BLM