1   Jeffrey Lewis (Bar No. 183934)
2   **JEFF LEWIS LAW, APC**
    827 Deep Valley Drive, Suite 209
3   Rolling Hills Estates, CA 90274
    Tel. (310) 935-4001
4   Fax. (310) 872-5389
    E-Mail: Jeff@JeffLewisLaw.com
5
    Attorneys for Defendant Daniel
6   DiCorcia

7

8                   **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  BOB BAFFERT, et al.,            ) Case No.:  3:23-cv-01774-RSH-BLM
                                    )
12          Plaintiffs,             ) **DEFENDANT DANIEL**
                                    ) **DICORCIA'S NOTICE OF MOTION**
13      vs.                         ) **AND SPECIAL MOTION TO**
                                    ) **STRIKE OR, IN THE**
14  JUSTIN WUNDERLER, et al.,       ) **ALTERNATIVE, DISMISS FIRST**
                                    ) **AMENDED COMPLAINT**
15          Defendants.             ) **PURSUANT TO FRCP 12(B)(6)**
                                    )
16  _____)
                                      Date:        August 13, 2024
17
                                      PER CHAMBERS RULES, NO
18                                    ORAL ARGUMENT UNLESS
                                      SEPARATELY ORDERED BY
19                                    THE COURT.

20

21

22

23

24

25

26

27

28

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

---

                            MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on August 13, 2024 or as soon thereafter as the matter may be heard in Courtroom 3D of the United States District Court, Central District, Southern Division, located at 333 West Broadway, San Diego, CA 92101, Defendant Daniel DiCorcia will and hereby does move this Court for an order striking Plaintiffs Bob Baffert and Bob Baffert Racing, Inc.'s First Amended Complaint, Doc. 36, ¶ 179[1], in its entirety with prejudice pursuant to Code of Civil Procedure section 425.16, or in the alternative, dismiss the First Amended Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). In the alternative, DiCorcia requests that the individual claims of either extortion or defamation be dismissed.

This motion is based on this Notice and the attached Memorandum of Points and Authorities, the Declarations of Jeffrey Lewis and Daniel DiCorcia filed concurrently herewith, and such further evidence and argument as the Court may receive at the hearing.

DATED:  July 9, 2024                    **JEFF LEWIS LAW, APC**


By:   ____/s/ Jeffrey Lewis____
        Jeffrey Lewis

        Attorneys for Defendant
        Daniel DiCorcia

---

[1] This brief includes hyperlinks to the record and authorities using Clearbrief, a service that is AICPA SOC II, Type 2 audited for security.



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................... 3

TABLE OF AUTHORITIES ................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 10

    I.     Introduction ................................................................... 10

    II.    Legal Standard ............................................................... 13

          A.    California's Anti-SLAPP Law ............................... 13

          B.    Federal 12(b)(6) Standards.................................... 14

          C.    Principles of Defamation Law and the First Amendment . 15

    III.   Baffert's Notorious History in Horse Racing................................ 15

    IV.   The Court Should Grant the Special Motion to Strike Because This Lawsuit Arises from Protected Activities.............. 18

          A.    The Claims Arise from DiCorcia's Social Media Posts About Baffert and Those Posts are Protected Activities ................................................................. 18

               i.    The Alleged Statements Were Made in a Public Forum ........................................................ 18

               ii.   The Alleged Statements Were Made in Connection with a Matter of Public Interest ........... 18

    V.   Because Baffert has Failed to Allege a Legally Sufficient Claim the Court Should Either Grant the Special Motion to Strike, or Alternatively, Grant the Motion to Dismiss ................ 20

          A.    The Defamation Claim Asserted by Baffert's Corporate Affiliate is Legally Insufficient Because DiCorcia Never Mentioned or Described the Corporate Plaintiff in any Tweets...................... 21

          B.    Baffert is a Public Figure Required to Plead and Prove Actual Malice ........................................... 22

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

C.   Baffert Failed to Allege Facts Demonstrating Actual Malice: that DiCorcia Harbored Actual Doubt or Reckless Disregard as to the Truth of the Statements ...... 23

D.   Baffert's Claim, if any, is Defamation Per Quod not Defamation Per Se Because Baffert's Theory of Falsity Relies on a Readership Possessing Inside Knowledge of Horse Racing ................................................................... 24

E.   The Tweets by DiCorcia are Opinions in Light of the Broad Context (Twitter) and the Hyperbole Employed ..... 26

F.   The Tweets by DiCorcia are Inactionable ........................... 27

G.   Baffert is Libel Proof due to Decades of Bad Actions and Bad Press ........................................................................ 31

H.   The Conspiracy Claim Rises or Falls with the Defamation Claim ............................................................... 32

VI.   Conclusion ...................................................................................... 33

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*CASES*

*AG v. Polis,*
   2022 U.S. App. LEXIS 7992 (2d Cir. Mar. 28, 2022) ................................ 27

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal.4th 503 (1994) ................................................................. 32

*Barnes-Hind, Inc. v. Superior Court,*
   181 Cal.App.3d 377 (1986) ................................................... 24, 25

*Barrett v. Rosenthal,*
   40 Cal.4th 33 ........................................................................... 18

*Blatty v. New York Times,*
   42 Cal.3d 1033 (1986) ............................................................. 21

*Bose Corp. v. Consumers Union of U.S., Inc.,*
   466 U.S. 485 (1984) ........................................................... 12, 22

*Bowles v. Constellation Brands, Inc.,*
   444 F. Supp. 3d 1161 (E.D. Cal. 2020) .................................... 21

*Braun v. Chronicle Publ'g Co.,*
   52 Cal.App.4th 1036 (1997) .................................................... 13

*Briggs v. Eden Council For Hope,*
   19 Cal.4th 1106 (1999) ........................................................... 14

*City of Industry v. City of Fillmore,*
   198 Cal.App.4th 191 (2011) .................................................... 32

