UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>JUSTIN A. WUNDERLER and DANIEL DICORCIA,<br><br>                    Defendants. | Case No.: 23-cv-1774-RSH-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DANIEL DICORCIA'S MOTION TO STRIKE OR DISMISS**<br><br>[ECF No. 37] |

Before the Court is a motion to strike under California's anti-SLAPP statute, or in the alternative, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed by defendant Daniel DiCorcia (the "Motion"). ECF No. 37. The Motion is directed to the First Amended Complaint ("FAC") of plaintiffs Bob Baffert and Bob Baffert Racing, Inc. ("BBRI"). For the reasons below, the Court grants in part and denies in part DiCorcia's Motion.

I.    BACKGROUND

    A.    Factual Background

The Court incorporates the detailed factual background set forth in its prior June 6, 2024 Order granting DiCorcia's prior motion to dismiss Plaintiffs' initial

complaint. ECF No. 35 at 1–5.[1] This lawsuit arises from statements defendants DiCorcia and Justin Wunderler made on social media, primarily on the platforms X (formerly Twitter) and Spaces.

Plaintiff Baffert is an "internationally recognized thoroughbred trainer" who has trained horses "for over 47 years." FAC ¶ 6. Defendants are racing bettors with "substantial social media presence[s]." *Id.* ¶¶ 9, 11. Wunderler uses the pseudonym "Swifthitter" on social media, while DiCorcia uses the pseudonyms "Shoe," "@shoeeatsturfforbreakfast" and "barshoelife." *Id.* The FAC contains two operative claims for defamation, alleging that Defendants are both liable for the statements under a theory of conspiracy. Claim Two alleges that Defendants defamed Baffert by claiming the existence of video(s) that would "end Baffert." *Id.* ¶¶ 85, 124. Claim Three alleges that Defendants defamed Baffert by making statements on social media relating to him administering harmful, performance enhancing drugs to horses. *Id.* ¶¶ 176, 182.

**B.  Procedural Background**

On September 27, 2023, Plaintiffs filed the initial complaint in this action. ECF No. 1. On December 14, 2023, DiCorcia filed a motion to strike or in the alternative to dismiss the complaint. ECF No. 16. The Court granted the motion to dismiss for failure to state a claim, and denied as moot the motion to strike. ECF No. 35 at 10–11.

On June 25, 2024, Plaintiffs filed the FAC. ECF No. 36. On July 9, 2024, DiCorcia filed the instant Motion. ECF No. 37. Plaintiffs filed a response, and DiCorcia filed a reply. ECF Nos. 38, 39. On August 22, 2024. the Court heard oral argument on DiCorcia's Motion. ECF No. 45.

**II.  LEGAL STANDARD**

**A.  Motion to Strike under California Code of Civil Procedure § 425.16**

California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute,

---

[1]  All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

2

California Code of Civil Procedure § 425.16, "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). The statute "authorizes a 'special motion to strike' any 'cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue.'" *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1119 (9th Cir. 2017) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).

"Resolution of an anti-SLAPP motion requires the court to engage in a two-step process." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003) (internal quotation marks omitted). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). At the second step, if "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). DiCorcia's motion to strike challenges only the legal sufficiency of the FAC. ECF No. 37 at 20.

### B.    Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

## III. ANALYSIS

### A. Defamation Generally

#### 1. Elements

Under California law, "[d]efamation is an invasion of the interest in reputation." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Ct. App. 1999). A plaintiff bringing a defamation claim must show: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal quotation marks omitted). "A defamatory statement may be either written (libel) or oral (slander)." *Mahoney v. Meta Platforms, Inc.*, No. 22-cv-02873-AMO, 2024 U.S. Dist. LEXIS 3206, at *7 (N.D. Cal. Jan. 6, 2024). "Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.

///

To state a claim for defamation, "the plaintiff must specifically identify the defamatory statement and plead its substance." *Schrader Cellars, LLC v. Roach*, No. 21-cv-01431-SK, 2021 U.S. Dist. LEXIS 263302, at *10 (N.D. Cal. June 10, 2021). "This means the complaint must reference the speakers of the defamatory communications, the recipients, the timing, or the context in which they were made, sufficient to provide [the defendant] notice of the issues to prepare a defense." *Id.* at *11 (internal quotation marks omitted); *see Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (complaint sufficient where it "list[ed] the precise statements alleged to be false and defamatory, who made them and when").

