1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BREWSTER & DEANGELIS, PLLC**
Clark O. Brewster
Joseph C. De Angelis
2617 East 21st Street
Tulsa, Oklahoma
(918) 742-2021 Office;
(918) 742-2197 Fax
cbrewster@brewsterlaw.com
jcdeangelis@brewsterlaw.com

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

BOB BAFFERT, et al,

                    Plaintiffs,

v.

JUSTIN WUNDERLER and DANIEL DICORCIA,

                    Defendants.

Case No.:  23-cv-1774-RSH-BLM

**Motion for Temporary Restraining Order and Injunction Against Defendant Justin Wunderler (Public version)**

Plaintiff Bob Baffert, through counsel, and pursuant to this Court's Protective Order dated March 6, 2024 [Doc. No.29] (hereinafter, the "Protective Order"), FRCP 26(c), and FRCP 65(b), respectfully moves for a temporary restraining order and, subsequently, an injunction against Defendant Justin Wunderler, prohibiting (1) use of the images and/or audio from the deposition in violation of the Protective Order; (2) further comments about and disclosure of the contents of Mr. Baffert's November 19, 2024, deposition in violation of the Protective Order; and (3) threatening, vexatious, and harassing conduct directed at Mr. Baffert's family, and further requiring Wunderler to delete certain posts on the social media platform "X," and states as follows:

# INTRODUCTION

This is a case arising from years of relentless harassment against Baffert and his family. That harassment that has included threats to release (false) information or sensitive information. That harassment has included stalking and threats of violence. That harassment has included statements directed at Baffert and his counsel in connection with litigation activity, often with the intent to interfere with the attorney-client relationship.

Before the Court is a motion to terminate this behavior in relation to a deposition taken November 19, 2024, after Defendant Wunderler — a defendant in default for failure to defend [Doc. Nos. 48, 51] — parachuted into the litigation for the first time to attend Baffert's video-recorded deposition, despite never issuing or responding to a single discovery request himself. Counsel for plaintiff designated the deposition as confidential, for the purpose of permitting time to review and designate portions of the transcript as confidential. Counsel further designated the audio and video of the deposition as confidential and subject to the protective order, to which neither party objected.

Defendant Wunderler, being given the opportunity to participate in this litigation, elected to abuse the discovery process and willfully violated the Protective Order in this case on multiple occasions, including live-tweeting testimony moments after it was expressly designated as confidential and turning screenshots of the deposition into "memes" accompanied by willful misrepresentations of Mr. Baffert's testimony. He has threatened additional violations in the imminent future. In the midst of these violations of the Protective Order, Defendant Wunderler made repeated threats against Mr. Baffert's son. An immediate restraining order is required to protect legitimate privacy and business interests from further irreparable harm, to halt Defendant Wunderler's ongoing course of harassment, and to restrain Wunderler's palpable incivility and abusive conduct in connection with a matter before this Court.[1]

---

[1] Wunderler has rejected Plaintiff's efforts to cease and desist. Notice is not possible because immediate relief is required to stop an ongoing injury. Notice of the motion will be sent promptly after filing.

## PERTINENT PROCEDURAL HISTORY AND ORDERS

1.     On March 6, 2024, the Court entered a stipulated protective order upon a joint motion from the "parties" in this case. [Doc. No.29.] The Order was served on Mr. Wunderler via ECF that same day, while Wunderler was represented by counsel. [*Id.*]

2.     The Protective Order permits the designation of depositions as confidential. To do so, the party may designate the deposition as confidential on the record and, thereafter, may designate portions of the transcript as confidential within 14 days of receipt. [Doc. No.29 at 6, ¶ 6.]

3.     The Protective Order further provides:

> All confidential information designated as "CONFIDENTIAL" or "CONFIDENTIAL FOR COUNSEL ONLY" must not be disclosed by the receiving party to anyone other than those persons designated within this order and must be handled in the manner set forth below and, in any event, ***must not be <u>used</u> for any purpose other than in connection with this litigation, unless and until such designation is removed either by agreement of the parties, or by order of the Court.***

[Doc. No. 29 at 7, ¶ 7 (emphasis added).]

4.     On August 28, 2024, the Clerk entered Wunderler's Default for failure to defend, following his failure to answer the First Amended Complaint. [Doc. No.48.] Wunderler has not issued or responded to any discovery in this case. [DeAngelis Dec., ¶ 2.]

5.     On September 23, 2024, Plaintiff filed a motion for default judgment against Defendant Wunderler. [Doc. No.51.] Despite receiving notice, Defendant Wunderler filed no opposition. [Doc. No.63 at 2, ¶¶ 5-6; Doc. Nos. 63-1 and 63-2.]

6.     On October 22, 2024, Plaintiff's counsel deposed Defendant DiCorcia via a video-recorded deposition. Defendant Wunderler received notice but did not attend. [DeAngelis Dec., ¶ 3.]

