UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>JUSTIN A. WUNDERLER and DANIEL DICORCIA,<br><br>          Defendants. | Case No.: 23-cv-1774-RSH-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[ECF No. 81] |

Before the Court is a motion for summary judgment, or alternatively for partial summary judgment, filed by plaintiff Bob Baffert. ECF No. 81. Pursuant to Local Civil Rule 7.1(d)(1) the Court finds the motion presented appropriate for resolution without oral argument. As set forth below, the Court grants in part and denies in part the motion.

**I. BACKGROUND**

On September 27, 2023, plaintiffs Bob Baffert and Bob Baffert Racing Stables, Inc. filed this lawsuit against defendants Justin Wunderler and Daniel DiCorcia. ECF No. 1. Plaintiff Baffert is an internationally recognized thoroughbred racehorse trainer; defendants are racing bettors with a substantial social media presence and following. The initial Complaint brought two claims, for civil extortion and for defamation. *Id.*

Defendant DiCorcia initially appeared pro se and filed an answer; thereafter, he appeared through counsel and filed a motion to dismiss, and in the alternative to strike, the Complaint. ECF Nos. 10, 16. On December 15, 2023, Wunderler appeared through counsel and filed an answer to the Complaint. ECF No. 17. On March 12, 2024, the Court granted to the motion to withdraw filed by Wunderler's counsel, ECF No. 31, thereafter, Wunderler proceeded pro se.

On June 6, 2024, the Court granted defendant DiCorcia's motion to dismiss for failure to state a claim. ECF No. 35.

On June 25, 2024, Plaintiffs filed their Amended Complaint, the operative pleading, against DiCorcia and Wunderler. ECF No. 36 ("FAC"). The Amended Complaint contains three claims, reiterating the previously dismissed civil extortion claim for purposes of the appellate record, and pleading two defamation claims. *Id.* On August 27, 2024, the Court granted in part DiCorcia's motion to dismiss the Amended Complaint. ECF No. 47. As a result of that order, plaintiff Bob Baffert Racing, Inc. has been dismissed from the action, leaving Mr. Baffert as the sole plaintiff. *Id.* at 17–18.

Only one defamation claim remains, against both Defendants, based on two statements or sets of statements made by defendant Wunderler. *Id.* at 19. The first of these was a post Wunderler made on June 12, 2023 on the social media platform X, describing Baffert's alleged treatment of a horse named Arrogate: "Arrogate died cause of drugs/epo Baffert used prior to him turning to stud. Turned his brain into grilled cheese." FAC ¶ 49. The second was a pair of statements Wunderler made on X on September 4 and 5, 2023, regarding the withdrawal of the racehorse Muth from a race the previous weekend: "LOL that Baffert. Bad shipment of epo has hit that barn," *id.* ¶ 76, and "Muth was scratched cause reaction to EPO. 100%%%," *id.* ¶ 77.[1] In denying

---

[1] Preceding the first of these two statements about Muth, on September 4, 2023 Wunderler had posted: "I will get to the bottom of Muth scratch. My thinking is bad epo shipment." ECF No. 36 (FAC) ¶ 75.

DiCorcia's motion to dismiss as to these statements, the Court determined that Plaintiff adequately pleaded a defamation claim, and adequately pleaded that DiCorcia was liable with Wunderler for these statements under a theory of civil conspiracy. ECF No. 47 at 14–17.

Wunderler did not respond to the Amended Complaint, and on August 28, 2024, the Clerk entered default against him. ECF No. 48. On September 23, 2024, Plaintiff filed a motion for default judgment against Wunderler, ECF No. 51, which remains pending.

On January 13, 2025, Plaintiff filed his motion for summary judgment, or alternatively for partial summary judgment, against Wunderler. ECF No. 81. The motion has been fully briefed. ECF Nos. 84 (opposition); 85 (reply).

## II.   LEGAL STANDARD

### A.   Motion for Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by: (1) presenting evidence that negates an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the movant fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 255.

Pursuant to Rule 56, a party may move for summary judgment or partial summary judgment, seeking judgment as to a claim or defense, or as to part of a claim or defense. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

### B. Defamation

#### 1. Elements

Plaintiff's surviving claim is for defamation. Under California law, the elements of the claim are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted). Under California Civil Code section 44, the

term "defamation" encompasses either libel as set forth in Civil Code sections 45 and 45(a), or slander as set forth in Civil Code section 46. *See* Cal. Civ. Code § 44. "In general . . . a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259–60 (Ct. App. 2017) (quoting *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003)). The defamatory statement must specifically refer to, or be "of or concerning," the plaintiff. *Jackson*, 10 Cal. App. 5th at 1260.

