**BREWSTER & DEANGELIS, PLLC**
Clark O. Brewster
Joseph C. De Angelis
2617 East 21st Street
Tulsa, Oklahoma
(918) 742-2021 Office;
(918) 742-2197 Fax
cbrewster@brewsterlaw.com
jcdeangelis@brewsterlaw.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT, et al, <br><br> Plaintiffs, <br><br> v. <br><br> JUSTIN WUNDERLER and DANIEL DICORCIA, <br><br> Defendants. | Case No.: 23-cv-1774-RSH-BLM <br><br> **Second Motion for Temporary Restraining Order and Motion to Modify Injunction [Doc. No.71] Against Defendant Justin Wunderler** |

Plaintiff Bob Baffert, through counsel, and pursuant to FRCP 65(b) and 18 U.S.C. § 1512(d), respectfully requests a modification of the Preliminary Injunction [Doc. No. 71] to state:

> Mr. Wunderler is enjoined from posting threatening or harassing content about Mr. Baffert, Mr. Baffert's family, ~~or~~ Mr. Baffert's counsel**, or witnesses** in this litigation on the social medial platform "X" or any other publication, website, online forum, social media, or review applications.

The grounds for this motion are new facts and circumstances establishing Wunderler's continuing litigation misconduct on social media, this time in response to the parties' publication of witness lists. In support of this Motion, Plaintiff states as follows:

# PRELIMINARY STATEMENT

This Court has already enjoined Mr. Wunderler and warned him to cease his ongoing pattern of threats, harassment, and vexatious conduct against Mr. Baffert, his family, and his counsel. Yesterday, the parties filed their witness lists, which including, among other witnesses, Amr Zedan. Mr. Zedan was the owner of the thoroughbred horse Medina Spirit and is actively involved in the thoroughbred racing industry internationally. He was born in Los Angeles and graduated from the University of Pacific in Stockton, California, after completing courses at Texas A&M University. He is the chairman of a successful, family-owned, Energy-focused group of companies based in the Eastern Province of Saudi Arabia.

Within minutes of Baffert's filing, Mr. Wunderler published a slew of social media posts generally to the effect that Mr. Zedan has connections to terrorist groups, assisted in the planning of the September 11 Terrorist Attacks, profited from those attacks, and presently launders money to support terrorist activities. Mr. Wunderler falsely claims to have verified these claims with "sources" in the national security sphere. The posts are racially charged — Mr. Wunderler's claims are based on nothing but Mr. Zedan's race and ethnicity. The clear purpose of these posts was to threaten and harass Mr. Zedan due to his status as a witness in this case and for the purpose of influencing of these pending proceedings, which is a felony offense. 18 U.S.C. § 1512(d).

Immediate action is necessary to close a gap in the Court's previous injunction. The injunction does not specifically identify witnesses as a category of individuals Mr. Wunderler must refrain from harassing or threatening. It is clear that Mr. Wunderler believes that he may continue his litigation misconduct so long as it is not aimed directly and specifically at Mr. Baffert, his family, or his counsel. But Wunderler's attempts to chill Mr. Baffert's witnesses are clearly prohibited by law. He must be immediately restrained, and the injunction must be modified.[1]

---

[1] Wunderler has rejected Plaintiff's efforts to cease and desist. Notice is not possible because immediate relief is required to stop an ongoing injury. Notice of the motion will be sent promptly after filing.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. On August 28, 2024, the Clerk entered Wunderler's Default for failure to defend, following his failure to answer the First Amended Complaint. [Doc. No.48.] On September 23, 2024, Plaintiff filed a motion for default judgment against Defendant Wunderler. [Doc. No.51.] Despite receiving notice, Defendant Wunderler filed no opposition. [Doc. No.63 at 2, ¶¶ 5-6; Doc. Nos. 63-1 and 63-2.]

