UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BAFFERT, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>JUSTIN A. WUNDERLER and DANIEL DICORCIA,<br><br>                              Defendants. | Case No.:  3:23-cv-1774-RSH-BLM<br><br>**ORDER GRANTING DEFAULT JUDGMENT**<br><br>[ECF Nos. 51, 109] |

Before the Court is a motion for default judgment filed by plaintiff Bob Baffert against defendant Justin A. Wunderler. ECF No. 51. For the reasons below, the Court grants Plaintiff's default judgment motion.[1]

## I.    BACKGROUND

### A.    Factual Background

The instant lawsuit arises from statements defendants Wunderler and Daniel DiCorcia made on social media, primarily on the platforms X (formerly Twitter) and

---

[1]    The Court also addresses Plaintiff's pending contempt motion in this Order. ECF No. 109.

Spaces. Plaintiff makes the following allegations in his First Amended Complaint, ECF No. 36 ("FAC"), which the Court assumes to be true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

Plaintiff Baffert is an "internationally recognized thoroughbred trainer." FAC ¶ 6. Defendant Wunderler is a racing bettor with a substantial social media presence under the pseudonym "SwiftHitter." *Id.* ¶ 9. At issue are two sets of statements published by Wunderler on X. Firstly, on June 12, 2023, Wunderler published a post describing Baffert's alleged treatment of a horse named Arrogate that read: "Arrogate died cause of drugs/epo Baffert used prior to him turning to stud. Turned his brain into grilled cheese." *Id.* ¶ 49.



*Id.* Secondly, on September 4 and 5, 2023, Wunderler published two posts regarding Baffert's decision to withdraw a horse named Muth from a race that had been held the previous weekend. *Id.* ¶¶ 76–77. The first post, published on September 4, 2023, read: "LOL that Baffert. Bad shipment of epo has hit that barn." *Id.* ¶ 76.



*Id.* The second post, published on September 5, 2023, consisted of an article of unknown origin followed by Wunderler's claim that "Muth was scratched cause reaction to EPO. 100 %%%." *Id.* ¶ 77.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Swift**
@SwiftHitter                                                    ...

Muth was scratched cause  reaction to EPO .  100 %%%

*What are the risks?*

Administering EPO of any sort to a horse also comes
with risk. Although human EPO molecules are 80
percent identical to horse EPO, that last 20 percent can
set off alarm bells in the equine body. Some horses
recognize the substance as a foreign invader and begin
producing antibodies to attack it. In some cases, the
immune response can be so severe that the horse's body
also begins producing antibodies to its own EPO,
resulting in anemia. Anemia isn't particularly common in
fit, healthy horses but if it's left untreated, it can be a
long, slow death.

And what about the rumored use of poisons and other
blood thinners to counteract overenthusiastic EPO
administration? EPO use in humans is believed to
sometimes result in blood which has become too thick
from hematocrit, resulting in circulation problems.
Hematocrit is the ratio of red blood cells to total blood
volume.

Railbirds have long theorized positive tests for blood-
thinning agents may be explained by some attempt on
the part of trainers or veterinarians to balance out the
effects of blood doping. There's one problem with that,
Sams said: Horses have contractile spleens, which store
large amounts of red blood cells and release them at
times of stimulation, such as the start of a race or as part
of a startle response. When this happens, the hematocrit
rises significantly. The equine body has obviously figured
out how to cope without encountering circulation issues,
though we don't know how exactly. (This is one more
reason detection is difficult... testing can't conclude for

1:23 PM · Sep 5, 2023 · **6,791** Views

*Id.*

3

23-cv-1774-RSH-BLM

**B.    Procedural Background**

   *1.    Initial Complaint, First Request for Default*

On September 27, 2023, plaintiffs Bob Baffert and Bob Baffert Racing Stables, Inc. initiated the instant action against defendants Wunderler and DiCorcia. ECF No. 1. Plaintiffs' initial complaint asserted causes of action for: (1) civil extortion; and (2) defamation. *Id.* ¶¶ 33–65.

On December 4, 2023, Plaintiffs moved for entry of default against Wunderler. ECF No. 12. On December 15, 2023, Wunderler appeared through counsel and filed an Answer to the Complaint. ECF Nos. 17; 18. The Court thereafter denied Plaintiffs' request for entry of default. ECF No. 19.

On March 12, 2024, the Court granted a motion to withdraw filed by counsel representing Wunderler. ECF Nos. 30; 31. Wunderler subsequently proceeded in this case pro se.