*City of Santa Monica v. Stewart,*
   126 Cal.App.4th 43 (2005) ...................................................... 20

*Clifford v. Trump,*
   339 F. Supp. 3d 915 (C.D. Cal. 2018) ..................................... 26

*CoreCivic, Inc. v. Candide Grp.,*
   46 F.4th 1136, 1146 (2022) ..................................................... 13

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

MOTION

*D.C. v. R.R.*,
   182 Cal.App.4th 1190 (2010) ..................................................................... 19

*DeMartini v. DeMartini*,
   964 F.3d 813 (9th Cir. 2020) ..................................................................... 24

*Doctors' Co. v. Superior Court*,
   49 Cal.3d 39 (1989) ................................................................................... 32

*Eastwood v. National Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) ....................................................... 12, 22, 24

*Ferlauto v. Hamsher*,
   74 Cal.App.4th 1394 (1999) ...................................................................... 21

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal.5th 133 (2019) .................................................................................. 19

*Fletcher v. San Jose Mercury News*,
   216 Cal.App.3d 172 (1989) ........................................................................ 23

*Friedman v. DirecTV*,
   262 F.Supp.3d 1000 (2015) ........................................................................ 19

*Gallagher v. Philipps*,
   563 F. Supp. 3d 1048 (S.D. Cal. 2021) ...................................................... 11

*Gressett v. Contra Costa Cnty.*,
   No. C-12-3798 EMC (N.D. Cal. May. 17, 2013) ................................. 15, 23

*Guccione v. Hustler Magazine, Inc.*,
   800 F.2d 298 (2d Cir. 1986) ................................................................. 17, 31

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ................................................................................... 12

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020) ...................................................... 27

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (2010) ................................................................................... 13

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

*Jevremovic v. Courville,  (ZNQ) (RLS),*
    2023 U.S. Dist. LEXIS 139440 (D.N.J. Aug. 10, 2023) ............................ 27

*Kahn v. Bower,*
    232 Cal.App.3d 1599 (1991) ........................................................ 21

*Karimi v. Golden Gate School of Law,*
    361 F. Supp. 3d 956 (N.D. Cal. 2019) ........................................ 11

*Kenne v. Stennis,*
    230 Cal.App.4th 953 (2014) ........................................................ 32

*Kunysz v. Sandler,*
    146 Cal.App.4th 1540 (2007) ...................................................... 13

*Lieberman v. Fieger,*
    338 F.3d 1076 (9th Cir. 2003) .................................................... 26

*Moyer v. Amador Valley J. Union High School Dist.,*
    225 Cal.App.3d 720 (1990) .......................................................... 22

*Navellier v. Sletten,*
    29 Cal.4th 82 (2002) ................................................................... 14

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ............................................................ 17, 22

*Nygård, Inc. v. Uusi-Kerttula,*
    159 Cal.App.4th 1027 (2008) ...................................................... 18

*Oracle USA, Inc. v. Rimini Street, Inc.,*
    2010 WL 4386957 (2010) ............................................................ 30

*Pacquiao v. Mayweather,*
    803 F. Supp. 2d 1208 (D. Nev. 2011) .................................... 14, 15

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .................................................. 29, 31

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,*
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ........................................ 18

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

MOTION

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,*
890 F.3d 828 (9th Cir. 2018) ................................................................ 20

*Provisional Gov't of the Republic of New Afrika v. ABC,*
609 F. Supp. 104 (D.D.C. 1985) ........................................................... 22

*Rusheen v. Cohen,*
37 Cal.4th 1048 (2006) ......................................................................... 32

*Shively v. Bozanich,*
31 Cal. 4th 1230 (2003) ........................................................................ 21

*Talbot v. Ainuu,*
2024 WL 896370 (D. Mont., Mar. 1, 2024, No. CV-23-66-BU-BMM) ...... 27

*The Travelers Indem. Co. v. Lara,*
84 Cal.App.5th 1119 (2022) .................................................................. 12

*Traditional Cat Assn., Inc. v. Gilbreath,*
118 Cal.App.4th 392 (2004) .................................................................. 18

*Vogel v. Felice,*
127 Cal.App.4th 1017 ........................................................................... 23

*Wetzel v. Gulf Oil Corp.,*
455 F.2d 857 (9th Cir. 1972) ................................................................ 26

*Wong v. Jing,*
189 Cal.App.4th 1354 (2010) ............................................................... 26

*Wynberg v. National Enquirer, Inc.,*
564 F. Supp. 924 (C.D. Cal. 1982) ................................................... 17, 31

*Wynn v. Chanos,*
75 F. Supp. 3d 1228 (N.D. Cal. 2014) .............................................. 22, 23

**STATUTES**

Cal. Code of Civil Procedure, section 425.16 ..................... 2, 10, 13, 14, 17, 18

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Jeff Lewis Law, APC*
*827 Deep Valley Drive, Suite 209*
*Rolling Hills Estates, CA 90274*

***FEDERAL RULES***

Rule 12(b)(6) ................................................................................................ 10, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

This is a defamation action by Plaintiff Bob Baffert against Defendants Daniel DiCorcia and Justin Wunderler. The Court previously granted DiCorcia's motion to dismiss on the grounds that the content of the defamatory statements and the falsity of each statement was not specifically alleged. Doc. 35. The Court also found that the complaint failed to allege non-conclusory facts demonstrating that DiCorcia acted with actual malice. By this motion,[2] DiCorcia invokes California's anti-SLAPP law (Cal. Code Civ. Proc., § 425.16) to strike the complaint. Or in the alternative, DiCorcia moves for dismissal under Rule 12(b)(6).