### 2. Actual Malice

A plaintiff who is a public figure must also plead and prove "actual malice," that is, that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 256 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964)). Whether an individual is a public figure is a question of law that must be assessed through a totality of the circumstances. *Id.* at 255. The Court has previously determined, ECF No. 35 at 9, and Baffert does not contest, that he is a "public figure" for purposes of this Motion.

### 3. Libel Per Se/Libel Per Quod

"There are generally two types of libel recognized in California—libel per se and libel per quod." *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1226 (Ct. App. 2017). A statement is considered libel per se when it "is defamatory without the need for explanatory matter such as an inducement, innuendo or other extrinsic fact." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (Ct. App. 2007) (citing Cal. Civ. Code § 45a). If a plaintiff adequately alleges a libel per se claim, it is unnecessary to plead special damages. *See Barnes-Hind, Inc. v. Super. Court*, 181 Cal. App. 3d 377, 382 (Ct. App. 1986).

///

### B. Assertion of Fact

Particularly relevant to this Motion, "[t]he sine qua non of recovery for defamation . . . is the existence of falsehood." *ZL Techs., Inc. v. Does 1–7*, 13 Cal. App. 5th 603, 624 (Ct. App. 2017) (internal quotation marks omitted). "Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Id.* For these reasons, "[t]he threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)). "If the answer is no, the claim is foreclosed by the First Amendment." *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009). The Ninth Circuit applies "a three-factor test in resolving this question: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Herring*, 8 F.4th at 1157 (internal quotation marks omitted). "Whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (Ct. App. 2013). "Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (Ct. App. 2012) (internal quotation marks omitted).

Consistent with the foregoing, assertions that a person engaged in wrongdoing are not actionable as false statements of fact where those assertions are overly vague and generalized. *See Bishop v. The Bishop's Sch.*, 86 Cal. App. 5th 893, 911 (Ct. App. 2022) (an "implied assertion" a teacher had "engaged in some unspecified behavior that presented a threat to student safety . . . was not reasonably susceptible of being interpreted to imply a provably false assertion of fact."); *ZL Techs.*, 13 Cal. App. 5th at

624 ("[O]verly vague statements and generalized comments . . . lack[ing] any specificity as to the time or place of' alleged conduct may be a further signal to the reader there is no factual basis for the accusations.") (internal quotation marks and citation omitted); *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1319 (Ct. App. 2016) ("[B]ehavior one person regards as a 'bad business practice' may be acceptable to another person and conduct causing one person to feel 'burned' may not affect another person at all . . . Without some reference to the type of undisclosed misconduct . . . these comments are too vague and uncertain to be actionable as conveying a defamatory accusation."); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117 (Ct. App. 2007) ("[A]n amorphous assertion of immoral behavior is within the range of statements of opinion that are not actionable.").

The Court begins by reviewing the specific statements that Plaintiffs have pleaded as defamatory in Counts Two and Three, to determine whether they are actionable assertions of fact.

### 1. *Claim Two: Defamation Relating to Videos*

Claim Two of the FAC, entitled "Defamation—Videos," is based on the allegation that Defendants "circulate[d] a false claim that they possessed two videos that would 'end' Baffert's career if published." FAC ¶ 124. Although the FAC's "operative facts" attributes several statements to Defendants regarding the Baffert videos, the FAC does not specify which of these statements Defendants claim are defamatory. Instead, the FAC broadly references Defendant's "statements regarding the videos." FAC ¶ 127. At oral argument, Plaintiffs identified the allegedly defamatory statements at issue as the statements (or portions of statements) found in Paragraphs 85, 87, 88, 90, 96, 106, and 111 of the FAC. The Court summarizes these below.