# FACTUAL BACKGROUND

1.      Defendant Wunderler's history of harassment was previously set out in the pending motion for Default Judgment and prior declarations. [Doc. No.51 at 10-12.] This history includes repeated threats of violence against Baffert, his family, and his counsel. On one occasion, Wunderler posted same-day photographs taken of Clark Brewster (Baffert's counsel) and, separately, a photograph of Baffert and his wife eating at a restaurant, all at the same race meeting. [Doc. No.42.] The posts were laced with threats of violence. As this Court stated, "The post certainly appeared to be harassing and menacing in the Court's view." [Doc. No.65 at 4.]

2.      This history also includes repeated instances of threats to release damaging information. In fact,

    a.  On November 15, 2024, the Court denied DiCorcia's motion for attorney fees on his anti-SLAPP motion upon a finding, in part, that the Defendants committed criminal extortion. [Doc. No.64 at 8 ("But the underlying conduct—previously recounted by the Court and established through social media posts and text messages whose authenticity DiCorcia never disputed—nonetheless falls within the scope of the *criminal* prohibition.").]

    b.  By DiCorcia's admission, Wunderler has a history of attempted shakedowns against high-profile members of the horseracing industry. [Doc. Nos. 36/49, ¶¶ 35-39 (admitting corresponding paragraphs).]

3.      On November 18, 2024, Wunderler authored serial posts depicting Baffert's son and broadcasting his location. These posts flanked a "GIF" from the film *American Sniper*, which depicts a sharpshooter targeting a person's head with cross-hairs shortly before killing him. [DeAngelis Dec., ¶ 4, Ex. A.]

4.      On November 19, 2024, DiCorcia's counsel deposed Bob Baffert via a remote Zoom deposition. The deposition was noticed by DiCorcia's counsel.

5.      Justin Wunderler attended the deposition, and his appearance was noted on the record. Plaintiff's counsel raised the objection that Mr. Wunderler was in default and his participation was suspect. [DeAngelis Dec., ¶ 5.]

6.      Plaintiff's counsel made the following designation at the outset of the deposition:

> This deposition is being video recorded. The only audio or video recording that should be taken of this deposition is from the court reporter. We are designating the audio and video portions of this deposition as pursuant to the protective order in this case. We don't want to see a video of this deposition online. That would be a violation of the protective order, so designated.

> We also anticipate that certain portions of the transcript will be designated under the protective order. We anticipate that this deposition will go into sensitive business information, matters pertinent to business relationships, and documents that have been designated as confidential. . . .

> This deposition is subject to a protective order and needs to be handled as such by all parties to the litigation.

[DeAngelis Dec., ¶ 6.]

7.      After Mr. Baffert was sworn, counsel for Mr. DiCorcia noted, "And to be clear, I want to make sure the record is clear here. I don't oppose the designation of the video in this matter or the audio recordings as confidential under our protective order for use only at trial." [*Id.*, ¶ 7.]

8.      Mr. Wunderler was present via Zoom, his microphone was on, and he raised no objection or issue with the designation of the deposition as confidential. [*Id.*, ¶ 8.]

9.      Throughout the deposition, Plaintiff's counsel designated certain portions of the testimony on the record as confidential, including (1) testimony concerning Baffert's resolution of business matters with the Churchill Downs Racetrack (which hosts the Kentucky Derby) and (2) sensitive health information. [*Id.*, ¶ 9.]

10.     Despite express designations of the video and portions of the testimony as confidential and subject to the protective order, Wunderler "live tweeted" the deposition,

including screen-grabs of the deposition with commentary, and relayed the substance (or purported to relay the substance) of confidential information. [*Id.*, ¶¶ 10-11, Exs. B-D.]

11.    Plaintiff's counsel raised the matter with DiCorcia's counsel. Seeing no other option, Plaintiff's counsel barred Mr. Wunderler from the remainder of the deposition (which lasted approximately twenty additional minutes), to prevent further violations of the protective order. [*Id.*, ¶ 12.]

12.    DiCorcia's counsel stated on the record, "You did designate the testimony about the medication as within the Protective Order, and if he did tweet about it, that would certainly be a violation of the Protective Order." [*Id.*, ¶ 13.]

13.    On November 19 and 20, Wunderler posted over 40 posts discussing the substance (or what he purported to be the substance) of Mr. Baffert's deposition, including screen-grabs depicting Mr. Baffert and DiCorcia's counsel for use as "memes." [*Id.*, ¶¶ 10-11, Exs. B-D.]

14.    On November 19, Wunderler sent an email to Plaintiff's counsel stating an intent to "Edit" the depositions and subsequently release them online. [*Id.*, ¶ 14, Exs. E.]

15.    On November 20, after receiving a cease-and-desist notice from Plaintiff's counsel, Wunderler reaffirmed his intent to violate the protective order, stating that he "will be stitching the videos and MED talk with some memes and going to have some fun with it online." [*Id.*, ¶ 15, Ex. F.]

16.    On November 20, counsel for DiCorcia confirmed he had no objection to bringing the audio/video recording of the deposition under the protective order and to designating the portion of the testimony concerning medical testimony as within the scope of the protective order. [*Id.*, ¶ 16, Ex. G.]

## LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balances of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011).

## ARGUMENT

### I.    Baffert is Entitled to a TRO to Stop Ongoing Violations of the Protective Order and Prevent Imminent Violations

Baffert is entitled to a TRO and injunction to prevent ongoing and imminent violations of this Court's Protective Order. The undersigned certifies that this Motion was brought at the earliest practicable opportunity and with all possible haste and could not have been brought earlier.

### A. Baffert is Likely to Succeed on the Merits

First, Baffert is likely to succeed on the merits of enforcing the Protective Order and of showing litigation misconduct on Wunderler's part. The materials are undisputedly subject to the Protective Order, and Justin Wunderler has undisputedly engaged in behavior intended to harass and threaten Baffert in connection with this litigation.

### 1. Justin Wunderler is Subject to the Protective Order

Justin Wunderler is subject to the Protective Order and, by virtue of his appearance and stipulated entry into the Protective Order, to this Court's jurisdiction. The Protective Order begins, "The *parties* have agreed to be bound by the terms of this Protective Order." [Doc. No. 29 at 4 (emphasis added).] The stipulated Protective Order was executed, on Justin Wunderler's behalf, by his attorney Scott Norman. [Doc. No.29 at 12.] The Protective Order was served on Wunderler by ECF Notice on March 6, 2024. [Doc. No.29.]

Approximately one week later, Mr. Norman withdrew as Wunderler's counsel, and Wunderler proceeded pro se. But Wunderler's decision to proceed without an attorney does not excuse his obligation to follow and respect the orders of this Court. The plain terms of the Protective Order impose upon Wunderler the *personal* duty to maintain confidentiality:

> All confidential information must be held in confidence *by those inspecting or receiving it*, and must be used only for purposes of this action. Counsel for each party, *and each person receiving confidential information* must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information.

23-cv-1774-RSH-BLM

[Doc. No.29 at 9, ¶ 14 (emphasis added).] In addition, this Court's Local Rules and Chambers Rules are clear that pro se parties are equally bound by the Federal Rules of Civil Procedure, Court Orders, and other applicable rules. *See* Huie Chambers Rules at Preamble; CivLR 83.1 ("Failure of . . . any party, to comply with . . . any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court.").

### 2. The Subject Information and Materials Are Subject to the Protective Order

Designating information or materials as confidential brings the same within the scope of the Protective Order "unless and until such designation is removed by agreement of the parties, or by order of the Court." [Doc. No.29 at 7, ¶ 7.] If Mr. Wunderler objects to Plaintiff's designation of the materials as confidential, he has the right to object to the designation and "move the Court for a ruling." [Doc. No.29 at 9, ¶ 13.] If Wunderler decides to parachute into this litigation solely to object to the designation of this information as confidential, the confidentiality of those documents remains effective until he obtains a ruling *on his motion.* By the Protective Order's plain terms, "The materials at issue *must be treated as confidential information, as designated by the designating party, until the Court has ruled on the objection.*" [Doc. No.29 at 9, ¶ 13.] Absent (1) a ruling *on an objection* or (2) an agreement to lift the designation — neither of which has occurred — the materials are confidential and remain confidential.

The Protective Order permits the disclosing party (here, Plaintiff) to designate a deposition or portions thereof as containing confidential information subject to the provisions of the Protective Order. [Doc. No.29 at 6, ¶ 6(a).] The Protective Order requires the disclosing party to make designations on the record at the time of the deposition if possible and permits an additional fourteen days after receipt of the transcript to designate additional portions as "Confidential." [*Id.*] Information so designated "must not be *used* for any purpose other than in connection with this litigation." [Doc. No.29 at 7, ¶ 7.] The

1  Protective Order repeats this mandate at least twice. [*See also* Doc. No.29 at 9, ¶ 14 ("All

2  confidential information must be held in confidence by those inspecting or receiving it.").]

3       The materials at issue are undisputedly subject to the protective order. Those

4  materials are (1) the videos/audio of the deposition; (2) the content of the testimony

5  regarding Baffert's business relationship with Churchill Downs; and (3) the content of

6  testimony regarding sensitive medical information.

### a. The Video/Audio Recording of the Deposition

8       The parties recorded the depositions in this matter by video for litigation purposes

9  only. The video is an uncontrolled recording which is not easily redactable and portions

10  are not easily designated as confidential. Further, videos are more easily manipulated to

11  give a false impression of their contents, including through AI programs that easily create

12  "deep fakes." A determination was made that an uncontrolled video or audio recording

13  would be detrimental to (1) the efforts to protect the confidentiality of the portions of the

14  portions of the deposition which are confidential and (2) to the business interests of the

15  Plaintiffs in this action, especially given that this lawsuit arises from allegations that

16  Defendants — and in particular Mr. Wunderler — deceptively edited videos with the

17  express purpose of harming and harassing Plaintiffs. [DeAngelis Dec., ¶ 6; Baffert Dec.,

18  ¶ 12.]