### 2. Liber Per Se and Libel Per Quod

"There are generally two types of libel recognized in California—libel per se and libel per quod." *Bartholomew v. YouTube*, LLC, 17 Cal. App. 5th 1217, 1226 (Ct. App. 2017). A statement is considered libel per se when it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a; *accord Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (Ct. App. 2007). "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." Cal. Civ. Code § 45a.

> The distinction has been described as follows: "If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all. If such a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then (under section 45a and the cases . . . which have construed it) there is a libel per se. But if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then (under the same authorities) the libel cannot be libel per se but will be libel per quod."

*Bartholemew*, 17 Cal. App. 5th at 1226–27 (quoting *Barnes-Hind, Inc. v. Super. Ct.*, 181

Cal. App. 3d 377, 386–87 (Ct. App. 1986)). Whether a publication is libelous on its face is a question of law. *Freeman v. Mills*, 97 Cal. App. 2d 161, 165–66 (Ct. App. 1950).

### 3. Actual Malice

If the person defamed is a public figure, he or she must also prove by clear and convincing evidence that the statement was made with "actual malice," that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *Jackson*, 10 Cal. App. 5th at 1260. Actual malice is not a statutory element of defamation under California statute or at common law, but instead is a "constitutional standard" that the U.S. Supreme Court "superimposed … on the common law of libel." *Reader's Digest Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 285–86 (1964)). Whether a plaintiff in a defamation action is a public figure is a question of law. *Id.* at 252. Here, Plaintiff concedes that he is a public figure. ECF No. 81 at 25.

### 4. Conspiracy

"[L]iability for libel may be imposed on a conspiracy theory." *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 349 (1998). To support such a theory, a plaintiff must show "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (Ct. App. 2013).

### III. ANALYSIS

Plaintiff's notice of motion states that he moves for summary judgment, or partial summary judgment, as to the following issues: "(1) the publication of defamatory statements of or concerning Bob Baffert; (2) the falsity of such statements, (3) that such statements were defamatory per se and, thus, that the tort of defamation occurred; (4) a civil conspiracy to defame; and (5) DiCorcia's actual malice." ECF No. 81 at 1. The Court addresses these below, considering Plaintiff's first two issues together.

///

///

### A. Publication of False and Defamatory Statements Concerning Baffert

Plaintiff contends that the two statements at issue (a) were published, (b) were of or concerning him, (c) were false, and (d) were defamatory. ECF No. 81 at 12–13.

The undisputed evidence establishes that the statements were published on the social media platform X. *Compare* FAC ¶¶ 49, 76–77 (alleging publication of statements), *with* ECF No. 49 ("DiCorcia's Answer") ¶¶ 49, 76–77 (admitting all allegations).[2]

The statements, on their face, are "of or concerning" Baffert; they refer to him by name. *See* ECF No. 84 at 7 ("For purposes of this motion, DiCorcia concedes that Baffert has proven, conclusively, that the tweets by Wunderler are 'of and concerning' Baffert.").

The statements were false. *Compare* FAC ¶ 49 ("Wunderler falsely claimed, based on no evidence, that Baffert-trained thoroughbred *Arrogate* was "juiced/epo.") *with* DiCorcia's Answer ¶ 49 (admitting all allegations); *compare* FAC ¶ 86 (alleging that on September 6, 2023, Wunderler "falsely attributed *Muth*'s scratch (with '100%%%' certainty) to the use of EPO"), *with* DiCorcia's Answer ¶ 86 (admitting all allegations).

The statements are also defamatory. The Arrogate statement asserts, and the Muth statements imply, that Baffert caused the drug "epo" to be used on specific horses he was training. "EPO" refers to erythropoietin, a drug improperly used in horse racing as a means of blood doping to artificially increase red blood cell mass. *See* Declaration of Clara Fenger ("Fenger Decl.," ECF No. 81-2) ¶¶ 58–61. DiCorcia admits that Wunderler's statements about Arrogate and Muth assert or imply Baffert's use of a substance or method banned in horse racing. *Compare* FAC ¶¶ 177, 183, *with* DiCorcia's Answer ¶¶ 177, 183 (admitting all allegations). DiCorcia further admits that "Defendants

---

[2] Admissions made in an Answer are judicial admissions and may be considered in a motion for summary judgment. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.")

. . . clamed that these criminal acts explained specific events, such as pre-race scratches and race-related fatalities." *Compare* FAC ¶ 178 (allegation containing quoted language), *with* DiCorcia's Answer ¶ 178 (admitting all allegations). DiCorcia also admits that the use of EPO is an act of animal cruelty, is prohibited in horseracing, and is a felony act of an immoral character; and that such allegations would be harmful to any trainer's trade or profession. *Compare* FAC ¶¶ 184–85, *with* DiCorcia's Answer ¶¶ 184–95 (admitting all allegations).