2. On November 22, 2024, Baffert filed a motion for a temporary restraining order [Doc. No.68], which was subsequently granted [Doc. No.70] and converted into a preliminary injunction [Doc. No.71]. That motion established the following

    a. Mr. Wunderler has a history and continuing practice of engaging in threatening and harassing behavior, as set out in the Motion for Default Judgment and prior declarations. [Doc. No.51 at 10-12.] This history includes repeated threats of violence against Baffert, his family, and his counsel. [Doc. No.42.] As this Court stated regarding one such post, "The post certainly appeared to be harassing and menacing in the Court's view." [Doc. No.65 at 4.]

    b. This history also includes repeated instances of threats to release damaging information, amounting to criminal extortion. [Doc. No.64 at 8 ("But the underlying conduct—previously recounted by the Court and established through social media posts and text messages whose authenticity DiCorcia never disputed—nonetheless falls within the scope of the *criminal* prohibition.").]

    c. On November 18, 2024, Wunderler authored serial posts depicting Baffert's son and broadcasting his location. These posts flanked a "GIF" from the film *American Sniper*, which depicts a sharpshooter targeting a person's head with cross-hairs shortly before killing him. [Doc. No.68-1 at 9–13.]

  d. Mr. Wunderler maliciously posted confidential information from Mr. Baffert's deposition in direct violation of the protective order in this case. [Doc. No.71 at 3.]

  e. Mr. Baffert established a pattern of harassing and threatening behavior that was tied to developments in this litigation and that was likely to continue. [*See* Doc. No.68 at 16–19 and citations (detailing history).]

3.  At the November 26, 2024 hearing on the motion, the Court made findings on the record that Mr. Wunderler's behavior was likely to continue in the absence of injunctive relief. [Doc. No.70.]

4.  The Court entered a temporary restraining order and preliminary injunction directing Mr. Wunderler to cease his litigation misconduct, as follows:

> Mr. Wunderler is enjoined from posting threatening or harassing content about Mr. Baffert, Mr. Baffert's family, or Mr. Baffert's counsel in this litigation on the social medial platform "X" or any other publication, website, online forum, social media, or review applications.

5.  In the late afternoon of April 17, 2025 (yesterday), Mr. Baffert submitted a witness list pursuant to this Court's scheduling order [Doc. No.27] and identified Amr Zedan as a witness. [Doc. No.89.] Defendant DiCorcia submitted a witness list, but Wunderler did not. [Doc. No.91.]

6.  Within minutes, Mr. Wunderler began publishing the following posts, which continued overnight and into this morning:

- A photo of Mr. Zedan with the caption, "I also hope Amr Zedan takes the witness stand and see if had anything to do with 9/11." [DeAngelis Dec., ¶ 4, Ex. A.]

- A text conversation referencing that Wunderler and his follows have "established that [Baffert has] taken money from alleged 9-11 conspirators to train horses." [*Id.*, ¶ 5, Ex. B.]

- A series of posts stating that Mr. Zedan move to Saudi Arabia "after 9/11 happened" and "he and his family got rich." [*Id.*, ¶ 6, Ex. C.]
- Calling Mr. Zedan a "Govt asset" and stating "when he takes the witness stand will call out his family got rich after 9/11." [*Id.*, ¶ 7, Ex. D.]
- A photograph of a certificate from the Military Intelligence Corp. which identifies Mr. Wunderler. [*Id.*, ¶ 8, Ex. E.]
- A post stating "My source is telling me there were couple people who attended Amr Zedan wedding that have links to terrorism." [*Id.*, ¶ 9, Ex. F.]
- A post with a screenshot of an article about one of Mr. Zedan's purchases in a horse sale with the caption, "Why do you think Amr Zedan spends so much at sales? Money laundering for terrorist networks. Go look st [*sic*] all Zedan studs." [*Id.*, ¶ 10, Ex. G.]
- A post of a Zedan horse stating "2.2 Mil Colmus — money laundering for Terrorist projects." [*Id.*, ¶ 11, Ex. H.]
- A post of a Zedan horse stating "3.3 mil Hejazi. Terror cells." [*Id.*, ¶ 12, Ex. I.]
- A screenshot from Zedan's website with the caption, "4 mil Curlin/Beholder. Is horse dead? Or was money laundering operation for Saudis." [*Id.*, ¶ 13, Ex. J.]
- A series of re-posts about Zedan, which Mr. Wunderler captioned "9/11" with an American Flag emoji. [*Id.*, ¶ 14, Ex. K.]
- A repost stating that his "entire tweet history end up at the National Museum of Racing and Hall of Fame someday." [*Id.*, ¶ 15, Ex. L.]
- A post stating "have to burn it all down cause all want is Mandaloun winnings. Sad," referencing Mr. Wunderler's gambling losses from the 2021 Kentucky Derby, for which he blames Baffert. [*Id.*, ¶ 16, Ex. M.]

7. The above posts were part of a lengthy series of posts specifically discussing Baffert's witness list, usually with screenshots of the filings. [*Id.*, ¶ 17, Ex. N.]