On December 14, 2023, defendant DiCorcia filed a motion to dismiss and motion to strike the Complaint under California's anti-SLAPP statute. ECF No. 16. On June 6, 2024, the Court granted DiCorcia's motion dismissing Plaintiffs' claims for civil extortion and defamation. ECF No. 35.

   *2.    Amended Complaint*

On June 25, 2024, Plaintiffs filed their Amended Complaint, the operative pleading, against Wunderler and DiCorcia. The FAC reasserts Plaintiffs' civil extortion claim for purposes of appeal and pleads two defamation claims. FAC ¶¶ 115–282.

On July 9, 2024, DiCorcia filed a motion to dismiss and motion to strike the FAC under California's anti-SLAPP statute. ECF No. 37. On August 27, 2024, the Court granted in part and denied in part this motion, dismissed all claims brought by plaintiff Bob Baffert Racing, Inc., and dismissed Baffert's defamation claims, except with respect to Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth. ECF No. 47 at 19.

///

3.     *Second Request for Default*

On August 27, 2024, plaintiff Baffert filed a second request for entry of default against Wunderler. ECF No. 46. Default was entered against Wunderler on August 28, 2024. ECF No. 48. On September 23, 2024, Plaintiff filed the instant motion for default judgment. ECF No. 51.

4.     *TROs and Preliminary Injunction*

On November 26, 2024, the Court granted Plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunction enjoining Wunderler from "posting threatening or harassing content about Mr. Baffert, Mr. Baffert's family, or Mr. Baffert's counsel in this litigation on the social medial platform 'X' or any other publication, website, online forum, social media, or review applications" for the duration of this action. ECF No. 71 at 2.[2]

On April 24, 2025, the Court granted Plaintiff's motion for a second TRO against Wunderler. ECF No. 98. On May 16, 2025, the Court entered a preliminary injunction enjoining Wunderler from "posting threatening or harassing content about Mr. Baffert, Mr. Baffert's family, Mr. Baffert's counsel, or witnesses in this litigation on the social medial platform 'X' or any other publication, website, online forum, social media, or review applications; or causing or directing another person to do the same." ECF No. 107 at 2.

5.     *Summary Judgment and Settlement*

On January 13, 2025, Plaintiff filed a motion for summary judgment against DiCorcia. ECF No. 81. On February 10, 2025, the Court granted in part and denied in part Plaintiff's motion. ECF No. 86. Specifically, the Court granted summary judgment in Plaintiff's favor that Wunderler's June 12, 2023 Arrogate and September 4 and 5, 2023 Muth posts were published, were of and concerning Baffert, and were false and

---

[2]     At the November 26, 2024 hearing on Plaintiff's TRO motion, Wunderler agreed to the entry of this injunction for the pendency of the action. ECF No. 71 at 2.

23-cv-1774-RSH-BLM

defamatory. *Id.* at 10. The Court denied summary judgment on Plaintiff's arguments that: (1) the two sets of statements constituted defamation per se; (2) the undisputed evidence established DiCorcia was liable under a theory of civil conspiracy; and (3) the undisputed evidence established DiCorcia acted with actual malice. *Id.* at 8–10.

On May 12, 2025, Plaintiff filed his acceptance of an offer of judgment extended by DiCorcia under Federal Rule of Civil Procedure 68. ECF No. 102. On May 13, 2025, the Court entered judgment in Plaintiff's favor against DiCorcia and enjoined DiCorcia pursuant to the terms of the offer of judgment. *See* ECF No. 104. Consequently, the only remaining claim in this case is Plaintiff's defamation claim against Wunderler.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application. The entry of default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "First, a party must obtain a clerk's entry of default under Rule 55(a)[.]" *Verbick v. Movement Tech. Co., Inc.*, No. 20-CV-611 TWR (DEB), 2023 WL 4054717, at *1 (S.D. Cal. Mar. 7, 2023) (internal quotation marks omitted omitted). "The first step, entry of default, is a ministerial matter performed by the clerk and is a prerequisite to a later default judgment." *Faunce v. Martinez*, No. 21-CV-363-MMA (WVG), 2022 WL 17345499, at *2 (S.D. Cal. Nov. 30, 2022) (internal quotation marks omitted). Second, upon entry of default, a party must file a motion for default judgment. *Verbick*, 2023 WL 4054717, at *1. Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion. *Eitel*, 782 F.2d at 1471–72.