The First Amended Complaint provides additional facts as to Wunderler, but the Court's observed defects remain as to DiCorcia: failure to adequately plead facts constituting falsity and actual malice[3] remain. As for falsity, Baffert concedes that he has repeatedly been found by regulatory agencies to use prohibited drugs on his horses. Doc. 36, ¶¶ 15, 23 ["Mr. Baffert has never disputed that he received citations for minute medication overages or contaminations."]. Baffert likewise concedes that horses under his care have died under mysterious circumstances. Doc. 36, ¶ 71. But Baffert defends his use of drugs—and argues that he has been wrongly accused by the media, the public, and DiCorcia—on the grounds that: a) many *others* in the horse industry are using drugs with horses;[4] and b) some horse drugs are worse than other horse drugs.

---

[2] Counsel for DiCorcia and Baffert met and conferred at length on July 2, 2024, but could not informally resolve this motion. Lewis Decl., ¶ 3.

[3] "[T]he Complaint fails to plausibly allege nonconclusory facts establishing that any of the statements at issue was made with actual malice." Doc. 35, p. 9, li. 6-8.

[4] Per Baffert, "[a]t least 18 prominent trainers have had more medication citations than Mr. Baffert." Doc. 36, ¶ 17.

MOTION

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

As to the alleged falsity of the statements, Baffert's allegation that there was over 1,100[5] drug violations in 2021 by *other* horse owners speaks more to widespread animal mistreatment in horse racing than the innocence of Baffert. The fact that *other* horse owners were found in violation of drug rules does not logically demonstrate that Baffert did not also use drugs with his horses.

As further proof of the alleged falsity of the statements, Baffert quibbles over which drugs are merely bad and which drugs are really, really bad. Baffert has sued DiCorcia for not tweeting[6] to his audience about the difference between the two. Per Baffert, DiCorcia should have tweeted that Baffert impermissibly used "controlled medication substances" instead of using "banned substances" in referring to Baffert's misconduct. Doc. 36, fn. 2. But the First Amendment does not require such precision from DiCorcia.

Truth is a defense to any defamation action. *Karimi v. Golden Gate School of Law*, 361 F. Supp. 3d 956, 977 (N.D. Cal. 2019). The tweets accusing Baffert of using drugs are substantially true and do not give rise to defamation liability merely because they fail to distinguish between "controlled" versus "banned" substances. *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1085 (S.D. Cal. 2021) [holding that a statement is not false if the gist of the statement of true and if additional details would not have a different effect on the minder of the reader]. The gist of the tweets is that Baffert drugs his horses. Adding the nuance of "controlled medication substances" rather than "banned substances" would not have altered the meaning or gist of what DiCorcia tweeted or what his readers understood. The Court should rule,

---

[5] Doc. 36, ¶ 16.

[6] In 2023, Twitter changed its name to X. Because the allegations against DiCorcia occurred prior to the name change, DiCorcia refers to the social media platform as Twitter and the posts as tweets for consistency.

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



again, that Baffert has not and cannot demonstrate falsity—a required element of defamation.

As to actual malice, the burden is on Baffert to allege facts constituting clear and convincing evidence that DiCorcia subjectively knew his statements were false or had reckless disregard for their truth. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 502 (1984). The requirement of clear and convincing evidence of actual malice is a constitutional requirement rooted in the First Amendment. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984). Baffert alleges that DiCorcia bore Baffert ill will, but that factor has never been sufficient to establish actual malice. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) [holding that "the actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term"]. Rather, it is incumbent on the plaintiff to prove that a defendant spoke "with a high degree of awareness of probable falsity or must have entertained serious doubts as to the truth of his publication." *Id.* at 667 [cleaned up[7]]. Baffert has not met this high standard.

Baffert also alleges that DiCorcia should have done more to investigate the existence or content of an alleged video depicting Baffert doping horses. Doc. 36, ¶ 167. But this type of negligence argument, that a reasonable person would have done more to investigate the truth of a statement, is not sufficient to constitute actual malice. *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997). The First Amendment requires more than mere negligence. *Ibid.* Baffert did not alleged that DiCorcia ever had access to view

---

[7] This brief uses the parenthetical signal "[cleaned up]" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, Cleaning Up Quotations (2017) 18 Journal of Appellate Practice and Process 143; see also *The Travelers Indem. Co. v. Lara*, 84 Cal.App.5th 1119, 1129 (2022).

- 12 -
MOTION

1  the video described in the complaint, and Baffert concedes that the video
2  might not even exist. Doc. 36, ¶¶ 155, 167.

3       Finally, as to the claims alleged on behalf of Baffert's corporate
4  affiliate, Plaintiff Bob Baffert Racing, Inc., neither the complaint nor the
5  amended complaint contain or describe any statements made about the
6  corporation. For this reason, the claim asserted by the corporate plaintiff
7  must be dismissed. And, if nothing else, Baffert has wholly failed to plead any
8  statements made are "of or concerning" the corporate affiliate.

9

10  **II.   Legal Standard**

11       **A. California's Anti-SLAPP Law**

12       "The special motion to strike provision of California's anti-SLAPP
13  statute applies in federal court." *CoreCivic, Inc. v. Candide Grp.*, 46 F.4th
14  1136, 1146 (2022). The decisions of California's Supreme Court are binding in
15  the area of anti-SLAPP law. *Hilton v. Hallmark Cards*, 599 F.3d 894, 905
16  (2010).

17       The anti-SLAPP law provides a mechanism "to dismiss meritless
18  lawsuits designed to chill the defendant's free speech rights at the earliest
19  stage of the case," *Kunysz v. Sandler* 146 Cal.App.4th 1540, 1543 (2007), and
20  is "designed to nip SLAPP litigation in the bud." *Braun v. Chronicle Publ'g
21  Co.*, 52 Cal.App.4th 1036,1042 (1997).

22       Under the statute, any "cause of action against a person arising from
23  any act ... in furtherance of the person's right of ... free speech ... in connection
24  with a public issue shall be subject to a special motion to strike, unless the
25  court determines that the plaintiff has established that there is a probability
26  that the plaintiff will prevail on the claim." Cal. Code Civ. Proc., § 425.16,
27  subd. (b)(1).