On September 5, 2023, Wunderler posted on X that "[t]here is a video out there that will end Baffert." FAC ¶ 85. The next day, he added, "[t]here is a video that will be the end of it." *Id.* ¶ 87. In a separate post on the same day, Wunderler stated: "[t]here are two videos. One from an outsider . . . other videos from an insider. Both bad." *Id.* ¶ 88.

Again on the same day, Wunderler posted: "NY times and Wash Post and others have reached out." *Id.* ¶ 90. The same day, DiCorcia interviewed Wunderler on a video posted to Spaces, in which Wunderler said, "Clear video as day. It's incriminating." *Id.* ¶ 96.

On September 8, 2023, DiCorcia posted on X a photoshopped picture of himself and Wunderler breaking the news that the "Baffert Video Leaked":



*Id.* ¶ 106. On September 26, 2023, DiCorcia hosted another Spaces interview in which Wunderler said of the video, "Listen, people that is legit." *Id.* ¶ 111. Wunderler added that two horseracing regulatory bodies "are opening up a case from what I heard and stuff." *Id.*

These "statements regarding the videos" contain both an element of fact and an element of opinion. The factual element is the assertion there exist one or two videos relating to Baffert in some undisclosed way: "There is a video out there"; "There are two videos. One from an outsider . . . other videos from an insider"; "Clear video as day." As factual assertions go, the statements above lack specificity; over the course of Baffert's high-profile career, there doubtless exist numerous videos that somehow relate to him. The accused statements do not describe, in factual terms, the content of any of the purported videos. They do not even disclose whether the videos depict Baffert himself.

Instead of describing the content of the videos in factual terms, the statements at issue provide Wunderler's *views* about the purported videos: that a video will "end Baffert" or "will be the end of it," that two videos are "bad," that a video is "incriminating," and that a video is "legit." The vague and subjective nature of these statements renders these value judgments difficult to prove true or false and weighs against a determination that they assert an actionable statement of fact.

The Court also considers the context and tenor of the statements. The statements at issue are made on social media; most are brief posts on X, as short as a single sentence. As reproduced in the FAC, they include ungrammatical, poorly punctuated, hyperbolic statements. The assertion, for example, that there is a video out there that "will end Baffert" is figurative and exaggerated. *Id.* ¶ 85. Among the other statements identified is a crudely photoshopped, mock image of a CNN broadcast that is clearly not intended to be authentic. *Id.* ¶ 106. These factors also weigh against a determination that the statements are actionable. *See Underwager v. Channel 9 Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) (holding "colorful, figurative rhetoric" nonactionable where "reasonable minds would not take [statements] to be factual."); *ZL Techs.*, 13 Cal. App. 5th at 624 ("Use of hyperbolic, informal, crude, [or] ungrammatical language, satirical tone, [or] vituperative, juvenile name-calling provide support for the conclusion that offensive comments were nonactionable opinion.") (internal quotation marks and citation omitted); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (Ct. App. 2004) ("[S]atirical, hyperbolic, imaginative, or figurative statements are protected because the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact.") (internal quotation marks omitted); *Weller v. ABC*, 232 Cal. App. 3d 991, 1000 (Ct. App. 1991) ("[C]ourts are still willing to protect statements that are clearly satirical, hyperbolic, imaginative or rhetorical."). The general tenor of the statements suggests Wunderler and DiCorcia disliked Baffert and were using their social media accounts to express their negative opinions of him.

///

Considering the statements in their totality, they are expressions of antagonism that are too vague and opinion-oriented to constitute actionable statements of falsehood.[2] Claim Two is, therefore, subject to dismissal for failure to state a claim.

### 2. Claim Three: Defamation Relating to Blood Doping

Claim Three of the FAC, entitled "Defamation – Blood Doping," alleges that Defendants undertook a "misinformation campaign publicly accusing Baffert by name of engaging in 'blood doping' and 'juicing.'" FAC ¶ 176. In contrast to Claim Two, the FAC specifically identifies the statements at issue in Claim Three as: (1) Wunderler's September 2023 posts regarding the racehorse Muth; (2) Wunderler's September 9, 2023 post regarding Justify; (3) DiCorcia's September 2, 2023 post regarding Medina Spirit; (4) DiCorcia's September 2, 2023 post regarding Faiza; (5) DiCorcia's October 4, 2022 post regarding American Pharaoh; and (6) Wunderler's June 12, 2023 posts regarding Arrogate. *Id.* ¶¶ 208–82. The Court addresses these posts below.