19       The deposition video and audio are "materials" within the meaning of the protective

20  order. The Protective Order separately encompasses "deposition testimony and

21  "depositions, including data, summaries and compilations derived therefrom." [Doc. No.29

22  at 5, ¶ 1.] The term "materials" further encompasses "recordings, photographs, motion

23  pictures." [Doc. No.29 at 5, ¶ 2.]

24       Plaintiff designated the video and audio recordings of the deposition as subject to

25  the Protective Order. [DeAngelis Dec., ¶ 6.] Counsel for DiCorcia stated on the record that

26  he did not oppose that designation [*Id.*, ¶ 7], and he confirmed that position in a follow-up

27  email [*Id.*, ¶ 16, Ex.G.] Mr. Wunderler was present at the deposition via Zoom, and his

28  microphone was on, yet he stated no objection and otherwise raised no issue with the

1    designation. [*Id.*, ¶ 8.] No objection has been raised or motion brought before the Court to
2    lift the designation of confidentiality. As such, video and audio recordings are confidential
3    and cannot be "used" for any purpose except in connection with the litigation. [Doc. No.29
4    at 7, ¶ 7 and 9, ¶ 14.] "Using" such materials to create memes and a "production," for
5    example, would clearly violate protection.

### b. Testimony Regarding Business Negotiations

7         It is well settled that "confidential settlement agreements" are within the coverage
8    of protective orders. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,
9    1212 (9th Cir. 2002). Baffert recently resolved a dispute with Churchill Downs, Inc.,
10   regarding an exclusion from their racetracks, including the Churchill Downs Racetrack,
11   which hosts the Kentucky Derby. That exclusion was effectuated through a decision not to
12   contract with Mr. Baffert for stall space or entries at the racetracks. [DeAngelis Dec., ¶ 9.]
13   The details of Mr. Baffert's and Churchill Downs' business negotiations were intended to
14   be, and are, confidential. [*Id.*]

15        Discovery into certain communications with Churchill Downs was permitted during
16   the deposition because that information, though confidential, was not privileged. *See Moser*
17   *v. Health Ins. Innovations, Inc.*, Case No. 17cv1127-WQH (KSC), 2019 WL 2996950, at
18   * 4 (S.D. Cal. July 8, 2019) ("Federal courts have typically found that a settlement
19   agreement 'is discoverable despite a confidential designation, especially when there is a
20   protective order in place to prevent unauthorized disclosure.") (emphasis added); see *Van*
21   *Osten v. Home Depot, U.S.A., Inc.*, No. 19CV2106 TWR (BGS), 2021 WL 3471581, at *7
22   (S.D. Cal. May 4, 2021) ("Confidentiality agreements do not bar discovery, and a general
23   interest in protecting confidentiality does not equate to privilege.").

24        Though Plaintiff permitted DiCorcia's counsel to ask questions, he expressly
25   designated the settlement communications and the contents of Mr. Baffert's testimony
26   regarding his dealings with Churchill Downs as confidential and subject to the Protective
27   Order on the record. [DeAngelis Dec., ¶ 9.] Wunderler was present via Zoom at the time
28   the designation was made. [*Id.*, ¶ 8.] No motion has been brought before the Court to lift

the designation of confidentiality. As such, the information contained within this portion of the deposition is confidential and cannot be "used" for any purpose except in connection with the litigation. [Doc. No.29 at 7, ¶ 7 and 9, ¶ 14.]

### c. Testimony Regarding Health Information

Confidential health information is a prototypical example of confidential information subject to a protective order. *See, e.g., ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2023 WL 7029210, at *2 (S.D. Cal. Oct. 24, 2023) (collecting cases). At the deposition, DiCorcia's counsel inquired about Mr. Baffert's health and medication history, presumably on the issue of damages. [DeAngelis Dec., ¶ 9.] At the beginning of this line of questioning, Plaintiff's counsel expressly designated testimony regarding Baffert's health and medication history as confidential and subject to the Protective Order. [DeAngelis Dec., ¶ 9.] DiCorcia's counsel has confirmed by subsequent email that he has no objection to the designation of Baffert's personal medical information as confidential. [*Id.*, ¶ 16, Ex. G.] Wunderler was present via Zoom at the time the designation was made. [*Id.*, ¶ 8.] No motion has been brought before the Court to lift the designation of confidentiality. As such, the information contained within this portion of the deposition is confidential and cannot be "used" for any purpose except in connection with the litigation. [Doc. No.29 at 7, ¶ 7 and 9, ¶ 14.]

### B. There is a Substantial Likelihood of Imminent Irreparable Harm

"Because intangible injuries generally lack an adequate legal remedy, 'intangible injuries [may] qualify as irreparable harm.'" *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (cleaned up). Confidentiality and privacy, which are protected constitutional interests under the California Constitution, are some such intangible interests which are held not to be fully compensable with damages.[2]

---

[2] *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012) (finding that violation of privacy shows irreparable harm); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (holding that injunctive relief may be available "because the injury here is an invasion of privacy that can never be fully remedied through damages" and loss of privacy is "irreparable"); *Maxcrest Ltd. v. United States*, No. 15-mc-80270-JST, 2016 WL 6599463, at *4 (N.D.