Based on the undisputed evidence, the Court grants partial summary judgment in Plaintiff's favor on the above issues.

### B. Defamation Per Se

Plaintiff also contends that the two statements at issue are defamation per se. ECF No. 81 at 13–14. As set forth in Plaintiff's motion, his theory of defamation per se is that both the Arrogate and Muth statements, in accusing Baffert of using the drug EPO, thereby accused him of engaging in acts of animal cruelty that were illegal and immoral. *Id.* at 14.

The Court has set forth above the applicable legal standard for libel per se under California Civil Code section 45a. Plaintiff's summary judgment brief does not specifically address this standard, or whether the Arrogate and Muth statements are defamatory of the plaintiff "without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a. Plaintiff's brief cites California Civil Code section 46 for the definition of defamation per se, ECF No. 81 at 13–14, but that section pertains to slander and is inapplicable here.

DiCorcia responds that Plaintiff has failed to establish that the defamatory meaning of those statements is "common knowledge rationally attributable to all reasonable persons," as required under *Barnes-Hind*. ECF No. 84 at 14. The Court agrees with DiCorcia. In denying DiCorcia's motion to dismiss, the Court previously ruled that Plaintiff had adequately pleaded defamation per se. ECF No. 47 at 16 ("As alleged, the defamatory nature of both statements is clear from the meaning of the words used in

context and does not require extrinsic facts."). This did not purport to be a ruling that such statements were conclusively established, as a matter of law, to be defamation per se. *See Reed v. Paramo*, No. 18-CV-361 JLS (DEB), 2022 WL 1712730, at *8 (S.D. Cal. May 27, 2022) ("[M]otions to dismiss and motions for summary judgment are fundamentally different motions subject to very different evidentiary standards[.]"). The per se defamatory meaning of the statements, as articulated by Plaintiff in his summary judgment brief, rests on the reader's knowledge that the use of the drug EPO on horses is immoral, criminal, and cruel.[3] Plaintiff has failed to establish that this is "common knowledge rationally attributable to all reasonable persons."

### C. Civil Conspiracy

Plaintiff argues that the undisputed evidence establishes that DiCorcia is responsible, under a theory of civil conspiracy, for defamation perpetrated by Wunderler. ECF No. 81 at 15–25. The Court's rulings above grant summary judgment to Plaintiff on some, but not all, of the elements of defamation. Plaintiff has sued for defamation and cannot recover against any defendant absent proof of the commission of that tort. Accordingly, at this time there is insufficient basis for the Court to grant summary judgment that DiCorcia is liable to Plaintiff for defamation on a theory of civil conspiracy or otherwise.

### D. Actual Malice

Finally, Plaintiff asserts that the undisputed evidence establishes that DiCorcia acted with actual malice. *Id.* at 25–30. DiCorcia disagrees and argues that Plaintiff has not put forward sufficient evidence to warrant removing this element—which must be proved by clear and convincing evidence—from the jury's determination. ECF No. 84 at

---

[3]  Plaintiff's reply brief in a footnote cites cases in which other courts outside California made a determination that certain statement referring to "doping" or "steroid juice" were defamatory per se. ECF No. 85 at 4, fn.1 Those cases do not purport to interpret California law and do not bear on the Court's analysis of defamation per se under *Barnes-Hind*.

12–13. DiCorcia also questions, without taking a position, "whether it is DiCorcia's state of mind or Wunderler's state of mind that must demonstrate actual malice." *Id.*

Plaintiff does not allege that DiCorcia personally made or republished the defamatory statements at issue, but instead that DiCorcia is liable under a theory of civil conspiracy for statements made by Wunderler. Plaintiff has put forward evidence that DiCorcia facilitated the publication of statements by Wunderler that were in fact false, ECF No. 81 at 25–26, and that DiCorcia made his own statements about Baffert without knowing whether they were true or false, *id.* at 27. However, Plaintiff has not otherwise established that the tort of defamation has been committed, or that DiCorcia agreed to the commission of that tort. Plaintiff does not specify when or by what act DiCorcia formed or joined the conspiracy to commit defamation. Under the circumstances here, there is an insufficient basis for the Court to grant summary judgment that DiCorcia acted with actual malice in conspiring to commit such a tort.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion [ECF No. 81]. The Court **GRANTS** partial summary judgment that the Arrogate and Muth statements at issue were: (a) published, (b) of or concerning Plaintiff, (c) false, and (d) defamatory.

The motion for summary judgment in all other respects is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 10, 2025

_____
Hon. Robert S. Huie
United States District Judge