8. Mr. Zedan communicated to Mr. Baffert's representatives that he had become aware of the posts. Mr. Zedan was justifiably disturbed and seriously concerned about the contents of the posts, which he understands were made because of his connection to this litigation as a witness. He expressed concern for his and family's safety in response to the accusations. [Zedan Declaration, ¶¶ 9–12.]

## JURISDICTION AND LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balances of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011).

A district court has inherent authority and wide discretion to modify a preliminary injunction in consideration of new facts or circumstances. *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002); *see System Federation No. 91 v. Wright,* 364 U.S. 642, 647–48 (1961).

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *see also De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ("[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

Accordingly, courts may issue an injunction over conduct that is directly related to the lawsuit, including witness harassment.[2] *See Arrendondo v. Delano Farms Co.*, No. CV

---

[2] *See also Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) ("[A] district court has the inherent power to issue an injunction against litigants who harass their opponents.") (citing *De Long*, 912 F.2d at 1147); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."); *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019

F 09-1247 LJO DLB, 2010 WL 3212000, at *2 (E.D. Cal. Aug. 10, 2010) (granting TRO where defendant was harassing plaintiff's witnesses). However, "an order imposing an injunction 'is an extreme remedy, and should be used only in exigent circumstances.'" *De Long*, 912 F.2d at 1147 (quoting *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)).

## ARGUMENT

As an initial matter, harassing Baffert's named witnesses in connection with this litigation is a probable violation of this Court's previous injunction against harassing or threatening Baffert. *See Arrendondo*, No. CV F 09-1247 LJO DLB, 2010 WL 3212000, at *2 (finding that harassing a plaintiff's witnesses irreparably injures the plaintiff because it obstructs the plaintiff's prosecution of his case). At this time, Baffert is not moving for contempt. Instead, he seeks a TRO and modest modification to the prior injunction that makes clear to Mr. Wunderler that harassing witnesses is illegal and will not be tolerated. Plaintiff takes no position at this time regarding whether additional measures to enforce the Court's orders are warranted.

**I.   Baffert is Likely to Succeed on the Merits of Showing Harassment, and Wunderler's Conduct Likely Violates 18 U.S.C. § 1512**

Here, the first prong refers to the likelihood of success on the merits of showing harassment, rather than the merits of the underlying lawsuit. *Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *5 (C.D. Cal. June 17, 2022).

**A. Harassing Witnesses is Criminal Misconduct That Warrants a TRO**

It is a federal criminal offense to harass witnesses in federal proceedings: "Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from . . . attending or testifying in an official proceeding; . . . or attempts to do

---

WL 6917918, at *6 (C.D. Cal. Oct. 17, 2019) (finding the defendant's conduct was directly related to the suit because it was "intended to intimidate those who are handling this litigation against him."); *Myart v. Taylor*, No. SA 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016) (concluding that the court has jurisdiction to prohibit a party's threatening and harassing conduct towards the other parties because the conduct was "directly related to the instant suit."); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (upholding a portion of the district court's injunction prohibiting Defendant "from threatening or harassing [plaintiff], its employees, its staff, [plaintiff's] counsel, counsel's employees, or counsel's staff.").

so, shall be fined under this title or imprisoned not more than 3 years, or both." 18 U.S.C. § 1512(d). In applying this statute, "[i]t is not necessary to show that the defendant actually obstructed justice or prevented a witness from testifying." *United States v. Murray,* 751 F.2d 1528, 1534 (9th Cir.1985). "The statutory focus is on the defendant's endeavor." *United States v. Willard*, 230 F.3d 1093, 1095 (9th Cir. 2000).

Federal courts in California have relied upon Cal. Civ. Pro. § 527.6(a)(1) as an aid in defining harassment in cases under diversity jurisdiction. *Beyond Blond Prods., LLC* 2022 WL 2784404, at *5. Harassment includes a "knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Cal. Civ. Pro. § 527.6(b)(3). A "course of conduct" is further defined to mean "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means." Cal. Civ. Pro. § 527.6(b)(1).

### B. Wunderler's Posts Are Clearly Harassment Connected to this Litigation

Over the course of less than twenty-four hours, Wunderler authored more than a dozen posts directly accusing Mr. Zedan of international criminal activity, including terrorism and money laundering. Wunderler made highly specific accusations that the sales or purchases of identified horses was for the purpose of laundering money and funding "terrorist cells." Wunderler distributed racially charged claims that Zedan and/or his family have connections to active terrorist cells and terrorist who planned and executed the September 11 Terrorist Attacks. Wunderler purports to bolster the legitimacy of his false claims, as he always does with reference to claimed (and conveniently unnamed) "sources," this time alleged to be in the national security sector. In reality, Wunderler's posts are grounding in nothing more than Zedan's race and ethnicity and his hatred of Bob Baffert.