## III.   ANALYSIS

### A.   Prerequisites to Entering Default Judgment

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "Before the Court considers whether to enter default judgment, it must be satisfied that

the procedural prerequisites, including subject matter jurisdiction, personal jurisdiction, and adequate service of process, have been met." *Tecnologias Avanzadas RD, SRL v. Riegler*, No. 16-CV-06701-EDL, 2017 WL 2772301, at *2 (N.D. Cal. June 1, 2017), *report and recommendation adopted sub nom. Tecnologias Avanzadas RD, SRL v. Delsey Alvarez Vasquez Riegler*, No. 16-CV-06701-MMC, 2017 WL 2730096 (N.D. Cal. June 26, 2017). The Court addresses these prerequisites below.

### 1.    Subject Matter Jurisdiction

Federal subject matter jurisdiction in civil cases exists where: (1) the requirements for diversity jurisdiction are met, or (2) the complaint involves a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required."); *see* 28 U.S.C. §§ 1331–32. "Subject-matter jurisdiction depends on the state of things at the time of the action brought[.]" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (internal quotation marks omitted).

"For diversity jurisdiction to attach, the suit must be between citizens of different states, and the amount in controversy must exceed $75,000." *Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 560 (9th Cir. 2025) (internal quotation marks omitted). A natural person's citizenship is determined by domicile, defined as the person's "permanent home, where [he] resides with the intention to remain or to which [he] intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Here, the Court possesses diversity jurisdiction over this case. First, the Parties satisfy the complete diversity requirement. According to the FAC, plaintiff Baffert is a resident of California. FAC ¶ 6. Defendants Wunderler and DiCorcia reside in New Jersey. *Id.* ¶¶ 9, 11. In general, "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as

for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile."). Nevertheless, a natural person's residence may be considered prima facie evidence of domicile and citizenship. *See Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicil[e] until facts adduced establish the contrary, and a domicil[e] when acquired is presumed to continue until it is shown to have been changed."); *Lee v. BMW of N. Am., LLC*, No. SACV1901722JVSADSX, 2019 WL 6838911, at *2 (C.D. Cal. Dec. 16, 2019) ("[A] person's residence is prima facie evidence of domicile and citizenship."); *Cisneros Pantoja v. RAMCO Enters., L.P.*, No. 19-CV-03336-LHK, 2019 WL 5959630, at *10 (N.D. Cal. Nov. 13, 2019) (same); *see also Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 571 (5th Cir. 2011) ("Evidence of a person's place of residence, however, is prima facie proof of his domicile."); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile.").[3]

Second, the amount in controversy in this case exceeds $75,000, as stated in the Complaint and evidenced by the amount requested in the instant motion for default judgment. *See* FAC at 47; ECF No. 108 at 5; *see also Khraibut v. Chahal*, No. 15-CV-04463-CRB, 2021 WL 1164940, at *4 (N.D. Cal. Mar. 26, 2021) (holding amount in controversy requirement met based on prayer for relief in complaint and amount sought in motion for default judgment); *Vachani v. Yakovlev*, No. 15-CV-04296-LB, 2016 WL 7406434, at *4 (N.D. Cal. Dec. 22, 2016) (holding amount of controversy requirement met based on prayer for relief in complaint). For these reasons, the Court concludes it

---

[3]     Notably, neither Wunderler nor DiCorcia contradicted Plaintiff's jurisdictional allegations. ECF Nos. 10; 18; 49; *see Smiley v. PNC Bank, N.A.*, No. 24-CV-2189-MMA-BLM, 2025 WL 304462, at *3 (S.D. Cal. Jan. 27, 2025) ("Importantly, Plaintiff does not provide conflicting evidence of his domicile, nor does he allege of what other state he is a citizen, if not California."). Further, Wunderler indicated at a hearing held on November 26, 2024 that his prior mailing address, and presumably his address when Plaintiff initiated this action, was in New Jersey. ECF No. 76 at 4:22–25.

possesses subject matter jurisdiction over this case.

### 2. *Personal Jurisdiction/Service of Process*

The Court next considers whether it has personal jurisdiction over Wunderler and whether service of process upon Wunderler was proper. *See Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973) ("The district court's lack of *in personam* jurisdiction over the appellants renders void its default judgment against them."); *Folkmanis, Inc. v. Uptown Toys LLC*, No. 18-CV-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sept. 13, 2018) ("In deciding whether to grant or deny default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit.") (internal quotation marks omitted).