28



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

In evaluating whether a claim arises from protected conduct, the Legislature specifically amended Section 425.16 in 1997 to ensure that it "shall be construed broadly" in response to court decisions that had construed it too narrowly. Cal. Code Civ. Proc., § 425.16, subd. (a). The California Supreme Court subsequently held that the "broad construction expressly called for in [Section 425.16] is desirable from the standpoint of judicial efficiency," cautioning that a narrow construction "would serve Californians poorly." *Briggs v. Eden Council For Hope*, 19 Cal.4th 1106, 1121-22 (1999).

Whether an action should be dismissed under Section 425.16 involves a two-step inquiry. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002). To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)." *Ibid.* Section 425.16, Subd. (3)(3) protects statements "made in a place open to the public or a public forum in connection with an issue of public interest." If the claim arises from protected conduct, the court must next determine whether the plaintiff has demonstrated a probability of prevailing on the claim. Cal. Code Civ. Proc., § 425.16, subd. (b)(l).

### B. Federal 12(b)(6) Standards

In the alternative to granting the anti-SLAPP motion, the Court should dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "non-conclusory 'factual content' that plausibly suggest a claim entitling the plaintiff to relief. *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1211 (D. Nev. 2011).

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



## C. Principles of Defamation Law and the First Amendment

In a defamation claim, an essential element of the claim is a false statement of fact rather than opinion. *Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, *29 (N.D. Cal. May 17, 2013). Moreover, as a public figure, Baffert is required to plead and prove actual malice:

> Meaning that the defendant uttered the statement with knowledge that it was false or with reckless disregard for whether it was false or not. Malice requires plaintiffs to show that defendant had a high degree of awareness of probable falsity, and in fact entertained serious doubts as to the truth of his publication, such that defendant had a subjective awareness of probable falsity. Motive in publishing a defamatory statement cannot provide a sufficient basis for finding actual malice.

*Id.* at *29 [cleaned up].

## III. Baffert's Notorious History in Horse Racing

Baffert is notorious for doping and mistreating racehorses. Baffert's violation of horse racing norms is so widely known that in 2021, he was the subject of a Saturday Night Live Weekend Update sketch. Lewis Decl., ¶ 4.



The comedian depicting Baffert denied ever doping a horse, looked at the camera and asked in a sarcastic tone, "Do I look like a shady character to you?" The live audience uproariously laughed at that notion. Why did the audience laugh? Because Baffert *is a* shady character.

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

MOTION

In June 2021, the Washington Post published an article entitled: "The dark side of Bob Baffert's reign: As horse deaths and drug violations mounted, thoroughbred racing's top trainer used power and money to keep beating opponents — and regulators." Lewis Decl., ¶ 5, Ex. 1. The Washington Post reported that "[a]t least 74 horses have died in Baffert's care in his home state of California since 2000, more than all but two of hundreds of trainers in the state…" Lewis Decl., ¶ 5, Ex. 1. USA Today published the piece, "As long as Bob Baffert keeps winning, he'll keep getting horses despite deaths and doping." Lewis Decl., ¶ 6, Ex. 2. 60 Minutes reported on the rampant problem of horse doping:

> For decades, the sport was entirely overseen by state racing commissions that struggled to stop repeat drug violations, notably by the sport's most high-profile trainer Bob Baffert. Baffert has been cited for dozens of drug violations in connection with some of his horses over the last four decades. He was suspended by Churchill Downs in 2021 after his horse Medina Spirit won the Kentucky Derby but was later disqualified after testing positive for a banned substance.

Lewis Decl. ¶ 15, Ex. 10.

Additional negative articles about Baffert have run in CNN, the NY Times, and ESPN. Lewis Decl., ¶¶ 7-9, Exs. 3-5. Baffert has also been lampooned for doping in political cartoons and the Onion. Lewis Decl., ¶¶ 10-11, Exs. 6-7.



Lewis Decl., ¶ 10, Ex. 6.



Baffert's notoriety is relevant to the claims alleged in the complaint and resolution of this special motion to strike in three important respects:

First, lawsuits that arise from statements made in a public forum about a matter of public interest are subject to being stricken by California's anti-SLAPP law. Cal. Code Civ. Proc., § 425.16, subd.(e)(3). The claims in this matter arise from posts on social media, a public forum, about Baffert. While Baffert can deny he dopes horses, he cannot seriously dispute the widespread public interest in the question of whether Baffert mistreats animals and cheats in races. That public interest renders the claims in Baffert's complaint subject to being stricken.

Second, Baffert's high profile status renders him a public figure within the meaning of *New York Times Co. v. Sullivan,* 376 U.S. 254, 283 (1964) and the requirement of proving false statements were made with actual malice.

Third, Baffert's widespread accounts of doping and mistreating horses have so harmed Baffert's reputation that he has been rendered "libel proof" as a matter of law. *Wynberg v. National Enquirer, Inc.,* 564 F. Supp. 924, 928 (C.D. Cal. 1982) [holding that plaintiffs who engage in anti-social or criminal behavior and suffer diminished reputation are barred from recovering in defamation]; see also *Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298, 303 (2d Cir. 1986) [applying libel proof doctrine to publisher of pornography about lawsuit arising from accusations of adultery].

Baffert is using the legal system to silence his critics, such as Defendant Daniel DiCorcia. DiCorcia is a horse racing fan who uses social media to comment, satirize, and criticize many participants involved in horse racing. DiCorcia Decl., ¶ 3.



- 17 -

MOTION

**IV. The Court Should Grant the Special Motion to Strike Because This Lawsuit Arises from Protected Activities**

**A. The Claims Arise from DiCorcia's Social Media Posts About Baffert and Those Posts are Protected Activities**

As explained in detail below, DiCorcia's statements online about Baffert are protected activities within the meaning of California's anti-SLAPP statute.