#### a. American Pharaoh and Justify Posts

According to the FAC, on October 4, 2022, DiCorcia "claimed that *American Pharaoh*, a Baffert-trained Triple Crown winner, was a 'juiced rat' and 'they all knew it.'" *Id.* ¶¶ 45, 259–68. The FAC alleges that DiCorcia made this statement on X "when discussing the merits of breeding stock with Wunderler on 'X,'"; but the FAC does not reproduce the posting, or purport to quote the complete sentence containing the statement. *Id.* ¶ 45.

---

[2] By its terms, Claim Two is based on defamatory statements about the Baffert videos. *See* FAC Claim Two ("Defamation – Videos"). Given the FAC's failure to further specify the basis for this claim, the Court declines to address factual statements made in the posts that do not concern the purported videos (e.g., "Baffert I have the bad photos of some horses and other stuff," FAC ¶ 89; regulatory authorities "are opening up a case from what I heard and stuff," *id.* ¶ 111). At the hearing, the Court repeatedly asked Plaintiffs' counsel to identify the defamatory statements forming the basis of Claim Two; the Court also declines to address any statements not so identified.

1    The FAC also alleges that on September 9, 2023, Wunderler posted about a different horse: "Justify was a Natural Talent and Baffert used all kind of shit on em. And his career short lived. Juiced snd [sic] talent for stud deal." *Id.* ¶¶ 79, 225–32. The FAC does not reproduce an image of the entire post or explain any specific context for this particular statement. The FAC states that "[a]t one point, the horse *Justify* tested positive for the substance Scopolamine," but states that this is a "permitted medication" and that a formal investigation by California authorities concluded that positive tests at that race "were caused by simple feed contamination" resulting from a contaminated plant that grows near hay. *Id.* ¶¶ 80–82. Plaintiffs deny that Baffert has engaged in blood doping or "juicing." *Id.* ¶ 43.

The Court concludes that neither of these two statements are actionable. DiCorcia's reference to a horse as a "juiced rat" is vague and hyperbolic. It does not specify a drug or medication or even a type or category of drug or medication; it does not indicate a particular race or timeframe, simply referring to the horse in the past tense; and it does not mention Baffert. The statement is figurative in referring to the horse as a "rat." The term "juiced," as used in this context, is too vague to constitute a factual assertion that is defamatory as to Baffert.

Wunderler's statement resembles a factual assertion even less. The last part of the statement, "Juiced snd talent for stud deal," is not only ungrammatical but unintelligible, and the FAC does not explain its meaning. The first part of the statement, "Baffert used all kind of shit on em," is crude and exceedingly vague.

Considering the content of the American Pharoah and Justify posts together with their tenor and context, the Court concludes neither presents an actionable factual assertion.

### b. Medina Spirit and Faiza Posts

The FAC alleges that on September 2, 2023, DiCorcia posted on X, "falsely claiming that both *Faiza*'s and *Medina Spirit*'s pre-race scratches were due to bad bloodwork." FAC ¶ 59. The first post related to the racehorse Faiza, and republished a

post by another commentator about Baffert scratching (that is, withdrawing) the horse from a race because the outside starting position was not to Baffert's liking. *Id.* DiCorcia comments in response: "code for his bloodwork is bad" and asks "when will this shit end Bob?"



*Id.*

DiCorcia's post about Medina Spirit is similar. The post reproduces a screenshot of a trade publication entitled, "Post Position Leads Baffert to Scratch Medina Spirit from Pennsylvania Derby," and states, "medina spirit was died two months after bad bloodwork forced his 'post position' scratch. let's hope faiza is ok."



*Id.* Plaintiffs assert that Baffert withdrew these horses for other reasons. *Id.* ¶¶ 56, 57.