Evidence tending to show a threat to release confidential information is sufficient to establish a likelihood of irreparable harm. *See, e.g., Zendar Inc. v. Hanks*, No. 20-CV-03391-JSW, 2020 WL 4458903, at *5 (N.D. Cal. May 27, 2020) (finding a likelihood of irreparable harm where "evidence suggests Hanks intended to use the information to his advantage and to harm Zendar by exposing Company IP and confidential information.")

Here, that threat is apparent because Wunderler has violated the Protective Order on multiple occasions already. Wunderler "broadcast" the deposition, including screenshots and purported summaries of confidential testimony. [DeAngelis Dec., ¶ 10, Ex.B.] These posts included purported summaries of Baffert's testimony regarding his confidential health information and dealings with Churchill Downs. [*Id.*, ¶ 10, Ex. C.] Baffert's privacy interests are harmed each moment these posts remain online.

In addition, Wunderler has openly stated an intent to continue to violate the Protective Order, despite actual notice. Plaintiff's counsel expressly informed Wunderler of his obligations under the Protective Order, yet Wunderler has stated both via email and on "X" that he intends to turn the deposition into a "production." [*Id.*, ¶¶ 6, 11-16, Exs. D-F.] Wunderler has proclaimed, loudly and often, that he believes he is not subject to the Protective Order and intends to release an edited version of the deposition. [*Id.*, ¶ 11, Ex. D.] He repeatedly stated on "X" that he recorded the deposition, and in one such post, he published a video recording of a portion of the deposition. [*Id.*]

These ongoing and threatened violations to disclose confidential information are sufficient to show a likelihood (if not a certainty) of irreparable harm. The very purpose of

---

Cal. Nov. 7, 2016) ("[A]ny harm to Maxcrest's privacy interests would be irreparable because there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the requested information once that information has already been divulged."); *see also Madrigal v. Allstate Indem. Co.*, 2015 WL 12746225, at *7 (C.D. Cal. Apr. 22, 2015) ("right to privacy 'embraces confidential financial information in whatever form it takes, whether that form be tax returns, checks, statements, or other account information'" (quoting *Overstock.Com, Inc. v. Goldman Sachs Grp., Inc.*, 231 Cal. App. 4th 471, 503 (2014)); *DeSilva v. Allergan USA, Inc.*, No. 819CV01606JLSJDEX, 2020 WL 5947827, at *4 (C.D. Cal. Sept. 1, 2020) ("The California Constitution guarantees all Californians the right to privacy, including an informational right to privacy that encompasses financial and banking records.") (citations omitted).

a Protective Order is to restrict the dissemination of confidential information specifically because confidentiality, once lost, can never fully be recovered. Immediate action is necessary to stop Wunderler's ongoing and threatened violations of this Court's orders.

### C. The Equities Favor a TRO and Injunction

Courts have repeatedly held the need to keep personal health information confidential outweighs the presumption in favor of public access. *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2023 WL 7029210, at *2 (S.D. Cal. Oct. 24, 2023) (collecting cases). This is especially true where "the patients' health information is not central to the dispute between the parties." *Id.* at *4. In this case, Baffert is not seeking to recover damages related to personal medication use, if any, as a result of Defendants' defamation. The public has no interest in the public disclosure of that information.

The same is true of sensitive business information and negotiations. Settlement negotiations are regularly considered confidential, for good reason. *Moser v. Health Ins. Innovations, Inc.*, Case No. 17cv1127-WQH (KSC), 2019 WL 2996950, at * 4 (S.D. Cal. July 8, 2019). Broadcasting the details of settlements and associated business decisions threaten to disrupt business relationships, especially where, as here, the business relationship is one that was recently repaired and could just as easily fall apart. [Baffert Dec., ¶ 10.] No aspect of the dispute between Baffert and Churchill Downs involved allegations of "blood doping," "EPO," or "juicing." [Baffert Dec., ¶ 10.] As such, this testimony has no direct bearing on the claims and defenses in this matter, and questionable relevance at all. As stated earlier, Baffert is not seeking to quantify or recover damages from lost business opportunities.

Finally, the equities favor deletion of the posts authored thus far. Though Plaintiff's counsel endeavored to designate portions of the deposition as confidential in real-time, the Protective Order provides for a period after receipt of the transcript to review for additional designations. [Doc. No.29 at 6, ¶ 6(a).] This ability to designate is worthless while Defendant Wunderler continues to broadcast the deposition on his social media page.