      At the very least, these comments were calculated to menace, seriously alarm, annoy, and harass Mr. Zedan (and, likely, Baffert), and these statements serve no legitimate purpose. Cal. Civ. Pro. § 527.6(b)(3). Any reasonable person — especially a person in Zedan's shoes — would be seriously alarmed by widely disseminated publications accusing them of criminal conduct and purporting to link them to terrorist activity, especially when those publications are racially charged. *See, e.g.*, *Darling v. Contreras*, No. B311889, 2022 WL 2841441, at *7 (Cal. Ct. App. July 21, 2022) (restraining harassment comprised of "threats, racist insults, and false claims") (unpublished). Defendants have been convicted of witness tampering through "harassment" for far less. *United States v. Willard*, 230 F.3d 1093, 1095 (9th Cir. 2000) (upholding conviction under 18 U.S.C. § 1512 where defendant threatened witness's daughter "with criminal prosecution and dire spiritual consequences if she testified"); *United States v. Wilson*, 796 F.2d 55, 58 (4th Cir. 1986) (upholding conviction under 18 U.S.C. § 1512 because "[t]he statements, 'your asses belong to Joe' and 'you are a bunch of jokes and should be in jail too' could reasonably be interpreted as harassing remarks.").

      Though directed to the public, Wunderler authored these posts knowing and "intend[ing] that [Zedan] would read and be annoyed by them." *Brekke v. Wills*, 125 Cal. App. 4th 1400, 1411 (2005). The posts were clearly calculated to tap into racist attitudes and nationalist outrage stemming from the September 11 Terrorist Attacks. The posts did, in fact, cause Mr. Zedan serious alarm and "caused [him] imminent and genuine concern for the safety of my family and myself." [Zedan Dec., ¶ 12.] He also characterized the remarks as "chilling regarding my willingness to be present as a witness" in this case. [*Id.*]

      Wunderler's harassment was plainly tied to Zedan's status as a witness in this matter. The posts began within minutes of Baffert's filing identifying Zedan as a witness. The harassing posts were dispersed among a long series of tweets discussing Baffert's disclosed witnesses. Several of the posts also make reference to Wunderler confronting Zedan "on the stand" about his fabricated claims of terrorist and criminal activity. Wunderler's

statements were clearly intended to badger and annoy Zedan *because* he is a witness against him, with the aim of dissuading his participation in this case.

As such, Baffert is substantially likely to prevail on his claim that Wunderler has engaged in harassment against a witness in this federal proceeding.

### C. Wunderler's Conduct is Deliberate, Willful, and Likely to Continue

Wunderler's intent is apparent from the course of harassing conduct that has been repeated virtually any time a development occurred in this matter:

- Wunderler repeated a defamatory claim about Cave Rock twice on July 10, 2024, the day after co-Defendant DiCorcia filed his motion to strike. [Doc. No.51-1, ¶¶ 53-54; Doc. Nos. 51-48, 51-49.]

- On July 30, Plaintiff filed his response to DiCorcia's motion to strike and, over the next few days (until August 2) made numerous attempts to enforce pending discovery. Between August 2 and 4, Wunderler authored several posts with threats of physical violence, with a contemporaneous link to same-day photographs of Plaintiff and his counsel at a race meeting. [Doc. No.51-1, ¶¶ 21(c)-(h), 22-25, 55-56; Doc Nos. 51-14 to 51-17.]

- On August 6, DiCorcia filed his reply brief for his motion to strike or dismiss, and Wunderler repeated his comment about *Cave Rock* the following day. [Doc. No.51-1, ¶¶ 57-58, Doc. No.51-50]

- On the day of the hearing, Wunderler authored several posts commenting on the lawsuit and boasted, again, that he allegedly possessed "bombshell" information he would "drop" the following day. [Doc. No.51-1, ¶ 61, Doc. Nos. 51-52 to 51-53.]

- This Court ruled on DiCorcia's motion to dismiss on August 28. [Doc. No.47.] That same day, Wunderler posted several comments about the lawsuit and this Court's Order, and claimed (again) that he would "drop" "bombshell" information the following day. [Doc. No.51-1, ¶¶ 62-63, Doc. Nos. 51-53 to 51-56.]