"A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). Here, Wunderler waived any objections to personal jurisdiction or inadequate service of process by filing an answer through counsel and appearing at multiple hearings in this case pro se without contesting either. *See* ECF Nos. 18; 70; 98; *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 757 (9th Cir. 1999) ("Defects in personal jurisdiction, venue, or service of process are waived unless asserted in a party's initial pleading."); *TDBBS LLC v. Ethical Prods. Inc.*, No. CV-19-01312-PHX-SMB, 2019 WL 1242658, at *2 (D. Ariz. Mar. 18, 2019) (holding that appearing at a TRO hearing and arguing the merits of a case without at least noting any possible jurisdiction defense "weighs in favor of waiver") (collecting cases).

### B. Entry of Default Judgment

Having determined the prerequisites for entering default judgment have been met, the Court turns to the merits of Plaintiff's motion.

///

///

///

The decision to grant or deny default judgment lies within the discretion of the district court. *Eitel*, 782 F.2d at 1471. The Ninth Circuit has enumerated seven factors—known as the *Eitel* factors—that a court may consider when exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. The Court addresses each of the *Eitel* factors below.

### 1.    Factor I: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. Here, despite answering Plaintiff's initial Complaint, Wunderler has subsequently failed to defend this action. *See* Docket; Declaration of Joseph C. DeAngelis ("DeAngelis Decl.," ECF No. 51-1) ¶¶ 16–28. Plaintiff would likely be without recourse against Wunderler absent default judgment. The first *Eitel* factor, therefore, weighs in favor of granting default judgment. *See, e.g.*, *Ameris Bank v. Heavenly Scent Com. Cleaning, Inc.*, No. 8:24-CV-00577-DOC-ADS, 2024 WL 3458021, at *3 (C.D. Cal. June 5, 2024) ("Despite answering the Plaintiff's Complaint, Defendants subsequently failed to appear in court and defend. Therefore, the Court is not precluded from entering judgment."); *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823 JLS (JLB), 2021 WL 3493094, at *11 (S.D. Cal. Aug. 6, 2021) (granting default judgment where defaulted defendants failed to participate leaving plaintiff likely without other recourse); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (granting default judgment as defendant's "unwillingness to cooperate and defend" left plaintiff without other recourse).

///

///

///

### 2. Factors II and III: Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors focus on the sufficiency of a plaintiff's complaint. "To warrant entering a default judgment, a complaint's allegations must be sufficient to state a claim upon which relief can be granted." *Talavera*, 2021 WL 3493094, at \*11 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). A complaint satisfies this standard when the claims cross the "line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citation omitted). "A party seeking default judgment bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Verbick*, 2023 WL 4054717, at \*2 (citation omitted).

#### a. Defamation

The only remaining claim in this matter is Plaintiff's defamation claim as it pertains to Wunderler's June 12, 2023 post concerning Arrogate, as well as his posts on September 4 and 5, 2023 concerning Muth.

Under California law, the elements of a defamation claim are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted). Under California Civil Code section 44, the term "defamation" encompasses either libel as set forth in Civil Code sections 45 and 45(a), or slander as set forth in Civil Code section 46. *See* Cal. Civ. Code § 44. "In general . . . a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259–60 (Ct. App. 2017) (quoting *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003)). "The defamatory statement must specifically refer to, or be of or concerning, the plaintiff." *Jackson*, 10 Cal. App. 5th at 1260 (internal quotation marks omitted).

///

"There are generally two types of libel recognized in California—libel per se and libel per quod." *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1226 (Ct. App. 2017). A statement is considered libel per se when it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a; *accord Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (Ct. App. 2007). "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." Cal. Civ. Code § 45a.

A plaintiff who is a public figure must also plead and prove "actual malice," that is, that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 250 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964)). Whether an individual is a public figure is a question of law that must be assessed through a totality of the circumstances. *Id.* at 252, 255.