**i. The Alleged Statements Were Made in a Public Forum**

Online forums such as X or Facebook are considered public forums within the meaning of the anti-SLAPP law. *Barrett v. Rosenthal*, 40 Cal.4th 33, 41 fn 4 (2006); *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal.App.4th 392, 397 (2004). Public forums include "online message boards and forums 'that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions.'" *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 975 (N.D. Cal. 2013).

Here, the First Amended Complaint alleges that DiCorcia's statements were posted and widely disseminated on X. Doc. 36, ¶ 179. Because the statements were published on X, the Court should conclude that DiCorcia has satisfied the "public forum" requirement.

**ii. The Alleged Statements Were Made in Connection with a Matter of Public Interest**

To qualify for anti-SLAPP protection, the online statements attributed to the defendant must have been made in connection with a matter of public interest. Cal. Code Civ. Proc., § 425.16(e)(3). Any issue in which the public is interested is of "public interest." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008). In general, a public issue is implicated if the

- 18 -
MOTION



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

subject of the statement or activity underlying the claim was a person or entity in the public eye. *D.C. v. R.R.*, 182 Cal.App.4th 1190, 1215 (2010). The statements in question should contribute to the public debate, i.e., "participate[] in, or further[], the discourse that makes an issue one of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 1166 (2019).

The subject matter of the two tweets attributed to DiCorcia pertains to the alleged existence of undercover videos. Presumably, the subject matter of these alleged video(s) evidence Baffert's mistreatment of his racehorses. Because Baffert is a well-known figure in the horseracing industry, and given the worldwide publicity arising, most recently from his ban from the Kentucky Derby, there is wide-spread discussion of his treatment of horses. Lewis Decl., ¶¶ 4-13, Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9; Ex. 11. The statements here implicate two issues of public concern: professional sporting industries such as the horse racing market, and animal cruelty.

"The Horse Racing Market size is valued at USD 396.21 Billion in the year 2022 and it is expected to reach USD 812.48 Billion in 2030, at a CAGR of 8.93% from 2024 to 2030." Lewis Decl. ¶ 16, Ex. 11. Given the demonstrated public interest in the Horse Racing Industry alone, tweets concerning one of horse racing's biggest players and implied misconduct renders the statements to be of significant public concern. See *Friedman v. DirecTV*, 262 F.Supp.3d 1000, 1004 (2015) [where defendant's alleged use and disclosure of plaintiff's ideas for a fantasy sports network was of interest to the public because there was a demonstrated widespread public interest in playing fantasy sports and in the creation of a network dedicated to fantasy sports].

Moreover, there is a demonstrated growing concern for the general welfare of animals used in entertainment and sporting events. In horse racing specifically, antiquated traditions leading to tragedy and scandal within the sport have brought more attention to the realities of the once glamorous sport.

MOTION

For example, in 2019, more than thirty horses died at one track alone and allegations of doping have followed owners and trainers of prized horses. Lewis Decl., ¶ 17, Ex. 12. Indeed, in 2020, twenty-seven people were indicted over an alleged racehorse doping scheme. Lewis Decl., ¶ 18, Ex. 13. Widespread coverage of this scandal demonstrates it is a matter of genuine public concern. More specifically, a simple a search on Google News or X with the search terms "Baffert" and "doping" renders hundreds of articles, tweets, and responses detailing Baffert's misconduct. Lewis Decl., ¶ 12, Ex. 8.

Baffert's own allegations confirm that he is in the public eye. Baffert alleges he is "an internationally recognized thoroughbred trainer." Doc. 36, ¶ 6. Baffert was even "elected to the National Thoroughbred Hall of Fame in 2009." Doc. 36, ¶ 6. The posts by DiCorcia contributed to and furthered the public discourse surrounding Baffert's role in the horseracing industry and the treatment of his animals. Accordingly, the statements were made in connection with a matter of public interest.

## V.  Because Baffert has Failed to Allege a Legally Sufficient Claim the Court Should Either Grant the Special Motion to Strike, or Alternatively, Grant the Motion to Dismiss

Once the Court concludes that the claims arise from protected activity, the burden shifts to Baffert to prove a probability of prevailing. *City of Santa Monica v. Stewart*, 126 Cal.App.4th 43, 71 (2005). As it relates to whether Baffert has stated a legally sufficient claim, the standard for anti-SLAPP motions and 12(b)(6) motions to dismiss are identical. *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

## A. The Defamation Claim Asserted by Baffert's Corporate Affiliate is Legally Insufficient Because DiCorcia Never Mentioned or Described the Corporate Plaintiff in any Tweets

Under California law, a defamatory statement "must specifically refer to, or be of and concerning, the plaintiff." *Bowles v. Constellation Brands, Inc., 444 F. Supp. 3d 1161, 1172 (E.D. Cal. 2020)* [citing *Shively v. Bozanich, 31 Cal. 4th 1230, 1242 (2003)*].) Both the complaint and amended complaint fail to include any specific defamatory statements about Baffert's corporate affiliate, who is a separate plaintiff in this case. The complaint was originally brought in the name of Baffert individually and a corporate entity called "Bob Baffert Racing Stables, Inc." The amended complaint is brought in the name of Baffert individually and an entity known as "Bob Baffert Racing, Inc."

Aside from a mention in the caption and first sentence of the complaint, the corporate affiliate of Baffert is not referred to again anywhere in the pleading. This is fatal because even assuming that any of the tweets identified in the pleadings are defamatory, none of those tweets refer to the corporation. The amended complaint does not allege that DiCorcia defamed the corporation. With respect to defamation, statements about a plaintiff "must be specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower, 232 Cal.App.3d 1599, 1612 n.5 (1991)*; *Ferlauto v. Hamsher, 74 Cal.App.4th 1394, 1405 (1999)* [rejecting claims where statements "not even directed at" plaintiff].