In the first of these posts, DiCorcia makes a statement of conjecture, surmising that Baffert's stated reason for scratching the horse was not true. The second post more closely resembles a factual assertion. But Plaintiffs' pursuit of both statements suffers from a common problem: the vagueness of the term "bad bloodwork" in the context of these posts. Plaintiffs do not adequately explain how "bloodwork" being "bad" possesses "a singular, concrete, and therefore readily verifiable, meaning[.]" *Steam Press Holdings, Inc. v. Haw. Teamsters & Allied Workers Union, Local 996*, 302 F.3d 998, 1009 (9th Cir. 2002) (holding term "making money" was too abstract to be susceptible of being proved true or false). Indeed, at oral argument, Plaintiffs' counsel argued the term "bad bloodwork" had at least two meanings: the one DiCorcia intended when making the statement, and the one the general public would understand it to mean. Plaintiffs "identification of multiple meanings" for the term bad bloodwork "*by itself* shows that the term represents an opinion rather than a fact." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 685 (9th Cir. 2023) (emphasis in original). "[W]hen a term or phrase lacks a singular and concrete meaning, it cannot be readily verifiable." *Id.* (internal quotation marks omitted); *see also Underwager*, 69 F.3d at 367 ("[T]he term 'lying' applies to a spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception.'"); *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987) (lack of precise meaning in the term "scam" made "the assertion 'X is a scam' incapable of being proven true or false.").

Plaintiffs' counsel also explained at argument that a trainer scratching a horse in response to "bad bloodwork" would in fact be nonsensical to those familiar with horse racing, because positive test results would be made public and result in action by the regulatory authority rather than a trainer's voluntary removal of the horse from competition on race day. The FAC itself makes clear that a "positive" test can result even from a substance that is simply a "permitted medication," and that was not intentionally fed or administered to the horse. FAC ¶ 82. All this indicates a high level of subjectivity associated with referring to bloodwork as "bad," Additionally, the manner and tone of the

13

posts at issue ("when will this shit end bob?"), like that of the posts discussed above, favor characterizing these posts as opinions.

The Court concludes that the Medina Spirit and Faiza posts are nonactionable considering their vagueness and tenor, and the context in which these statements were made.

### c.   Arrogate and Muth Posts

The FAC alleges that on June 12, 2023, Wunderler made the following post about the racehorse Arrogate:



FAC ¶ 49. Although the post contains a hyperbolic reference to drugs turning the horse's brain "into grilled cheese," the post also asserts that Baffert used "drugs/epo" on Arrogate "prior to him turning to stud," and that these drugs caused the horse's death.[3] The specificity of this statement makes it susceptible to being proved true or false.

Likewise, the FAC alleges that on September 2, 2023, Baffert scratched the racehorse Muth from the Hopeful Stakes. *Id.* ¶ 74. On September 4, 2023, Wunderler posted: "I will get to the bottom of Muth scratch. My thinking is bad epo shipment." *Id.* ¶ 75. This post was an explicit statement of Wunderler's conjecture; but later that day, he posted: "LOL that Baffert. Bad shipment of epo has hit that barn." *Id.* ¶ 76. The following day, Wunderler made the following assertion: "Muth was scratched cause reaction to EPO. 100%%%." *Id.* ¶ 77. The language "100%" indicates Wunderler was asserting the statement to be entirely factually accurate. Together, the latter two statements, read in context, assert that Muth's scratch on September 2, 2023 was the result of the horse's

---

[3]   EPO refers to erythropoietin, a banned performance-enhancing drug that Baffert denies ever using on his horses. FAC ¶¶ 40–43.

adverse reaction to being administered the drug EPO. The specificity of this assertion makes it susceptible of being proved true or false.

### d. Actionable Statements

In conclusion, of the six statements or sets of statements identified in Claim Three, the Court concludes that only two of them—Wunderler's June 12, 2023 post regarding Arrogate, and September 5 and 6 posts regarding Muth—sufficiently allege a provable falsehood. The Court considers below other challenges to these two statements. The remaining four statements are dismissed from Claim Three for failure to state a claim.