### D. The Public Interest Favors an Injunction

The Protective Order is a stipulated order, entered into by agreement of all parties, including Justin Wunderler, through their respective counsel. [Doc. No.29 at 12.] "The public has a strong interest in holding private parties to their agreements." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017). Furthermore, the public has a strong interest in the integrity and force of Court orders and respect for the judicial system. This principle is embodied in this Court's Local Rules: "No one is above the law and, equally important, no one is entitled to act in such a way that erodes the public's trust in the administration of justice, impartiality, and the search for the truth." CivLR 2.1(a)(1). Wunderler's conduct does just that.

Given that all four elements of a TRO and injunction have been met, a TRO should issue, followed by an injunction, as set forth in Section III.

## II.    Baffert is Entitled to a TRO To Cease Wunderler's Harassment

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *see also De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ("[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

"[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) (*citing De Long*, 912 F.2d at 1147); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."). However, "an order imposing an injunction 'is an extreme remedy, and should be used only in exigent

1    circumstances.'" *De Long*, 912 F.2d at 1147 (quoting *In re Oliver*, 682 F.2d 443, 445 (3d
2    Cir. 1982)).

3         Courts may issue an injunction over conduct that is directly related to the lawsuit.
4    *See United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX),
5    2019 WL 6917918, at *6 (C.D. Cal. Oct. 17, 2019) (finding the defendant's conduct was
6    directly related to the suit because it was "intended to intimidate those who are handling
7    this litigation against him."); *Myart v. Taylor*, No. SA 5:16-CV-736-DAE, 2016 WL
8    5376227, at *4 (W.D. Tex. Sept. 26, 2016) (concluding that the court has jurisdiction to
9    prohibit a party's threatening and harassing conduct towards the other parties because the
10   conduct was "directly related to the instant suit."); *Test Masters Educ. Servs., Inc. v. Singh*,
11   428 F.3d 559, 580 (5th Cir. 2005) (upholding a portion of the district court's injunction
12   prohibiting Defendant "from threatening or harassing [plaintiff], its employees, its staff,
13   [plaintiff's] counsel, counsel's employees, or counsel's staff.").

14        Federal courts in California have relied upon Cal. Civ. Pro. § 527.6(a)(1) as an aid
15   in defining harassment in cases under diversity jurisdiction. *Beyond Blond Prods., LLC*
16   2022 WL 2784404, at *5. Harassment includes a "knowing and willful course of conduct
17   directed at a specific person that seriously alarms, annoys, or harasses the person, and that
18   serves no legitimate purpose. The course of conduct must be that which would cause a
19   reasonable person to suffer substantial emotional distress, and must actually cause
20   substantial emotional distress to the petitioner." Cal. Civ. Pro. § 527.6(b)(3). A "course of
21   conduct" is further defined to mean "a pattern of conduct composed of a series of acts over
22   a period of time, however short, evidencing a continuity of purpose, including following
23   or stalking an individual, making harassing telephone calls to an individual, or sending
24   harassing correspondence to an individual by any means." Cal. Civ. Pro. § 527.6(b)(1).

25   **A. Wunderler Engages in Repeated Harassment and Threats Each Time There is Movement in this Case**

26
27        Here, the first prong refers to the likelihood of success on the merits of showing
28   harassment, rather than the merits of the underlying lawsuit. *Beyond Blond Prods., LLC v.*

*Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at \*5 (C.D. Cal. June 17, 2022). In recent months, Wunderler has authored defamatory or threatening posts virtually any time a development occurred in this matter:

- Wunderler repeated his defamatory claim about Cave Rock twice on July 10, the day after co-Defendant DiCorcia filed his motion to strike. [*Id.*, ¶¶ 53-54, Ex.47.]

- On July 30, Plaintiff filed his response to DiCorcia's motion to strike and, over the next few days (until August 2) made numerous attempts to enforce pending discovery. Between August 2 and 4, Wunderler authored several posts with threats of physical violence, with a contemporaneous link to same-day photographs of Plaintiff and his counsel at a race meeting. [Doc. No.51-1, ¶¶ 21(c)-(h), 22-25, 55-56; Doc Nos. 51-14 to 51-17.]

- On August 6, DiCorcia filed his reply brief for his motion to strike or dismiss, and Wunderler repeated his comment about *Cave Rock* the following day. [Doc. No.51-1, ¶¶ 57-58, Doc. No.51-50]

- On the day of the hearing, Wunderler authored several posts commenting on the lawsuit and boasted, again, that he allegedly possessed "bombshell" information he would "drop" the following day. [Doc. No.51-1, ¶ 61, Doc. Nos. 51-52 to 51-53.]

- This Court ruled on DiCorcia's motion to dismiss on August 28. [Doc. No.47.] That same day, Wunderler posted several comments about the lawsuit and this Court's Order, and claimed (again) that he would "drop" "bombshell" information the following day. [Doc. No.51-1, ¶¶ 62-63, Doc. Nos. 51-53 to 51-56.]