- On September 23, Plaintiff moved for default judgment. [Doc. No. 51.] That day and the following day, Wunderler threatened to release damaging information on the date the motion was noticed (October 28). [Doc. No. 63, ¶ 7; Doc. No.63-3 to 63-6.] In addition, Wunderler posted additional pictures of Baffert's family and home, including disparaging comments about the Bafferts. [Doc. No.68-1 at 65–66.] Mr. Wunderler also posted comments advertising his intent not to cooperate, including a statement that he would "wipe [his] ass" with any Court orders. [Doc. No.68-1 at 67.]

- On October 16, Plaintiffs filed their response to DiCorcia's motion for fees. [Doc. No. 58.] In response, Wunderler posted comments harassing Baffert and his counsel. [Doc. No.68-1 at 69.]

- On November 15, this Court denied DiCorcia's motion for attorney fees. [Doc. No.64.] A few hours later (9:10 pm Central Time), Wunderler posted a threat to release a video deposition, coupled with a "check mate" GIF. [Doc. No.68-1 at 70.]

- On November 18, a day before Baffert's deposition, Wunderler authored a series of four posts in rapid succession advertising the location of Baffert's son Bode posting a GIF of a sharpshooter, followed immediately by a photo of Bode as a child with Baffert and his wife, Jill, with the caption, "They grow up fast Jill." [Doc. No.68-1 at 9–13.]

- Between November 19 and 21, Wunderler published voluminous posts disclosing or purporting to disclose confidential information (including health information) from Mr. Baffert's deposition in violation of this Court's protective order. [Doc. No.68-1 at 14–56.]

As set forth above, Wunderler's pattern of harassment has been lock-step with any movement in this case, especially actions taken by or that favor Mr. Baffert. This above-established course of conduct has already prompted this Court to issue one temporary restraining order to halt Wunderler's harassment. Wunderler was present when the Court

found, on the record, that it believed that Wunderler's harassment was likely to continue. The Court was correct. *See Beyond Blond Prods., LLC v. Heldman*, No. CV205581DSFGJSX, 2022 WL 2784404, at *6 (C.D. Cal. June 17, 2022) ("Beyond Blond has established that it is likely to suffer irreparable harm. Heldman's threatening and harassing emails have increased in frequency over the pendency of this lawsuit.").

Considering that Wunderler's actions have, without fail, coincided with the events of this litigation, there is a probability that his menacing behavior will continue in the immediate future as this litigation moves toward resolution. His actions have now expanded in scope to include witnesses, not just parties and their counsel. Wunderler's harassment of witnesses must be restrained.

### II. Wunderler's Harassment Causes Irreparable Harm to Both Baffert and Mr. Zedan

Witness harassment causes irreparable harm to both the witness and the party. *Arrendondo v. Delano Farms Co.*, No. CV F 09-1247 LJO DLB, 2010 WL 3212000, at *2 (E.D. Cal. Aug. 10, 2010) (granting TRO). Specifically, attempts to intimidate or harass witnesses have been found to cause the following irreparable harms: (1) the plaintiff's prosecution of their case is likely to be chilled; (2) the plaintiff's investigation of their claims are likely to be chilled; and (3) the plaintiff and potential witnesses are likely to suffer damage. *Id.* The purpose of Wunderler's comments was not to promote legitimate discussion; it was to drive a wedge between Baffert and his witnesses. Baffert is entitled to a fair hearing, and Zedan is entitled to provide testimony to a jury without fear of harassment. Wunderler's conduct imminently threatens both interests, and there is no meaningful remedy for such injuries beyond injunctive relief.

### III. The Equities Favor a TRO and Injunction

As stated above, Wunderler's statements serve no purpose, nor are they protected. "In California, speech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1250 (2005); *see also United States v. Osinger*, 753 F.3d 939, 944 (9th Cir.

2014) ("We agree with the Eighth Circuit's rationale that, because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment.").

The Court has already issued an injunction that is narrowly tailored to prohibit Wunderler from engaging in harassing or threatening conduct toward Baffert, his family, or his counsel during the pendency of this litigation. The requested modification is modest and directs Wunderler to refrain from that same conduct with regard to witnesses. The proposed modification works no hardship upon Wunderler not already expected of litigants appearing before this Court, and it permits Wunderler to continue to voice his opinions "so long as he does so in a manner that does not constitute personal harassment." *Beyond Blond Prods., LLC*, 2022 WL 2784404, at *6 (finding that balance of hardships favored injunction for the same reasons).