Here, the Court previously denied DiCorcia's motion to dismiss or strike Plaintiff's defamation claim with respect to Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth, finding them actionable. *See* ECF No. 47. Specifically, the Court held Plaintiff had adequately pleaded that the posts contained a provable falsehood. *Id.* at 14–15. The Court also concluded Plaintiff adequately pleaded that Wunderler acted with actual malice in posting these statements and that the defamatory nature of the statements was clear from the meaning of the words used in context without extrinsic facts. *Id.* at 15–16.[4] The Court reincorporates the analysis in its

---

[4]    The Court acknowledges that it later denied Plaintiff's motion for summary judgment with respect to whether Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth constituted defamation per se. *See* ECF No. 86 at 8–9. Nevertheless, a default judgment motion and motion for summary judgment are fundamentally different. The standard for entering default judgment is

August 27, 2024 Order and concludes Plaintiff has plausibly set forth a defamation per se claim against Wunderler. In light of the above, the Court finds the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Factors IV: Sum of Money at Stake

Under the fourth *Eitel* factor, courts consider "whether the damages sought are proportional to the alleged harm." *Talavera*, 2021 WL 3493094, at *14. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel*, 992 F. Supp. 2d at 1012. Here, Plaintiff seeks $2,000,000 in compensatory damages and $50,000 in punitive damages. ECF No. 108 at 1. Although the amount Plaintiff seeks is substantial, the Court retains the discretion to reduce the amount of damages awarded. *See Khraibut*, 2021 WL 1164940, at *19; *Oakley, Inc. v. McWilliams*, No. CV 09-07666 DDP RNBX, 2012 WL 4936559, at *4 (C.D. Cal. Oct. 17, 2012), *aff'd*, 584 F. App'x 528 (9th Cir. 2014). The fourth *Eitel* factor is therefore neutral. *See G & G Closed Cir. Events LLC v. Halstead*, No. 20-cv-2105, 2022 WL 2274546, at *3 (D. Ariz. Mar. 4, 2022) ("Where the Court has the discretion to reduce a plaintiff's requested monetary award, the fourth *Eitel* factor becomes neutral."); *Twitch Interactive, Inc. v. Johnston*, No. 16-cv-3404, 2018 WL 1449525, at *8 (N.D. Cal. Jan. 22, 2018) (finding fourth factor neutral where court had discretion to tailor damages).

### 4. Factor V: Possibility of Factual Dispute

Turning to the fifth *Eitel* factor, the Court considers the possibility of a dispute as to any material facts in the case. Since Plaintiff's factual allegations are presumed true and Defendant has failed to oppose the default judgment motion, no factual disputes have been identified that would preclude the entry of default judgment. This factor, therefore, favors the entry of default judgment. *See Khraibut*, 2021 WL 1164940, at *15 ("Because

---

instead more "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Defendants have failed to oppose the entry of default judgment or otherwise present evidence to dispute material facts, despite having ample opportunity to do so, there is little possibility of a factual dispute.").

### 5.    *Factor VI: Reason for Default*

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. Here, Wunderler was properly served in this case and filed an Answer. ECF No. 18. The record also indicates Wunderler was properly served with the instant motion for default judgment and supplemental brief on default judgment damages at his mailing address. ECF Nos. 76 at 4:22–25; 51 at 29; 108 at 29; 112. Indeed, while Wunderler failed to meaningfully defend this lawsuit, his actions during the pendency of the litigation required the Court to issue two TROs and preliminary injunctions against him. ECF Nos. 71; 97; 107. It is clear on the record that Wunderler was well aware of this suit against him and the consequences of failing to defend.

The Court finds this factor weighs in favor of granting default judgment. *See Sec. & Exch. Comm'n v. Blockvest, LLC*, No. 18CV2287-GPB(MSB), 2020 WL 5064330, at *3 (S.D. Cal. Aug. 26, 2020) (holding defendant's default was not due to excusable neglect where defendant was properly served and filed an answer); *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, No. 316CV00480BENWVG, 2018 WL 8648381, at *3 (S.D. Cal. Apr. 4, 2018) ("[A] court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment.").

### 6.    *Factor VII: Policy Favoring Merits Decision*

The seventh and last *Eitel* factor emphasizes the general rule that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (internal quotation marks omitted). In the present case, Wunderler has failed to defend this action despite repeated opportunities to do so. Under these circumstances, the seventh *Eitel* factor "does not preclude the Court from entering default judgment against the Defaulting Defendants." *Staniforth v. Total*

*Wealth Mgmt., Inc*., No. 14-CV-1899-GPC-JLB, 2023 WL 3805250, at *8 (S.D. Cal. June 2, 2023); *Khraibut*, 2021 WL 1164940, at *16 ("[W]hen a defendant's failure to appear, respond, or participate in the action makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted.") (internal quotation marks omitted).

### 7.    *Summary of Eitel Factors*

In sum, the Court finds the *Eitel* factors either weigh in favor of granting default judgment against the defendant Wunderler or are neutral. For these reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment with respect to Plaintiff's defamation claim against Wunderler, as to the Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth.