Nor can the corporate plaintiff rely on statements about Baffert, the individual, to support claims held by a corporation. Libel plaintiffs must show that the allegedly false statements or implications are "of and concerning" them specifically. *Blatty v. New York Times, 42 Cal.3d 1033, 1044 (1986)*. An "organization and its members are not interchangeable" for purposes of



- 21 -
MOTION

defamation law. *Provisional Gov't of the Republic of New Afrika v. ABC*, 609 F. Supp. 104, 108 (D.D.C. 1985). "Statements which refer to individual members of an organization do not implicate the organization." *Ibid.* None of the statements attributed to DiCorcia reference the corporation. Accordingly, the corporation has no basis for any claims, and the Court should find the claim is legally insufficient, grant the motion to strike or alternative motion to dismiss as to all claims by the corporate plaintiff.

### B. Baffert is a Public Figure Required to Plead and Prove Actual Malice

Public figure plaintiffs bear the strict burden of establishing that each defendant acted with "actual malice." *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). The public figure plaintiff must show "with clear and convincing evidence that the defendant realized that his statement was false or…subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 n.30 (1984). This is a "heavy burden on plaintiffs, far in excess of the preponderance sufficient for most civil litigation." *Eastwood v. National Enquirer*, 123 F.3d 1249, 1252 (1997).

Whether a defendant acted with reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1234 (N.D. Cal. 2014). In evaluating whether a statement is one of fact rather than opinion, the Court reviews the context of the statement. *Moyer v. Amador Valley J. Union High School Dist.*, 225 Cal.App.3d 720, 725-26 (1990).

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



### C. Baffert Failed to Allege Facts Demonstrating Actual Malice: that DiCorcia Harbored Actual Doubt or Reckless Disregard as to the Truth of the Statements

Baffert has not satisfied "the demanding burden for pleading actual malice in defamation actions. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014). This requires "specific allegations that would support a finding that [the defendant] harbored serious subjective doubts as to the validity of [their] assertions." *Ibid.* Accord *Vogel*, 127 Cal.App.4th at 1017 [SLAPP plaintiff must plead that defendant made each statement "with knowledge that it was false or with reckless disregard of whether it was false or not"].

Baffert has not pled facts demonstrating actual malice. His burden was to plead facts showing that DiCorcia harbored "*actual doubt* concerning the truth of the publication." *Fletcher v. San Jose Mercury News*, 216 Cal.App.3d 172, 184 (1989) [emphasis in original]. Baffert's pleading fails these standards. For example, Baffert alleges that that DiCorcia was motivated by "hatred and ill-will." Doc. 36 ¶ 170. But that allegation, even if it were well-pled and true, would have no relevance to this Court's actual malice inquiry. "Motive in publishing a defamatory statement cannot provide a sufficient basis for finding actual malice." *Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, *29 (N.D. Cal. May. 17, 2013) [cleaned up.])

Baffert also confusingly argues that DiCorcia failed to watch a video about Baffert, and alternatively, that the video about Baffert never existed. Doc. 36, ¶¶ 164, 167. Baffert can hardly fault DiCorcia for not viewing a video that Baffert claims does not exist. Even if the video existed, Baffert has not alleged that DiCorcia had the opportunity to view it. Moreover, the negligence test advocated by Baffert—that a reasonable person in DiCorcia's position



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

should have viewed the video—is not sufficient to constitute actual malice. *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997).

### D. Baffert's Claim, if any, is Defamation Per Quod not Defamation Per Se Because Baffert's Theory of Falsity Relies on a Readership Possessing Inside Knowledge of Horse Racing

Baffert alleges that DiCorcia is liable for defamation per se. In a defamation per se action, damages are presumed, and no proof of actual damages is necessary. *DeMartini v. DeMartini*, 964 F.3d 813, 815 (9th Cir. 2020). In contrast, a defamation per quod action requires proof of actual damages. *Ibid.* This distinction is crucial here because Baffert has not alleged—and certainly cannot prove—any actual damages proximately caused by DiCorcia. Baffert is a wealthy, world-renowned horse trainer who is currently suspended from the Kentucky Derby, the world's most famous horse race. Baffert would be hard pressed to explain how a tweet from New Jersey proximately caused any actual damages to Baffert in California.

In this matter, if Baffert has stated any claim, it is for defamation per quod rather than defamation per se. A statement is deemed defamatory per quod and requires pleading and proof of special damages if the defamatory meaning is not common knowledge "rationally attributable to all reasonable persons." *Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 387.

Baffert's counsel spent a lot of time and devoted several pages to explain insider knowledge about horse racing regulations. For example, Baffert alleges that topical ointments can cause trace detections of betamethasone. Doc. 36, ¶ 13. Baffert describes the differences between "doping" substances, "prohibited substances," and anti-inflammatory drugs. Doc. 36, ¶ 14. Baffert describes the difference between Class A and Class C medications. Doc. 36, ¶ 15. Baffert explains that blood doping is a crime. Doc. 36, ¶ 42. Baffert took

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

- 24 -

the time to make these allegations because these matters are not within the general knowledge of members of the general public.

The average reader of a tweet would not understand the distinctions drawn between these substances. If these matters were widely known, there would be no need for counsel to go to such lengths to describe it for the Court. Baffert concedes as much when he alleges that an accusation of "juicing" a horse was made to an audience that would have understood that to mean Baffert engaged in criminal conduct. Doc. 36, ¶¶ 261–63.

Baffert alleges that DiCorcia described Baffert's horse as a "juiced rat" or that Baffert is the "biggest juicer in the history of horse racing…" Doc. 36, ¶¶ 45, 48. Members of the general public would not understand that "juicing" refers to a Class A or a Class C medication, or that it refers to criminal activity. Only someone with inside knowledge of horse racing, such as Baffert and his counsel, have that knowledge. Because members of the general public would not understand that DiCorcia's comments were defamatory without additional explanation, Baffert has failed to allege a claim for defamation per se.

*Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377 is instructive on the distinction between defamation per se and per quod. In *Barnes-Hind*, the manufacturer of enzyme cleaners for contact lenses, Allergan, sued a competitor for defamation. Allergan alleged that the competitor communicated with eye care professionals that Allergan's cleaning product was not safe and effective. The competitor filed a series of demurrers on whether Allergan had alleged defamation per se or per quod. The Court of Appeal granted a writ to Allergan's competitor and ruled that Allergan's pleading of the extrinsic facts necessary to understand the defamation, rendered the claim per quod not per se. (*Id.* at 388-89.) Although the



Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

defamatory meaning might have been apparent to eye care professionals, it was not apparent to the general public without pleading extrinsic matters.

Here, the facts are analogous to *Barnes-Hind* because the majority of social media users would only be able to recognize the alleged defamatory meaning of the posts by virtue of his or her knowledge of specific facts and circumstances surrounding horse racing and Baffert—extrinsic to the posts themselves. Because Baffert's claim, if any, is per quod, Baffert was required to plead, and failed to plead, the existence of actual damages proximately caused by a DiCorcia tweet. Baffert failed to do so, and the Court should find that the defamation claim is legally deficient. *Wetzel v. Gulf Oil Corp.*, 455 F.2d 857, 862 (9th Cir. 1972) [holding that failure to prove actual damages in defamation per quod case was fatal to claim].)

## E. The Tweets by DiCorcia are Opinions in Light of the Broad Context (Twitter) and the Hyperbole Employed

An essential element of any defamation claim is the existence of a falsehood. *Wong v. Jing*, 189 Cal.App.4th 1354, 1370 (2010). If a reasonable fact finder could not conclude the statement declares or implies a provable false assertion of fact, no claim has been stated. *Ibid.* Opinions about matters of public concern are not actionable as defamation. *Lieberman v. Fieger*, 338 F.3d 1076, 1079 (9th Cir. 2003). In the context of social media posts made on Twitter, tweets that are "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage cannot constitute a defamatory statement." *Clifford v. Trump*, 339 F. Supp. 3d 915, 926–927 (C.D. Cal. 2018). In *Clifford v. Trump*, a porn actress sued a former president for defamation arising from a tweet. The tweet accused the porn actress of making up a story and being engaged in a con job. The *Clifford* court ultimately granted the



- 26 -

MOTION

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

former president's anti-SLAPP motion holding that the context of the tweet, together with its language, rendered it inactionable.

In this case, the broad context of DiCorcia's statements needs to be considered. *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1049 (S.D. Cal. 2020). DiCorcia did not make the statement on the front page of the Wall Street Journal or the NY Times. Instead, the statement was made on social media—a context known for wild, boastful, and emotional statements that readers know not to accept as factual:

> Courts have recognized that "readers [ ] give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts" due to the "informal and unedited nature" of statements made on the Internet. *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. Aug. 20, 2020). Other courts have found that social media pages like Twitter and Instagram represent "forums that welcome opinions," *Jevremovic v. Courville*, No. 22-4969 (ZNQ) (RLS), 2023 U.S. Dist. LEXIS 139440, at *17 (D.N.J. Aug. 10, 2023) and "vehicles for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter." *AG v. Polis*, 21-2108-cv, 2022 U.S. App. LEXIS 7992, at *4 (2d Cir. Mar. 28, 2022). The medium and audience of the publication supports a finding that a reasonable social media user would likely have interpreted the statements as opinion and perception rather than fact. *Ganske*, 480 F. Supp. 3d at 553.

*Talbot v. Ainuu*, 2024 WL 896370, at *7 (D. Mont., Mar. 1, 2024, No. CV-23-66-BU-BMM) [cleaned up].

Indeed, a reasonable social media user would likely have interpreted DiCorcia's statements as opinion rather than as fact.

**F. The Tweets by DiCorcia are Inactionable**

Most of the statements attributed to DiCorcia either make no statement of fact, constitute opinion, are indisputably true, or simply do not refer to Baffert or his corporate affiliate. For the reasons summarized below, the Court should strike or dismiss the complaint in its entirety of strike those

particular statements that are not defamatory. The thirteen specifically pled statements attributed to DiCorcia are as follows:

| | Statement | Pleading Defect |
|---|---|---|
| 1. | "don't mess with swiff n shoe" described in the pleading is not a statement of fact. Doc. 36, ¶ 32. | Not a statement of fact and does not refer to Plaintiffs. |
| 2. | DiCorcia claimed that American Pharoah, a Baffert-trained Triple Crown winner, was a "juiced rat" and "they all knew it." Doc. 36, ¶ 45. | The statement does not refer to either plaintiff. The statement is hyperbole and opinion. |
| 3. | "can we all finally admit bob baffert is the biggest juicer in the history of horse racing? How many times will we see these yakteen transfers just stop lol." Doc. 36, ¶ 48. | The statement is hyperbole and opinion with no provable false fact. |
| 4. | As to a news report that Baffert horse Faiza would scratch from the race. DiCorcia commented – "Code for his bloodwork is bad. When will this shit end bob?" Doc. 36, ¶ 59. DiCorcia also called for the release of bloodwork for the horse. Doc. 36, ¶ 59. | The statement is hyperbole and opinion with no provable false fact. |
| 5. | DiCorcia posted he was going to have an online audio discussion about the release of a video about Baffert. Doc. 36, ¶ 90. | An announcement about a planned discussion is not a false statement of fact. |

MOTION

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

| | | Statement | Pleading Defect |
|---|---|---|---|
| 6. | | DiCorcia asked "is swift all talk or is this going to be the end of baffert?" Doc. 36, ¶ 91. | A mere question positing whether the video about Baffert exists or whether Wunderler is "all talk" is not defamatory. A question is not a statement of fact. *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995). |
| 7. | | Dicorcia posted a "meme" of a man jumping off a bridge with a gif: "baffert apologists seeing swifthitter taking down their hero."  Doc. 36, ¶ 103. | This is a classic example of an opinion referring to supporters of Baffert—not Baffert himself. The amended complaint does not describe what fact stated is false, or how this refers to Baffert or his corporate affiliate. |
| 8. | | DiCorcia posted "Dude kills horses" – Doc. 36, ¶ 104 – but Baffert also alleges "Between 2011 and 2013, several of Baffert's horses (and horses from other trainers) died unexpectedly." Doc. 36, ¶ 71. | The statement is substantially true. Several of Baffert's horses died under mysterious circumstances. It is also opinion. The use of the word "dude" suggests that the statement should not be taken seriously. |