### C. DiCorcia's Additional Arguments on Legal Sufficiency

In challenging the legal sufficiency of the FAC, DiCorcia also argues that: (1) the FAC fails to adequately plead actual malice, ECF No. 37 at 22–24; (2) the FAC fails to plead either defamation per se or actual damages, *id.* at 24–26; (3) "Baffert's reputation is already so tarnished" that he is "libel proof," *id.* at 31–32; and (4) the FAC does not adequately plead conspiracy, *id.* at 32–33. The Court addresses these arguments in turn, focusing on the statements in Claim Three that have not already been dismissed.

DiCorcia's argument as to actual malice challenges only whether Plaintiffs sufficiently alleged actual malice as to Count Two. ECF No. 37 at 23–24. Plaintiffs correctly note in their opposition brief that DiCorcia's motion does not challenge the sufficiency of the allegations of actual malice in Count Three, in which the six defamatory statements at issue were elaborated with greater specificity than the statements about the videos. ECF No. 38 at 28–29. In his reply, DiCorcia simply argues that it is Plaintiffs' burden to plead actual malice. ECF No. 39 at 10–11. The Court concludes that Plaintiffs have adequately pleaded falsity and actual malice at to the Arrogate and Muth statements. FAC ¶¶ 40–43, 208–24, 269–82.

DiCorcia's argument as to defamation per se does not specifically address the Arrogate or Muth statements. DiCorcia argues more generally that "the majority of social media users would only be able to recognize the alleged defamatory meaning of the posts by virtue of . . . knowledge of specific facts and circumstances surrounding horse racing

and Baffert," which is knowledge "extrinsic to the posts themselves." ECF No. 37 at 26. With respect to the Arrogate and Muth statements, the Court disagrees. As alleged, the defamatory nature of both statements is clear from the meaning of the words used in context and does not require extrinsic facts.

Next, some courts apply a "libel proof" doctrine, under which "a plaintiff's reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986). Similarly, an "incremental harm" doctrine "is often articulated as a "branch of the 'libel-proof' doctrine." *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986). This doctrine "measures the harm 'inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable.'" *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 898 (9th Cir. 1992) (quoting *Herbert*, 781 F.2d at 311)). The Ninth Circuit has determined that "California courts have shown no interest in the incremental harm doctrine." *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 898 (9th Cir. 1992). Additionally, the U.S. Supreme Court has "reject[ed] any suggestion that the incremental harm doctrine is compelled as a matter of First Amendment protection for speech." *Masson v. New Yorker Magazine*, 501 U.S. 496, 523 (1991). DiCorcia cites no binding authority for the application of either the "libel proof" or "incremental harm" doctrine. The Court declines to apply these doctrines here.

Finally, DiCorcia argues that he cannot be liable on a theory of conspiracy for defamatory statements made by Wunderler, because the FAC fails to establish the elements of conspiracy. ECF No. 37 at 32–33. DiCorcia describes the FAC's conspiracy allegations as "conclusory." *Id.* at 33. The Court disagrees. The FAC pleads with specificity facts plausibly supporting a conspiracy, including a lengthy series of posts made by DiCorcia and Wunderler that are similar in their content and in their single-minded purpose of targeting Baffert. These include posts in which the two individuals

promote each other and appear to be acting in concert to antagonize Baffert, typically referring to each other by their social media handles of "swift" (Wunderler) and "shoe" (DiCorcia). *E.g.*, FAC ¶¶ 31 (Wunderler post of June 12, 2023: "Me and @barshoelife will call a truce with Baffert for 500k."); 32 (DiCorcia post of June 13, 2023: "don't mess with swift n shoe."; 90 (DiCorcia post of September 6, 2023 promoting DiCorcia's interview of Wunderler, republished by Wunderler later that day); 92 (DiCorcia post of September 6, 2023: "Make a deal swifty," republished by Wunderler later that day); 106 (DiCorcia post featuring photoshopped image of Wunderler and DiCorcia as mock news anchors).

Accordingly, as to the two statements that the Court has determined sufficiently allege a provable falsehood, the Court concludes that the FAC pleads a claim that is legally adequate against DiCorcia. DiCorcia's request to strike or dismiss these portions of Claim Three is denied.