- On September 23, Plaintiff moved for default judgment. [Doc. No. 51.] That day and the following day, Wunderler threatened to release damaging information on the date the motion was noticed (October 28). [Doc. No. 63, ¶ 7; Doc. No.63-3 to 63-6.] In addition, Wunderler posted additional pictures

of Baffert's family and home, including disparaging comments about the Bafferts. [DeAngelis Dec., ¶ 17, Ex. H.] Mr. Wunderler also posted comments advertising his intent not to cooperate, including a statement that he would "wipe [his] ass" with any Court orders. [*Id.* (last page)]

- On October 16, Plaintiffs filed their response to DiCorcia's motion for fees. [Doc. No. 58.] In response, Wunderler posted comments harassing Baffert and his counsel. [*Id.*, Ex. I.]

- On November 15, this Court denied DiCorcia's motion for attorney fees. [Doc. No.64.] A few hours later (9:10 pm Central Time), Wunderler posted a threat to release a video deposition, coupled with a "check mate" GIF. [DeAngelis Dec., ¶ 19, Ex. J.]

- On November 18, a day before Baffert's deposition, Wunderler authored a series of four posts in rapid succession advertising the location of Baffert's son Bode posting a GIF of a sharpshooter, followed immediately by a photo of Bode as a child with Baffert and his wife, Jill, with the caption, "They grow up fast Jill." [DeAngelis Dec., ¶ 4, Ex. A.]

In this same period of time, Wunderler sent emails to Plaintiff's counsel and made various social media posts which were calculated to harass Plaintiff's counsel, at least one of which expressly advised one of counsel's clients to get a different lawyer. [DeAngelis Dec., ¶¶ 20-22, Exs. K, L, and M.]

The above account shows a pattern of abusive litigation conduct in which Wunderler authors posts calculated to threaten and harass Baffert, with particular emphasis on Baffert's family and counsel. Wunderler's social media posts evidence an express vengeance motive behind his posts targeting Baffert's family. [*Id.*, ¶ 23, Ex.N.] This course of conduct included stalking, menacing photographs, and threats of violence. Though directed to the public, Wunderler authored these posts knowing and "intend[ing] that plaintiff would read and be annoyed by them." *Brekke v. Wills*, 125 Cal. App. 4th 1400, 1411 (2005).

Two recent instances are of particular concern. Between August 2 and 3, 2024, Wunderler posted several photographs of Baffert, Baffert's counsel, and Baffert's wife in posts to the effect that he had to "talk down" "buddies" of his from assaulting Baffert. This Court has already identified these posts as harassment. [Doc. No.65 at 4 ("The post certainly appeared to be menacing and harassing, in the Court's view.").]

Then, on November 15, 2024, Wunderler authored a series of posts broadcasting that Baffert's son is a current student at Texas Christian University. In order, the posts published (1) a screenshot of Baffert's son's LinkedIn page; (2) a GIF of a sharpshooter in the process of shooting and killing a target; (3) a repost of the first tweet with the comment, "Student at TCU. Interesting,"; and (4) a menacing message Baffert's son "[grew] up fast." [DeAngelis Dec., ¶ 4, Ex.A.]

The first set of posts communicated, directly, that Baffert was being watched and followed by those who wished him harm. The second set of posts was a direct threat of mortal violence against Baffert's immediate family. At the very least, these comments were calculated to menace, seriously alarm, annoy, and harass Baffert, and these statements serve no legitimate purpose. Cal. Civ. Pro. § 527.6(b)(3). Any reasonable person aware of Wunderler's conduct as a whole would be seriously alarmed at their content, especially given that the comments show an awareness of the location of his targets, a clear implication of stalking, and an evident intent to inflict serious harm. Any husband or father would be seriously disturbed by menacing comments and stalking behaviors directed at his wife and child, and that has certainly true of Mr. Baffert. [Baffert Dec., ¶¶ 2-9.] Wunderler's threats, in particular the threat against his son, has disrupted Baffert's and his son's life and caused serious distress to him, his wife, and his son. [*Id.*]

## B. This Behavior is Ongoing and Likely to Continue in the Near Future

As set forth above, this behavior has been lock-step with any movement in this case, especially actions taken by or that favor Mr. Baffert. With the conclusion of discovery, motions for summary judgment are imminent, followed certainly by orders one way or the other. An order on the pending motion for default judgment against Wunderler is also, by

definition, forthcoming. Considering that Wunderler's actions have, without fail, coincided with the events of this litigation, there is a probability that his menacing behavior will continue in the immediate future as this litigation moves toward resolution. *See Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *6 (C.D. Cal. June 17, 2022) ("Beyond Blond has established that it is likely to suffer irreparable harm. Heldman's threatening and harassing emails have increased in frequency over the pendency of this lawsuit.").

### C. The Equities Favor a TRO and Injunction

As stated above, Wunderler's statements serve no purpose, nor are they protected. "In California, speech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1250 (2005); *see also United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) ("We agree with the Eighth Circuit's rationale that, because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment.").

The injunction proposed below is narrowly tailored to prohibit Wunderler from engaging in harassing or threatening conduct toward Baffert, his family, or his counsel during the pendency of this litigation. The injunction works no hardship upon Wunderler not already expected of litigants appearing before this Court, and it permits Wunderler to continue to voice his opinions "so long as he does so in a manner that does not constitute personal harassment." *Beyond Blond Prods., LLC*, 2022 WL 2784404, at *6 (finding that balance of hardships favored injunction for the same reasons).