### IV. The Public Interest Favors a TRO and Injunction

"Finally, an injunction would be in the public interest because it would help ensure the fair administration of justice. It would ensure that [Baffert] and [his] counsel can fully participate in this lawsuit without the fear of receiving harassing communications from [Wunderler]." *Beyond Blond Prods., LLC* 2022 WL 2784404, at *6. Again, this Court's local rules embody the commitment "to ensuring that all who work within [the Court] and come before it treat each other with decency, dignity, and respect." CivLR 2.1(a)(1). As the rule further states, "Fair, impartial and accessible courts are fundamental to the preservation of our democracy. We — judges, lawyers, court staff, parties — all have a responsibility in ensuring that we preserve the legacy of this institution." CivLR 2.1(a)(1). Wunderler has repeatedly shown disrespect for this proceeding and this Court. On repeated occasions, he has taunted counsel and considers himself immune from consequence. [Doc. No.68-1 at 65–77.] In one particularly telling instance, he stated that he would "wipe [his] ass" with orders issued by this Court. [Doc. No.68-1 at 67.]

Plaintiff respectfully requests that the Court enjoin Wunderler's ongoing harassment and repeated litigation misconduct, including the deletion of posts constituting misconduct.

**CONCLUSION AND REQUEST FOR RELIEF**

Plaintiff has ongoing and imminent harassment of Plaintiff and Plaintiff's witnesses. Plaintiff respectfully requests a TRO and modification of its prior injunction to include the following relief:

A. An order prohibiting Mr. Wunderler from posting threatening or harassing content about Baffert, Baffert's family, Baffert's counsel, <u>or Baffert's witnesses</u> on the social media platform "X" or any other publication, website, online forum, social media, or review applications (and which expressly includes posts broadcasting the location of Baffert, his family, or his counsel);

B. An order prohibiting Wunderler from directing any other person to do any of the foregoing acts on Wunderler's behalf; and

C. An order requiring the deletion of racially charged posts harassing Mr. Zedan with false accusations of criminal and terrorist activities.

DATE:  April 18, 2025

*/s/ Joseph C. DeAngelis*
**BREWSTER & DEANGELIS, PLLC**
Clark O. Brewster*
Joseph C. De Angelis*
2617 East 21st Street
Tulsa, Oklahoma
(918) 742-2021 Office;
(918) 742-2197 Fax
cbrewster@brewsterlaw.com
jcdeangelis@brewsterlaw.com
*Admitted Pro Hac Vice
and
**LAW OFFICES OF SHEPPARD S. KOPP**
Shepard S. Kopp, Esq.
California SBN: 174612
233 Wilshire Blvd. Suite 900
Santa Monica, California 90401 Telephone (310) 914 -4444
Facsimile (310) 914 -4445 shep@shepardkopplaw.com
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years old and not a party to this action. I am employed in the County of Tulsa, State of Oklahoma. My business address is 2617 E. 21st St., Tulsa, OK 74114.

On April 18, 2025, I served true copies of the following document(s) described as:

**Second Motion for Temporary Restraining Order and Motion to Modify Injunction [Doc. No.71] Against Defendant Justin Wunderler** on the interested parties:

| | |
|---|---|
| Jeff Lewis, Esq.<br>Jeff Lewis Law, APC<br>827 Deep Valley Drive, Suite 209<br>Rolling Hills Estates, CA 90274<br>Tel: 310-935-4001<br>Fax: 310-872-5389<br>Email: jeff@jefflewislaw.com<br>**Attorney for Defendant Daniel DiCorcia** | Justin Wunderler<br>5 North Olympia Drive<br>Waretown, NJ 08759<br>Email: meatball92448@yahoo.com<br><br>**Defendant Justin Wunderler, Pro Se** |

**_X_ BY Email OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from email address wrist@brewsterlaw.com to the persons at the email addresses listed above and in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission did not succeed.

**___ BY ELECTRONIC SERVICE:** I served the document(s) on the person listed in the Service List by submitting an electronic version of the document(s) to the CM/ECF filing system for the Southern District of California.

I declare under penalty of perjury under the laws of the State of Oklahoma that the above is true and correct.

Executed on April 18, 2025, at Tulsa, Oklahoma.

*/S/ Heather Prescott*
Heather Prescott