### C.    Relief Requested

The Court turns next to Plaintiff's request for relief. Pursuant to Rule 54 of the Federal Rules of Civil Procedure, the remedies sought in a default judgment motion "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiff seeks: (1) $2,000,000 in compensatory damages; (2) $50,000 in punitive damages; and (3) permanent injunctive relief. ECF No. 108 at 1. This is consistent with the relief requested in Plaintiff's FAC. FAC ¶ 215.

### 1.    *Compensatory*

Plaintiff seeks compensatory damages in the amount of $2,000,000 in connection with his defamation per se claim. ECF No. 108 at 17.

Where libel per se is proven, the damage to a "plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages including, in an appropriate case, punitive damages." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 382 (Ct. App. 1986). There is no "definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for presumed damages[.]" *Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1472 (Ct. App. 1995). Instead, "[w]hen damages are presumed, the Court must

award an amount that is reasonable and just compensation." *Khraibut*, 2021 WL 1164940, at \*19; *Vachani*, 2016 WL 7406434, at \*8 ("Even if some harm is conclusively presumed . . . the amount of that harm is open to determination.") (internal citation omitted).

Plaintiff contends an award of $2,000,000 in compensatory damages is reasonable in this case given Wunderler's "barrage of harassment," citing: (1) the nearly 2,000 posts Wunderler made on X between November 2022 and November 2024 directed to Plaintiff; (2) Wunderler's alleged threats against Plaintiff and his family; and (3) Wunderler's demands for money to Plaintiff and his counsel. ECF No. 108 at 18–20.

Contrary to Plaintiff's contentions, however, the scope of the Court's default judgment decision against Wunderler is limited to Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth. This does not encompass any other allegedly defamatory posts Wunderler authored; nor does it encompass Plaintiff's claim for civil extortion, which was dismissed by this Court. ECF No. 35 at 6–7.

Further, Plaintiff does not provide any principled basis or legal authority supporting the magnitude of his request. Instead, Plaintiff appears to base the reasonableness of his demand on the fact that he informed Wunderler he would be seeking $2,000,000 in compensatory damages at trial and that Wunderler subsequently failed to defend this action and defaulted. ECF No. 108 at 12–13.

In awarding compensatory damages here, the Court looks to the nature of Wunderler's June 12, 2023 and September 5 and 5, 2023 posts and the likely consequences to Plaintiff's professional reputation. See CACI No. 1704. The Court also looks to default awards in comparable cases. *See Khraibut*, 2021 WL 1164940, at \*19 (awarding $50,000 in damages); *Oakley*, 2012 WL 4936559, at \*4 (awarding damages in the amount of $1,080,783 or $1 per defamatory e-mail sent); *Bump Babies, Inc. v. Baby the Bump, Inc.*, No. CV 09-6747-GHK (SSX), 2012 WL 12964321, at \*5 (C.D. Cal. Aug. 1, 2012) (awarding $25,000 in damages). Taking all of these factors in consideration, the

Court exercises its discretion and awards presumed compensatory damages to Plaintiff in an amount totaling $200,000 (or $100,000 for Wunderler's June 12, 2023 post and $100,000 total for Wunderler's September 4 and 5, 2023 posts).

### 2.    *Punitive Damages*

Plaintiff also seeks punitive damages in the amount of $50,000. ECF No. 108 at 21–23.

Punitive damages can be recovered on a defamation claim upon default judgment. *See Vachani*, 2016 WL 7406434, at *9. In considering a request for punitive damages, courts first "determine whether punitive damages are appropriate" and then "determine a reasonable amount of punitive damages." *Khraibut*, 2021 WL 1164940, at *21. "Under California law, punitive damages are appropriate where a plaintiff establishes by *clear and convincing evidence* that the defendant is guilty of (1) fraud, (2) oppression or (3) malice." *Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 998 (9th Cir. 2006) (emphasis in original). Here, because Plaintiff is a public figure, the Court already concluded Plaintiff plausibly pleaded that Wunderler acted with actual malice. ECF No. 47 at 15.

The Court turns to the appropriate amount of punitive damages in this case. "[T]here is no fixed standard to determine the appropriate amount of punitive damages, but California courts consider three factors: (1) the reprehensibility of the defendant's conduct, (2) the plaintiff's injury in reasonable relation to the punitive damages, and (3) the defendant's wealth, considering the amount sufficient to punish and deter future wrongful conduct." *Khraibut*, 2021 WL 1164940, at *21.