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274

| | | Statement | Pleading Defect |
|---|---|---|---|
| 9. | | DiCorcia posted "call dr jimmy barnes… 1-888-epo-4all" Doc. 36, ¶ 105. | The statement does not refer to Baffert. Only horse racing insiders would understand the reference to "epo," and no social media reader would consider that an actual phone number to call. |
| 10. | | DiCorcia posted that Baffert was about to have a bad weekend. Doc. 36, ¶ 106. | There is no provably false statement of fact here. Additionally, in general, statements predicting the future are not actionable. *Oracle USA, Inc. v. Rimini Street, Inc.*, 2010 WL 4386957, at *3 (D. ).Nev., Oct. 29, 2010, No. 2:10-CV-00106-LRH-PA |
| 11. | | DiCorcia posted the "video is dead" Baffeert "had FBI confiscate" and "money is power in America. Doc. 36, ¶ 107. | There is no provably false statement of fact here. This is an opinion about Baffert's wealth and influence. |

MOTION

|     | Statement | Pleading Defect |
|-----|-----------|-----------------|
| 12. | DiCorcia, referring to Wunderlur, posted: "hearing some fat degenerate gambler will be renting a large projector screen on saturday and playing baffert video on loop in paddock at parx." Doc. 36, ¶ 108. | There is no statement of fact here. |
| 13. | DiCorcia asked Wunderlur, "when the Baffert videos get released?" Doc. 36, ¶ 111 | A question is not a statement of fact. *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995). |

### G. Baffert is Libel Proof due to Decades of Bad Actions and Bad Press

Certain plaintiffs have such terrible reputations that courts will deny them relief for defamation. Those plaintiffs are deemed libel proof. *Wynberg v. National Enquirer, Inc.*, 564 F. Supp. 924, 928 (C.D. Cal. 1982) presented such a case. In *Wynberg* the court found a plaintiff was libel-proof due to the plaintiff's notorious reputation and granted summary judgment against the plaintiff. The doctrine was applied because Wynberg had criminal convictions for bribery, prostitution, grand theft, and fraud. The *Wynberg* court held that widespread discussion of the crimes in the press and magazines rendered application of the libel proof doctrine particularly apt. A similar result was reached in *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) [applying libel proof doctrine to publisher of pornography about lawsuit arising from accusations of adultery].

In this case, in the context of a plaintiff alleging defamation about plaintiff's role in the horse racing industry, the Court should likewise find that Baffert is libel proof. Baffert has, for decades, been reported to have violated rules regarding horse racing. The cases applying the libel proof

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274



doctrine all raise the concern that the doctrine should only be applied sparingly. Can the Court recall another case (or imagine in the future getting another case) where one plaintiff has been the subject of a Saturday Night Live skit, an Onion parody piece, depicted in political cartoons, and been reported on the pages of every major newspaper? The search results relating to Baffert's name clearly indicate Baffert's reputation is already so tarnished, the libel proof doctrine ought to apply. Lewis Decl., ¶¶ 4-13; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9; Ex. 10. Baffert is a one-of-a-kind plaintiff that warrants application of the libel proof doctrine.

### H. The Conspiracy Claim Rises or Falls with the Defamation Claim

Baffert alleges a conspiracy. But civil conspiracy is not an independent cause of action. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510 (1994); *Kenne v. Stennis,* 230 Cal.App.4th 953, 968 (2014). Instead, it is a theory of co-equal legal liability under which certain defendants may be held liable for "an independent civil wrong" committed by others. *Rusheen v. Cohen,* 37 Cal.4th 1048, 1062 (2006); see also *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 511 (1994); *Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 44 (1989). To the extent this Court concludes that no claim has been stated as to defamation, the conspiracy allegation alone provides no basis for relief.

Even if the Court finds there is a viable claim for defamation, Baffert still failed to establish the elements of civil conspiracy: (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages. *City of Industry v. City of Fillmore,* 198 Cal.App.4th 191 (2011).

Jeff Lewis Law, APC<br>827 Deep Valley Drive, Suite 209<br>Rolling Hills Estates, CA 90274



The complaint alleges in conclusory fashion that DiCorcia was a co-conspirator with Mr. Wunderler. Doc. 36, ¶¶ 90, 119. However, it was Mr. Wunderler who posted several statements on Twitter and DiCorcia merely replied to his tweets. Baffert failed to allege the first element of conspiracy because there was never an agreement between DiCorcia and Wunderler to a common plan or design to commit a tortious act against Baffert. Wunderler is the one who claimed to have the video at issue in this case. Wunderler posted about the video and Wunderler alone claimed to have knowledge of the contents of the video.

On the other hand, DiCorcia publicly questioned Wunderler and doubted the video even existed. DiCorcia Decl., ¶ 5. Nothing alleged in the complaint demonstrates DiCorcia and Wunderler had a common plan or scheme to extort Baffert. Simply replying to a tweet does not make someone a conspirator. As such, Baffert failed to establish the elements of conspiracy against DiCorcia.

## VI. Conclusion

Based on the foregoing, DiCorcia respectfully requests that the Court grant the motion and strike the first amended complaint. In the alternative, DiCorcia requests that the Court dismiss the amended complaint. In either event, further amendment should not be permitted.

DATED:  July 9, 2024        **JEFF LEWIS LAW, APC**


By:  _____/s/ Jeffrey Lewis_____
        Jeffrey Lewis

        Attorneys for Defendant
        Daniel DiCorcia

Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274