### D. Plaintiff BBRI

DiCorcia moves to dismiss all claims brought by plaintiff BBRI, on the grounds that the FAC does not identify any defamatory statement "of and concerning" this corporate entity. ECF Nos. 37 at 21–22; 39 at 6–10.

"In defamation actions . . . the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Id.* at 1044. "In order to satisfy this requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication." *Id.* at 1046.

"[A] defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955,

960 (9th Cir. 2008); *De Witt v. Wright*, 57 Cal. 576, 578 (1881) ("[I]t is essential not only that it should have been written concerning the plaintiff, but also that it was *so understood* by at least some one third person.") (emphasis in original). "[C]ircumstantial evidence may be used to prove that defamatory material was published to a third party who reasonably understood it to refer to the plaintiffs." *SDV/ACCI*, 522 F.3d at 961. Even so, "when a defamatory statement identifies the plaintiff only by implication, and the implication is reasonable but by no means necessary, the plaintiff carries a corresponding burden to present evidence that a recipient of the statement made the implied connection." *Id.*

Here, Plaintiffs do not identify any defamatory statements in the FAC referring to BBRI. The closest that Plaintiffs offer is a single social media post that referred to a "barn." *See* ECF No. 38 at 29; FAC ¶ 76 ("LOL that Baffert. Bad shipment of epo has hit that barn."). That statement, on its face, does not appear to refer to either BBRI or to any corporate entity. The FAC fails to plead facts that would plausibly support the conclusion that a third party reasonably understand that post—or any other post at issue here—to refer to BBRI. *See Mahoney v. Meta Platforms, Inc.*, No. 22-cv-02873-AMO, 2024 U.S. Dist. LEXIS 3206, at *10–11 (N.D. Cal. Jan. 6, 2024) (granting motion to dismiss where plaintiff failed to establish statements "specifically referred to her or was understood by any third party as referring to her"); *Bielma v. Bostic*, No. 15cv1606-MMA (BLM), 2016 U.S. Dist. LEXIS 152, at *59 (S.D. Cal. Jan. 4, 2016) (granting motion to dismiss where plaintiffs did not allege third party understood allegedly defamatory statements "as referring to them"); *see also Calvert v. Fox TV Stations, LLC*, No. B310772, 2022 Cal. App. Unpub. LEXIS 3319, at *26 (Ct. App. May 25, 2022) (trial court erred denying motion to strike defamation claims brought by professional corporation where "the professional corporation failed to carry its burden to show any of the allegedly defamatory statements concerned it[.]"). Accordingly, the Court dismisses BBRI as a plaintiff for Claims Two and Three.

///

### E. Leave to Amend

DiCorcia's Motion asks that the FAC be dismissed or stricken without leave to amend. ECF No. 37 at 33. Plaintiffs' opposition brief does not request leave to amend or suggest how it would cure the deficiencies discussed above. Based on the briefing on this Motion and on DiCorcia's prior motion to strike or dismiss, the extensive argument at the hearing, and the Court's prior order of dismissal, ECF No. 35, the Court concludes that amendment of those portions of the FAC dismissed herein would be futile. The Court therefore does not grant leave to amend. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'").

## IV. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant DiCorcia's Motion [ECF No. 37]. Specifically, the Court:

1. **GRANTS** DiCorcia's motion to dismiss all claims brought by plaintiff Bob Baffert Racing, Inc., without leave to amend, and **DISMISSES** that party from the action;

2. **GRANTS** DiCorcia's motion to dismiss Claim Two of the FAC and **DISMISSES** that claim without leave to amend;

3. **DENIES** DiCorcia's motion to dismiss and motion to strike those portions of Claim Three that are based on the statements at paragraphs 49, 76, and 77 of the FAC;

4. **GRANTS** DiCorcia's motion to dismiss as to the remainder of Claim Three, and partially **DISMISSES** that claim without leave to amend; and

5. **DENIES AS MOOT** DiCorcia's motion to strike as to all claims, portions of claims, or parties which the Court has dismissed above.

IT IS SO ORDERED.

Dated: August 27, 2024

*/s/ Robert S. Huie*

Hon. Robert S. Huie
United States District Judge