### D. The Public Interest Favors a TRO and Injunction

"Finally, an injunction would in the public interest because it would help ensure the fair administration of justice. It would ensure that [Baffert] and [his] counsel can fully participate in this lawsuit without the fear of receiving harassing communications from [Wunderler]." *Beyond Blond Prods., LLC* 2022 WL 2784404, at *6. Again, this Court's

local rules embody the commitment "to ensuring that all who work within [the Court] and come before it treat each other with decency, dignity, and respect." CivLR 2.1(a)(1). As the rule further states, "Fair, impartial and accessible courts are fundamental to the preservation of our democracy. We — judges, lawyers, court staff, parties — all have a responsibility in ensuring that we preserve the legacy of this institution." CivLR 2.1(a)(1). Wunderler has repeatedly shown disrespect for this proceeding and this Court. On repeated occasions, he has taunted counsel and considers himself immune from consequence. [DeAngelis Dec., ¶¶ 17-22, Exs. H-M.] In one particularly telling instance, he stated that he would "wipe [his] ass" with orders issued by this Court. [*Id.*, ¶ 17, Ex.H.]

Plaintiff respectfully requests that the Court enjoin Wunderler's ongoing harassment and repeated litigation misconduct, including the deletion of posts constituting misconduct.

## CONCLUSION AND REQUEST FOR RELIEF

Plaintiffs have shown ongoing and imminent violations of this Court's Protective Order and ongoing and imminent harassment of Plaintiff, his family, and his counsel. Plaintiff respectfully requests the following order, which is virtually identical to an order granting the TRO in *Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *8 (C.D. Cal. June 17, 2022):

A. Prohibiting Mr. Wunderler from further public disclosures of the contents of Mr. Baffert's deposition, pending review and further designation of the confidential portions of the deposition transcript;

B. Prohibiting Mr. Wunderler from any use of the video or audio recordings of Mr. Baffert's deposition, except in connection with this litigation;

C. Prohibiting Mr. Wunderler from posting threatening or harassing content about Baffert, Baffert's family, or Baffert's counsel on the social media platform "X" or any other publication, website, online forum, social media, or review applications (and which expressly includes posts broadcasting the location of Baffert, his family, or his counsel);

D. Prohibiting Wunderler from directing any other person to do any of the foregoing acts on Wunderler's behalf;

E. Requiring the deletion of posts discussing the contents of Mr. Baffert's deposition and using images from the video-recording in violation of the Protective Order, as identified by Plaintiff; and

F. Requiring the deletion of posts that are threatening, harassing, and otherwise violative of this Court's principles of civility for parties appearing before it, as identified by Plaintiff.

DATE:  November 21, 2024

*/s/ Joseph C. DeAngelis*
**BREWSTER & DEANGELIS, PLLC**
Clark O. Brewster*
Joseph C. De Angelis*
2617 East 21st Street
Tulsa, Oklahoma
(918) 742-2021 Office;
(918) 742-2197 Fax
cbrewster@brewsterlaw.com
jcdeangelis@brewsterlaw.com
*Admitted Pro Hac Vice
and
**LAW OFFICES OF SHEPPARD S. KOPP**
Shepard S. Kopp, Esq.
California SBN: 174612
233 Wilshire Blvd. Suite 900
Santa Monica, California 90401 Telephone (310) 914 -4444
Facsimile (310) 914 -4445 shep@shepardkopplaw.com
*Attorneys for Plaintiffs*

23-cv-1774-RSH-BLM

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years old and not a party to this action. I am employed in the County of Tulsa, State of Oklahoma. My business address is 2617 E. 21st St., Tulsa, OK 74114.

On November 22, 2024, I served true copies of the following document(s) described as:

**Motion for Temporary Restraining Order and Injunction Against Defendant Justin Wunderler (Public version)**

on the interested parties:

Jeff Lewis, Esq.
Jeff Lewis Law, APC
827 Deep Valley Drive, Suite 209
Rolling Hills Estates, CA 90274
Tel: 310-935-4001
Fax: 310-872-5389
Email: jeff@jefflewislaw.com
**Attorney for Defendant Daniel DiCorcia**

Justin Wunderler
5 North Olympia Drive
Waretown, NJ 08759
Email: meatball92448@yahoo.com

**Defendant Justin Wunderler, Pro Se**

**X  BY Email OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from email address wrist@brewsterlaw.com to the persons at the email addresses listed above and in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission did not succeed.

**___ BY ELECTRONIC SERVICE:** I served the document(s) on the person listed in the Service List by submitting an electronic version of the document(s) to the CM/ECF filing system for the Southern District of California.

I declare under penalty of perjury under the laws of the State of Oklahoma that the above is true and correct.

Executed on November 22, 2024, at Tulsa, Oklahoma.

*/S/ Wynn Rist*
Wynn Rist