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Colucci v. T-Mobile USA, Inc.*, 48 Cal. App. 5th 442, 457 (Ct. App. 2020). Here, the Court concludes Wunderler's actions were sufficiently reprehensible to warrant punitive damages. As Plaintiff correctly notes, Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth were part of a broader pattern of concerning behavior

17

lasting for years. Indeed, during the pendency of the lawsuit, the Court issued two TROs and two preliminary injunctions against Wunderler and ordered him to take down posts directed to Plaintiff, his family, counsel, and witnesses in this litigation. ECF Nos. 71; 97; 107. These included posts that appeared designed to frighten or intimidate Plaintiff and his family members and a post that appeared to associate a witness in this litigation with terrorist networks. *See* ECF Nos. 68; 93. The Court acknowledges the evidence on the record indicates Wunderler possesses limited means and assets. *See* ECF Nos. 108-2; 108-4. Nevertheless, given the serious nature of Wunderler's actions in this case, the Court concludes punitive damages in the amount of $100,000. While the Court acknowledges this amount is higher than what Plaintiff requested, the Court finds the award appropriate given the nature of Wunderler's conduct and is proportionate to the amount of compensatory damages awarded.

### 3. Permanent Injunctive Relief

Plaintiff requests that the Court enter a permanent injunction enjoining Wunderler from: (1) "publishing or republishing any false statement that accuses [Plaintiff], personally or through his agents, of using prohibited substances or methods—including erythropoietin, blood doping, juicing, 'performance enhancing drugs,' or 'doping,' including by reference to Baffert-trained horses—to illegally enhance the performance of racehorses he trains or of causing the deaths of horses he trains because of such use"; or (2) "posting or republishing threatening or harassing content about [Plaintiff, Plaintiff's family, Plaintiff's counsel], or named witnesses in this litigation on the social media platform 'X' on any other publication, website, online forum, social medial, or review applications." ECF No. 108 at 27. The Court addresses each request, in turn, below.

#### a. Defamation

Plaintiff first requests that the Court enjoin Wunderler from "further defamation concerning blood doping, EPO use, and juicing." *Id.* at 24. "Ordinarily, injunctions against speech are a presumptively unconstitutional prior restraint." *New Show Studios LLC. v. Needle*, No. 214CV01250CASMRWX, 2016 WL 7017214, at *8 (C.D. Cal. Dec.

1, 2016), *aff'd sub nom. New Show Studios, LLC v. Howe*, 696 F. App'x 271 (9th Cir. 2017); *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.") (internal quotation marks omitted); *see also Allen v. The Ghoulish Gallery*, No. CIV 06CV371NLS, 2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007) ("Defamatory statements cannot be restrained; the remedy for defamation is a damages action after publication.").

While acknowledging enjoining speech carries potential First Amendment concerns, Plaintiff argues the Court may nevertheless issue an injunction that prohibits Wunderler from repeating statements the Court has already held to be libelous. ECF No. 108 at 25–26. Notably, however, Plaintiff's requested injunction is broader than simply precluding Wunderler from repeating the same statements he made in his June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth. Instead, Plaintiff requests that the Court enjoin Wunderler from "publishing or republishing any false statement that accuses [Plaintiff], personally or through his agents, of using prohibited substances or methods . . . to illegally enhance the performance of racehorses he trains or of causing the deaths of horses he trains because of such use." ECF No. 108 at 27.

The Court declines Plaintiff's request for multiple reasons. First, as Plaintiff acknowledges, "injunctive relief in defamation cases is disfavored because a permanent injunction constitutes a prior restraint on expression." *Weitsman v. Levesque*, No. 19-CV-461 JLS (AHG), 2020 WL 759356, at *11 (S.D. Cal. Feb. 14, 2020) (internal quotation marks omitted); *New Show Studios LLC. v. Needle*, No. 214CV01250CASMRWX, 2016 WL 7017214, at *9 (C.D. Cal. Dec. 1, 2016), *aff'd sub nom. New Show Studios, LLC v. Howe*, 696 F. App'x 271 (9th Cir. 2017) (holding risk of injury should defendant repeat defamatory statements in future was insufficient to warrant permanent injunctive relief); *see also Alexander v. United States,* 509 U.S. 544, 550 (1993) ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech

activities—are classic examples of prior restraints."); *Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) ("[A]bsent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases.").

Second, the broadness of Plaintiff's proposed injunction would put the Court in the problematic role of determining whether a statement concerns "prohibited substances or methods" used to "illegally enhance the performance" of a racehorse. ECF No. 108 at 27; *see Oakley*, 879 F. Supp. 2d at 1091 ("An injunction that reaches more broadly than the exact words already held to be libelous is overbroad for the very reason that it restrains communication before [any] determination of whether it is or is not protected by the First Amendment.") (internal quotation marks omitted).

Finally, even if the Court limited Plaintiff's proposed injunction "to the exact communication already found to be defamatory," such an injunction would have little utility as Wunderler could "avoid its restrictions by making the same point using different words." *Id.* (internal quotation marks omitted).

For the above reasons, the Court finds Plaintiff has not set forth a sufficient basis to overcome the general principle against issuing an injunction that would constitute a prior restraint on expression. Plaintiff's request for an injunction enjoining Wunderler from further defamation is **DENIED.**

### b.    Harassment

Plaintiff also requests that the Court convert its preliminary injunction enjoining Wunderler from "posting or republishing threatening or harassing content about Robert A. Baffert, Mr. Baffert's family, Mr. Baffert's counsel, or named witnesses in this litigation on the social media platform 'X' or any other publication, website, online forum, social media, or review applications." ECF No. 108 at 27.

The Court recognizes that it may be necessary to enjoin a litigant from harassing another party or its witnesses during the pendency of a litigation—as the Court did here. *See Thomson v. Persistence Techs. BVI Pte Ltd,* No. 2:23-CV-04669-MEMF-MAR, 2024

WL 5220885, at *3 (C.D. Cal. Dec. 26, 2024) ("[C]ourts in this district and elsewhere have recognized that it may be permissible and necessary to enjoin a litigant from harassing another party.") (collecting cases).

Nevertheless, there exists a distinction between an injunction used to govern the conduct of litigants during the pendency of litigation and a permanent injunction that governs the Parties' conduct after the case has been closed. Here, the Court's TROs and permanent injunctions were meant to manage the orderly and expeditious disposition of this case. *See De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ("[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."). In contrast, Plaintiff has not cited any adequate authority supporting his request to permanently enjoin Wunderler from posting "threatening" or "harassing" conduct in the future.

In addition, here, the question of whether any of Wunderler's posts or statements against Plaintiff, Plaintiff's family, or any of the witnesses in this case constituted a threat or harassment under California state law was never fully adjudicated in this case. It also did not serve as the basis for the Plaintiff's valid claims or for the Court's entry of default judgment against Wunderler. *See Nat'l Abortion Fedn v. Ctr. for Med. Progress*, 533 F. Supp. 3d 802, 806–07 (N.D. Cal. 2021) (holding plaintiff was "entitled to a permanent injunction whose scope is cabined" by the claim it asserted and could not "enjoin conduct based on the broader set of claims that were proved in [a different case]"). Under these circumstances, the Court **DENIES** Plaintiff's request to convert the Court's preliminary injunction to a permanent injunction.

### D.    Contempt

The Court turns finally to Plaintiff's request for a finding of contempt against Wunderler and for the imposition of monetary sanctions in the amount of $1,000 and a referral of this case to the U.S. Attorney's Office. *See* ECF No. 109. Here, the Court has already taken into account the reprehensibility of Wunderler's actions over the pendency

23-cv-1774-RSH-BLM

of this action in awarding Plaintiff punitive damages in an amount greater than Plaintiff requested. The Court does not conclude that an additional monetary sanction of $1,000 would be appropriate or necessary here. The Court also declines to initiate criminal contempt proceedings.[5]

## CONCLUSION

For the above reasons:

1.      The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment. Specifically:

a.      The Court **GRANTS** default judgment in Plaintiff's favor and against defendant Wunderler with respect to Claim 3 of the FAC, as to Wunderler's June 12, 2023 post regarding Arrogate and September 4 and 5, 2023 posts regarding Muth only. The Court **DENIES** default judgment with respect to all other claims in the FAC.

b.      The Court **GRANTS IN PART** Plaintiff's request for compensatory damages and punitive damages in the amount of $200,000 of presumed damages and $100,000 of punitive damages.

2.      The Court **DENIES** Plaintiff's request to enter a contempt finding against Wunderler, for contempt sanctions, and for referral of this matter to the U.S. Attorney's Office.

3.      The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: June 27, 2025

Hon. Robert S. Huie
United States District Judge

---

[5]     This Order in no way forecloses Plaintiff from contacting law enforcement regarding Wunderler's misconduct.

23-cv-1774-RSH-BLM